# Exhibit 1

Case Number: KC-2017-0170
Filed in Kent County Superior Court
Submitted: 4/12/2017 10:14:20 AM
Envelope: 1001576
Reviewer: Lindsay Z.

**STATE OF RHODE ISLAND**                                **SUPERIOR COURT**
**KENT, S.C.**

**HOOT OWL RESTAURANTS LLC,**                     :

and                                                                      :

**WARWICK WINGS, LLC**                                :

and                                                                      :

**CONCORD REALTY CORP.**                           :

         *Plaintiffs,*                                                :

v.                                                                         :          C.A. No. KC-2017-0170

**LIBERTY MUTUAL FIRE INSURANCE**            :
**COMPANY**                                                     :

and                                                                      :

**HALLIWELL ENGINEERING**                          :
**ASSOCIATES, INC.**                                        :

and                                                                      :

**TODD A. CORMIER, P.E.**                              :

and                                                                      :

**YOUNG & ASSOCIATES, d/b/a and otherwise**   :
**known as YA CONSTRUCTION SERVICES**      :
**LLC and/or YA CONSTRUCTION SERVICES**  :
**OF RHODE ISLAND, LLC**                              :

and                                                                      :

**PT&C FORENSIC CONSULTING**                    :
**SERVICES, P.A.**                                             :

and                                                                      :

**JOSEPH M. YARBOROUGH, P.E.**                 :

and                                                                      :

**INTERSTATE RESTORATION, LLC**               :

         *Defendants.*                                            :

Case Number: KC-2017-0170
Filed in Kent County Superior Court
Submitted: 4/12/2017 10:14:20 AM
Envelope: 1001576
Reviewer: Lindsay Z.

## FIRST AMENDED COMPLAINT AND JURY DEMAND

**NOW COMES,** the Plaintiffs Hoot Owl Restaurants LLC ("Hoot Owl"), Warwick Wings, LLC ("Warwick Wings"), and Concord Realty Corp. ("Concord"), collectively "the Plaintiffs", by undersigned counsel, and hereby commence this action against Defendants Liberty Mutual Fire Insurance Company ("Liberty Mutual"), Halliwell Engineering Associates, Inc. ("Halliwell"), Mr. Todd A. Cormier, P.E. ("Mr. Cormier"), Young and Associates, doing business as and/or otherwise known as YA Construction Services, LLC and/or YA Construction Services of Rhode Island, LLC (collectively referred to as "Young"), PT&C Forensic Consulting Services, P.A. ("PT&C"), Mr. Joseph Yarborough, P.E. ("Mr. Yarborough"), and Interstate Restoration, LLC ("Interstate"), collectively the "Defendants", stating as follows:

### The Parties

1.      Hoot Owl is a Delaware Limited Liability Company, with a mailing address of 337 East Main Street, Newark, Delaware. The Members of Hoot Owl are Gobble Wings, LLC ("Gobble Wings") and Phillip Moran. Phillip Moran is a citizen of the state of Pennsylvania. The Members of Gobble Wings include Phillip Moran, a citizen of Pennsylvania; Gary McCully, a citizen of Delaware; Teddy Lou Russell, a citizen of Pennsylvania; Richard Andre, Esq., a citizen of Georgia; Givens Wings, LLC, with a mailing address of 204 Walnut Street, Central City, Kentucky; Susan Hysinger, a citizen of Kentucky; Allen Family Ltd. Partnership #1, with a mailing address of 200 S. 5th Street, Suite 201-S, Louisville, Kentucky; Walter Swyers, a citizen of Kentucky; Jamie Swyers, a citizen of Kentucky; Gary Hammond, a citizen of South Carolina; Adam Goodman, a citizen of New Jersey; Dan Wooden, a citizen of Maryland; the William Alexander Moran Trust, with a mailing address of 4000 Chestnut Glade Road, South Fulton, Tennessee; and the Amanda Joy Moran Trust, with a mailing address of 4000 Chestnut Glade Road, South Fulton, Tennessee.

2

Case Number: KC-2017-0170
Filed in Kent County Superior Court
Submitted: 4/12/2017 10:14:20 AM
Envelope: 1001576
Reviewer: Lindsay Z.

2.     Warwick Wings is a Rhode Island Limited Liability Company, with a mailing address of

337 East Main Street, Newark, Delaware. The Members of Warwick Wings are Phillip Moran, a citizen

of Pennsylvania; Gary McCully, a citizen of Delaware; Mr. Richard Andre, Esq., a citizen of Georgia;

Gary D. Givens, M.D., a citizen of Kentucky; and Susan Hysinger, a citizen of Kentucky.

3.     Warwick Wings operated a Hooters Restaurant at 667 Airport Road in Warwick, Rhode

Island (the "Restaurant").

4.     Concord is Rhode Island Corporation, with a mailing address of 1865 Post Road, Suite

206, Warwick, RI 02886, and is engaged in the business of real estate. Concord is the landlord of the

Restaurant.

5.     Liberty Mutual is a Massachusetts Company, with a mailing address of 175 Berkeley

Street, Boston, Massachusetts, and is engaged in the business of furnishing certain insurance products in

various states, including the State of Rhode Island.

6.     Halliwell is a Florida Corporation, with a mailing address of 20801 Biscayne Boulevard,

#505, Aventura, Florida 33180, and is engaged in the business of providing engineering and

architectural consulting services.

7.     Upon information and belief, Mr. Cormier is a citizen of Westport, Massachusetts, and is

a licensed professional engineer in the State of Rhode Island, under License Number 0006431.

8.     Upon information and belief, Young and Associates does business as and/or is otherwise

known as YA Construction Services, LLC. Upon information and belief, YA Construction Services,

LLC is a Missouri Limited Liability Company, with a mailing address of 12430 Tesson Ferry Road,

#181, St. Louis, Missouri. The members of YA Construction Services, LLC are citizens of the State of

Nevada.

9.     Upon information and belief, Young and Associates does business as and/or is otherwise

known as YA Construction Services of Rhode Island, LLC. Upon information and belief, YA

3

Case Number: KC-2017-0170
Filed in Kent County Superior Court
Submitted: 4/12/2017 10:14:20 AM
Envelope: 1001576
Reviewer: Lindsay Z.

Construction Services of Rhode Island, LLC is a Missouri Limited Liability Company, with a mailing address of 12430 Tesson Ferry Road, #181, St. Louis, Missouri.  The members of YA Construction Services of Rhode Island, LLC are citizens of the State of Nevada.

10.   PT&C is a Delaware professional service corporation, with a local mailing address of 450 Veterans Memorial Parkway, Suite 7A, East Providence, Rhode Island 02914 and with its principal place of business at 5565 Glenridge Connector, Suite 900, Atlanta, GA 30342.  PT&C is engaged in the business of assisting insurance companies and other entities with claims management solutions.

11.   Upon information and belief, Mr. Yarborough is a citizen of Portsmouth, New Hampshire, and is licensed as a professional engineer in the State of Rhode Island, under License Number 0009771.

12.   Interstate is a Colorado Limited Liability Company, with a mailing address of 3401 Quorum Drive, Suite 300, Fort Worth, Texas 76137, and is engaged in the business of providing restoration, remediation, and reconstruction services.

### Jurisdiction

13.   This Court has jurisdiction over the subject matter herein pursuant to R.I. GEN. LAWS §§ 8-2-14 and 9-30-1.

### General Factual Allegations

### The Insurance Policy

14.   Liberty Mutual issued a "RM Select Policy" to Hoot Owl under Policy Number YU2-Z91-444950-034, with an effective policy period of May 25, 2014 to May 25, 2015 (the "Policy").

15.   A true and correct copy of the Policy is attached as Exhibit 1.

16.   Warwick Wings was listed as an "Additional Named Insured" in the Policy.

17.   Concord, as landlord of the Restaurant, was listed as a Mortgage Holder or Loss Payee in the Policy.

4

Case Number: KC-2017-0170
Filed in Kent County Superior Court
Submitted: 4/12/2017 10:14:20 AM
Envelope: 1001576
Reviewer: Lindsay Z.

18.     Subject to the terms and conditions stated therein, the Policy provided for replacement cost basis payment(s) for certain risks of direct physical loss or damage to covered property resulting from an occurrence. (*See* Ex. 1)

19.     Subject to the terms and conditions stated therein, the Policy included coverage for Real Property, Personal Property, Loss of Business Income, Extra Expense, and Equipment Breakdown. (*See* Ex. 1)

20.     Paragraph B. Appraisal of the Conditions of the Policy specifically provided:

B.     Appraisal

1.     If **you** fail to agree with **us** on the amount of a loss, either party may demand that the disputed amount be submitted for appraisal. A demand for appraisal will be made in writing within sixty (60) days after **our** receipt of proof of loss. Each party will then choose a competent and disinterested appraiser. Each party will notify the other of the identity of its appraiser within thirty (30) days of the written demand for appraisal.

2.     The two (2) appraisers will choose a competent and disinterested umpire. If the appraisers are unable to agree on an umpire within fifteen (15) days, **you** or **we** may petition a judge of a court of record in the state where the **covered loss** happened, to select an umpire.

3.     The appraisers will then set the amount of the loss or damage. If the appraisers submit a written report of an agreement to **you** and **us**, the amount they agree on will be the amount of **our** payment for the loss or damage. If the appraisers fail to agree within a reasonable time, they will submit their differences to the umpire. Written agreement signed by any two (2) of these three (3) will set the amount of loss or damage.

4.     Each appraiser will be paid by the party that selects him or her. Other expenses of the appraisal and compensation of the umpire will be paid equally by **you** and **us**.

(*See* Ex. 1)

Case Number: KC-2017-0170
Filed in Kent County Superior Court
Submitted: 4/12/2017 10:14:20 AM
Envelope: 1001576
Reviewer: Lindsay Z.

## The Damage To The Property

21.    On or about March 24, 2015, as a result of the weight of ice and snow from severe winter storms throughout the Northeast Region of the United States, the Restaurant sustained structural and other damage, including, but not limited to, the roof framing systems.

22.    The damage sustained to the Restaurant is an "Occurrence" and/or "Covered Loss" under the terms of the Policy, which requires coverage by Liberty Mutual.

23.    In accordance with the terms and conditions of the Policy, Hoot Owl and Warwick Wings (hereinafter, collectively "Warwick Wings") promptly provided notice of the damage to Liberty Mutual.

24.    Officials from the City of Warwick Building Inspection Department reviewed the damage and determined that the roof system was unsafe, which resulted in the closure of the Restaurant.

25.    Jeff Kline ("Mr. Kline"), an employee and/or claims adjuster of Liberty Mutual, contacted Warwick Wings concerning the damage.  Mr. Kline informed Warwick Wings that he was inspecting claims for roof damage throughout the East Coast as a result of the severe winter storms.  Mr. Kline further informed Warwick Wings that he would need to contact Liberty Mutual since the damage to the Restaurant would exceed $100,000, or possibly even $150,000.

26.    In conjunction with the inspection by the City of Warwick Building Inspection Department, Warwick Wings retained Odeh Engineers, Inc. ("Odeh") to investigate and assess the damage to the roof systems at the Restaurant.

27.    Based upon on-site inspections conducted at the end of March and in April 2015 and detailed in a report dated May 1, 2015, Odeh determined that:

> ... [O]ver 90% of the existing prefabricated wood roof trusses are damaged or deficient in some way. ... Furthermore, the prefabricated wood roof trusses are so severely distressed that they are structurally unsafe.

***

> **Due to the extent of the damage to the existing wood roof trusses it is Odeh Engineers' professional opinion that these roof**

6

Case Number: KC-2017-0170
Filed In Kent County Superior Court
Submitted: 4/12/2017 10:14:20 AM
Envelope: 1001576
Reviewer: Lindsay Z.

> **trusses cannot be successfully reinforced in place. The existing damaged roof framing therefore must be removed and replaced with a new roof framing system. ...**

***

> **... [I]t is Odeh Engineers' professional opinion that the debilitating structural damage to the prefabricated wood roof trusses was caused by winter snow storms ...**

(emphasis added).

28.    Warwick Wings provided Liberty Mutual with a copy of Odeh's May 1, 2015 report.

29.    Liberty Mutual retained Halliwell to review the damage to the Restaurant. Halliwell's Senior Structural Engineer, Mr. Cormier, performed on-site inspections of the damage to the Restaurant in April 2015.

30.    By letter dated April 27, 2015, Mr. Cormier concluded that:

> ... The observed damage to the 30 truss panel points of the subject structure does not meet condition number 1 or number 2 of the definition of a Substantial Structural Damage. Therefore, Section 506.21 (Repairs for less than substantial structural damage) is applicable for the required repairs. Section 506.21 states that **"For damage less than *substantial structural damage*, the damaged elements shall be permitted to be restored to their predamage condition."**

***

> ... Based on our analysis of the available information at this time, it is HEA's [Halliwell] professional opinion that the subject building did not sustained [sic] *Substantial Structural Damage*. As a result, the damaged elements of the building can be repaired to meet their predamage condition, as follows: Repair the 30 observed damaged truss panel points with plywood gussets.

***

31.    Mr. Cormier sealed and signed the above referenced letter.

32.    Liberty Mutual also retained Young to prepare a building repair estimate based upon Mr. Cormier's findings.

7

Case Number: KC-2017-0170
Filed in Kent County Superior Court
Submitted: 4/12/2017 10:14:20 AM
Envelope: 1001576
Reviewer: Lindsay Z.

33.    On April 29, 2015, Young issued a "Preliminary Building Repair Estimate for Structural Damage" in the amount of $17,881, which was based on, "… observations and documentation of the loss during a site visit on Wednesday, April 1st, 2015 and structural evaluation report prepared by Halliwell …".

34.    Thereafter, Liberty Mutual also retained PT&C to review the damage to the Restaurant and present for approval a protocol for the repair of the damage to the Restaurant.  Liberty Mutual further represented that an estimate for the repair of the damage to the Restaurant would be compiled after a permit for the repair work was granted.

35.    PT&C's Project Engineer, Mr. Yarborough, performed on-site inspections of the damage to the Restaurant in June 2015.

36.    Mr. Yarborough provided verbal recommendations and sketches to Liberty Mutual concerning his inspection.

37.    Interstate, an entity recommended by Liberty Mutual, was then retained to prepare an estimate based upon Mr. Yarborough's recommendations and sketches.  Interstate inspected the damage to the Restaurant in May 2015.

38.    Following its inspection, Rich Aiello ("Mr. Aiello"), an employee and/or representative of Interstate, advised Warwick Wings that the roof trusses had sustained significant damage and that Mr. Aiello/Interstate could not submit a proper estimate for the repair of the damage until there was an approved report from a structural engineer with architectural plans.  Mr. Aiello further advised Warwick Wings that the report issued by Halliwell/Mr. Cormier was deficient and did not properly and completely address the damage to the Restaurant.  He further advised Warwick Wings that the findings and recommendations issued by Odeh were correct.

39.    Mr. Aiello further informed Warwick Wings that he would ask Interstate to remove him from having any association with preparing a repair estimate if Liberty Mutual continued to advocate a

8

Case Number: KC-2017-0170
Filed in Kent County Superior Court
Submitted: 4/12/2017 10:14:20 AM
Envelope: 1001576
Reviewer: Lindsay Z.

"band-aid" approach for the repair of the damage to the Restaurant as indicated in the report issued by Halliwell/Mr. Cormier.

40.    By letter dated July 2, 2015 and following an inspection of the structural, electrical, plumbing, mechanical, sprinkler, and fire alarm systems at the Restaurant on the same date, Mr. Alfred T. DeCorte ("Mr. DeCorte"), Director & Building Official for the City of Warwick Building Inspection Department, advised Warwick Wings that a, "... Certificate of Occupancy would only be issued when the building is in full compliance with the 2013 State of Rhode Island Building Codes, 2013 Rhode Island Fire Safety Code with amendments, NFPA 1, 2012 and NFPA 101, 2012."

41.    A true and correct copy of Mr. DeCorte's letter dated July 2, 2015 is attached as Exhibit 2.

42.    On July 13, 2015, Interstate issued an estimate in the amount of $77,654.  Interstate's estimate contained the following "Scope Notes":

> ... 1) Repair to all truss points with plywood gussets as noted in PT&C report and repair proposal.
>
> 2) Remove and replace 100% ceiling insulation, suspended ceiling w/ grid and tongue and groove panels to access and repair damaged truss panel points.
>
>                ***
>
> **5) Interstate has added missing line items not included in Young & Associates proposal in order to complete job. ...**

(emphasis added).

43.    By letter dated October 9, 2015 and based upon his prior inspection of the Restaurant and his review of Odeh's May 1, 2015 report, Mr. DeCorte advised Warwick Wings as follows:

> ... On March 24, 2015 I was at the above location and was able to inspect the roof trusses.  **My inspection disclosed that the 2" X 4" chords on multiple roof trusses were no longer attached to each other by the metal connector plates, which indicated to me that the trusses are in failure mode.  In addition the columns which support the roof structure were exposed and it was noted that the structural integrity**

9

Case Number: KC-2017-0170
Filed in Kent County Superior Court
Submitted: 4/12/2017 10:14:20 AM
Envelope: 1001576
Reviewer: Lindsay Z.

**was compromised**. Recognizing the severity of both failures, I could not allow the business to remain open.

... In my professional opinion and past experience with truss failures of this severity, **I am in agreement with Odeh Engineers that the trusses cannot be successfully reinforced in place and must be replaced with new trusses.**

(emphasis added).

44.     A true and correct copy of Mr. DeCorte's letter dated October 9, 2015 is attached as Exhibit 3.

45.     Warwick Wings retained Nadeau Corporation ("Nadeau"), a construction development and engineering company, to prepare a Reconstruction Estimate based upon the findings and recommendations of Odeh and Mr. DeCorte.

46.     Nadeau's Reconstruction Estimate totaled to $1,312,827 ("Nadeau's Reconstruction Estimate").

47.     Warwick Wings provided Liberty Mutual with copies of Mr. DeCorte's letter dated October 9, 2015 and Nadeau's Reconstruction Estimate.   Warwick Wings further advised Liberty Mutual that it must, "commence the reconstruction project as quickly as possible, both to mitigate its continuing claims ... and to minimize the impact of the impending winter weather on the construction effort. ..."

48.     In response, by letter dated October 20, 2015, Liberty Mutual advised Warwick Wings that, "... the facts of the loss ... do not support coverage under the Policy for the scope of work you describe.  As such, Liberty Mutual cannot ... agree to reimburse Warwick Wings for the demolition cost it incurs, or any other costs associated with a full roof replacement. ..."

49.     Contrary to the findings in Odeh's May 1, 2015 report and Mr. DeCorte's letter dated October 9, 2015, Liberty Mutual further advised that the, "... roof trusses can be repaired in place ..." at a cost of $77,542.

Case Number: KC-2017-0170
Filed in Kent County Superior Court
Submitted: 4/12/2017 10:14:20 AM
Envelope: 1001576
Reviewer: Lindsay Z.

50.     Liberty Mutual relied upon the prior estimate prepared by Interstate for the above referenced cost of $77,542 for the repair of the roof trusses in place.

51.     Mr. Yarborough, on behalf of PT&C, issued a letter dated October 29, 2015 concerning his findings to Mr. DeCorte.

52.     Mr. Yarborough's October 29, 2015 letter stated, in relevant part, that:

> PT&C/LWG's inspection of the subject building on June 3, 2015 revealed that the wood trusses throughout the building's roof structure exhibited **widespread instances of damage**, generally characterized by the withdrawal of web members from the metal nail plate connections at various panel points ...

> ***

> With the addition of bridging at various truss members, and potentially the minor reinforcement of the truss bottom chords, web and chord members throughout the wood trusses which comprise the subject building's roof structure exceed the IBC requirements for new construction. As such, wood truss panel points can be reinforced with plywood gusset plates ...

(emphasis added).

53.     Mr. Yarborough sealed and signed the above referenced letter.

54.     Following additional correspondence between Warwick Wings and Liberty Mutual, Odeh reviewed Mr. Yarborough's October 29, 2015 letter.

55.     By letter dated November 18, 2015, Odeh's observations included the following:

> ... PT&C LWC [PT&C] addresses the restoration as a "repair" which is defined in the IEBC 2012 as applicable to "maintenance" of the roof structure.

> This office's professional opinion is that the "widespread" failure is not a "maintenance" issue (Which is defined as "normal wear and tear" restoration). The "widespread" roof failure is certainly not "normal wear and tear".

> The "widespread" roof failure should be considered as "substantial structural alterations" as defined in IEBC 2012 section 907.4.2. This section requires that the altered structure is to comply "With the International Building Code for wind loading and reduced IBC-level Seismic forces" as well as snow loading.

11

Case Number: KC-2017-0170
Filed in Kent County Superior Court
Submitted: 4/12/2017 10:14:20 AM
Envelope: 1001576
Reviewer: Lindsay Z.

> In conclusion, **it is our firm professional opinion that the entire roof and the entire lateral resistance system, including the roof sheathing, roof trusses, supporting beams and columns be upgraded in full compliance to IBC 2012.**

(emphasis added).

56.     On December 22, 2015, Mr. Yarborough issued Structural Calculations concerning the Restaurant.

57.     Mr. Yarborough sealed and signed the above referenced Structural Calculations.

58.     Thereafter, Odeh reviewed Mr. Yarborough's Structural Calculations.  By letter dated March 2, 2016, Odeh confirmed that its response remained the same as that contained in its letter dated November 18, 2015. Odeh further advised that Mr. Yarborough's Structural Calculations, "... do not apply in this case based on the requirements of the RI State Building Code, which is specified in our response dated November 18, 2015. ..."

59.     Warwick Wings provided Liberty Mutual with copies of Odeh's letters dated November 18, 2015 and March 2, 2016.

60.     In response, Liberty Mutual advised Warwick Wings that it maintained its position and no further payments were owed.

61.     By letter dated May 17, 2016, Warwick Wings submitted a signed Sworn Statement in Proof of Loss (the "Proof of Loss") in the total amount of $1,160,653 to Liberty Mutual.  With the submission, Warwick Wings requested that Liberty Mutual advise whether the parties would proceed to Appraisal as set forth in the Policy.

62.     In response, Liberty Mutual rejected the Proof of Loss and requested that Warwick Wings provide an inventory of lost, damaged, or destroyed property, a record of all repair costs, and documents that establish the amount of the loss.

63.     Liberty Mutual further advised that Warwick Wings, "... have not given any reason why they believe Liberty Mutual's plan to repair claimed-loss damage to the roof is inadequate, or otherwise

12

Case Number: KC-2017-0170
Filed in Kent County Superior Court
Submitted: 4/12/2017 10:14:20 AM
Envelope: 1001576
Reviewer: Lindsay Z.

unacceptable. ...”   Concerning Warwick Wings' request to proceed to Appraisal, Liberty Mutual

advised that Appraisal was inappropriate since it, "... still lacks the prerequisite information and

documentation ... to explain the basis of the amount claimed. ..."

64.    By letter dated June 27, 2016, Warwick Wings provided additional information in

support of the Proof of Loss and replied as follows:

> ... Given your client's continuing failure to appropriately adjust the loss, by and through the rejection of the Proof of Loss, **a demand is hereby made for an Appraisal** ... [W]e dispute any contention that the Proof of Loss is at all deficient. In review, the points raised as foundation therefor are aimed at protracting this matter ... in bad faith. ... Due to the nature of the business, ... there was insignificant 'inventory' of property lost. Moreover, no repairs have been made; accordingly, documentation is not available in the form of bills and receipts, which would detail the extent of the loss.
>
> Furthermore, **the plans forwarded in conjunction with the Proof of Loss address the repairs, or the scope of work, necessary for the restaurant to be re-opened based upon correspondence issued by the Building Official** ... [T]he Building Official's position is directly contrary to your client's assertion that a code-compliant repair plan has been proffered. This concept has also been affirmed ... by the engineer engaged by Hoot Owl ...   [T]hese conclusions firmly ground the position that your client's repair plan is unacceptable ...

(emphasis added).

65.    By letters dated August 17, 2016 and August 29, 2016, Warwick Wings provided Liberty

Mutual with additional documentation associated with the previously submitted Proof of Loss, including

an Appraisal/Repair Estimate prepared by W.R. Blinn Claims Services, LLC, which itemized the

$1,160,653 of damages in the Proof of Loss, and supporting proposals from the various trades and

subcontractors to perform the repairs at the Restaurant.

66.    In addition, by letter dated October 5, 2016, Warwick Wings advised Liberty Mutual that,

"... it is readily apparent that there is a dispute amongst our clients as to the amount of the loss. ...

[A]ccept this correspondence as Hoot Owl's renewed demand for an Appraisal ..."

13

Case Number: KC-2017-0170
Filed in Kent County Superior Court
Submitted: 4/12/2017 10:14:20 AM
Envelope: 1001576
Reviewer: Lindsay Z.

67.     Liberty Mutual, by letter dated October 19, 2016, incorrectly advised that, "... there has been no prior demand for appraisal."

68.     Liberty Mutual further stated that it would not consent to the demand for Appraisal since the dispute did not involve, "the amount of the loss" but rather, "questions concerning the interpretation of building codes ..." and policy coverage issues.

69.     To date, Liberty Mutual has failed and refused to proceed to Appraisal in accordance with the terms and conditions of the Policy.

70.     Warwick Wings has fully complied with the terms of the Policy and all conditions precedent to the institution of this action have been performed and/or have occurred.

### COUNT ONE
### (Breaches of the Policy against Liberty Mutual)

71.     Warwick Wings realleges and incorporates Paragraphs 1 through 70 above as if set forth fully herein.

72.     Following Warwick Wings' submission of a Proof of Loss and supporting documents and the parties' continued disagreement on the amount of the loss, Warwick Wings demanded an Appraisal, on two separate occasions, pursuant to the terms and conditions of the Policy.

73.     Despite the repeated demands for Appraisal pursuant to the terms and conditions of the Policy, Liberty Mutual has failed and refused to proceed to Appraisal.

74.     Liberty Mutual's failure and refusal to proceed to Appraisal is a material breach of the Policy.

75.     In addition, despite repeated demands, Liberty Mutual has failed and refused to provide coverage and/or payments concerning the necessary and required repairs verified by Odeh and Mr. DeCorte, continued loss of business income, necessary and/or extra expenses, and professional fees incurred by Warwick Wings.

Case Number: KC-2017-0170
Filed in Kent County Superior Court
Submitted: 4/12/2017 10:14:20 AM
Envelope: 1001576
Reviewer: Lindsay Z.

76.     Moreover, Liberty Mutual has failed and refusal to provide coverage and/or payments as set forth in and required by the Policy for demolition, increased construction, and/or operation of building laws and has failed and refused to exercise its repair, rebuild, and/or replacement option in the Policy.

77.     As a direct and proximate result of Liberty Mutual's failure and refusal to proceed to Appraisal and failure and refusal to provide coverage and/or payments as set forth in and required by the Policy, Warwick Wings has suffered and continues to suffer damages, including, but not limited to, the closure of the Restaurant and a loss of business income.

**WHEREFORE,** Warwick Wings respectfully requests this Court to enter judgment against Liberty Mutual on Count One for Breaches of the Policy in an amount to be determined at trial, plus interest and costs incurred in bringing this action, and for such other and further relief as this Court deems equitable and just.

### COUNT TWO
### (Violations of R.I. GEN. LAWS § 9-1-33 against Liberty Mutual)

78.     Warwick Wings realleges and incorporates Paragraphs 1 through 77 above as if set forth fully herein.

79.     Warwick Wings' submissions to Liberty Mutual established that the resulting damage to the roof trusses at the Restaurant from the winter snow storms required replacement of the entire roof rather than an in-place repair of the roof trusses as proposed by Liberty Mutual.

80.     Warwick Wings provided Liberty Mutual with a Proof of Loss along with an Appraisal/Repair Estimate prepared by W.R. Blinn Claims Services, LLC, which itemized the $1,160,653 of damages in the Proof of Loss, and proposals from the various trades and subcontractors to perform the repairs at the Restaurant.

15

Case Number: KC-2017-0170
Filed in Kent County Superior Court
Submitted: 4/12/2017 10:14:20 AM
Envelope: 1001576
Reviewer: Lindsay Z.

81.     Based upon the parties' continuing disagreement on the amount of the loss and following Warwick Wings' submission of a Proof of Loss and supporting documents, Warwick Wings demanded an Appraisal, on two separate occasions, pursuant to the terms and conditions of the Policy.

82.     In response to Warwick Wings' submissions concerning the replacement of the roof, Liberty Mutual claimed that Warwick Wings had failed to provide any reason why Liberty Mutual's position that an in-place repair of the roof trusses was inadequate.

83.     In response to Warwick Wings' demands for Appraisal, Liberty Mutual claimed that an Appraisal was inappropriate since it lacked information and documentation to understand the basis of the amount claimed.

84.     Liberty Mutual further claimed that Appraisal was not appropriate since the dispute did not involve, "the amount of loss" but rather, "questions concerning the interpretation of building codes …" and policy coverage issues.

85.     As there is no basis for Liberty Mutual's failure and refusal to timely perform its obligations under the Policy, including, but not limited to, proceeding to Appraisal and/or exercising the option to perform the repairs itself, Liberty Mutual's actions were wrongful and done in bad faith.

86.     As there is no basis for Liberty Mutual's failure and refusal to pay the claim submitted by Warwick Wings or submit to an appraisal, Liberty Mutual's actions were wrongful and done in bad faith.

**WHEREFORE,** Warwick Wings respectfully requests this Court to enter judgment against Liberty Mutual on Count Two for Violations of R.I. GEN. LAWS § 9-1-33 in an amount to be determined a trial, plus punitive damages, reasonable attorneys' fees, interest, and costs incurred in bringing this action, and for such other and further relief as this Court deems equitable and just.

Case Number: KC-2017-0170
Filed in Kent County Superior Court
Submitted: 4/12/2017 10:14:20 AM
Envelope: 1001576
Reviewer: Lindsay Z.

## COUNT THREE
### (Declaratory Judgment against Liberty Mutual)

87.     Warwick Wings and Concord reallege and incorporate Paragraphs 1 through 86 above as if set forth fully herein.

88.     Under the terms and conditions of the Policy, a dispute on the amount of loss is to be determined by Appraisal following one party's demand that the disputed amount be submitted for Appraisal.

89.     The dispute concerns the amount or extent of the loss to the Restaurant resulting from and/or caused by the weight of ice and snow from severe winter storms in 2015.

90.     The extent of physical damages resulting from and/or caused by the weight of ice and snow from severe winter storms in 2015 is inextricably intertwined with the amount of loss suffered by Warwick Wings and Concord.

91.     Despite repeated demands, Liberty Mutual has failed and refused to proceed to Appraisal in accordance with the terms and conditions of the Policy.

92.     As a direct and proximate result of Liberty Mutual's failure and refusal to proceed to Appraisal, Warwick Wings and Concord have suffered and continue to suffer damages, including, but not limited to, the closure of the Restaurant and a loss of business income.

**WHEREFORE**, Warwick Wings and Concord respectfully request this Court to enter judgment against Liberty Mutual on Count Three for Declaratory Judgment, declaring that the current dispute concerns the amount of loss and requiring Warwick Wings and Liberty Mutual to immediately proceed to Appraisal in accordance with the terms and conditions of the Policy, and for such other and further relief as this Court deems equitable and just.

## COUNT FOUR
### (Preliminary and Permanent Injunctive Relief against Liberty Mutual)

93.     Warwick Wings realleges and incorporates Paragraphs 1 through 92 above as if set forth fully herein.

Case Number: KC-2017-0170
Filed in Kent County Superior Court
Submitted: 4/12/2017 10:14:20 AM
Envelope: 1001576
Reviewer: Lindsay Z.

94.     Based upon the clear terms and conditions of the Policy and Liberty Mutual's failure and refusal to proceed to Appraisal concerning the parties' dispute as to the amount of the loss, Warwick Wings has established a reasonable likelihood of success on the merits.

95.     Furthermore, considering that the Restaurant has been closed for nearly two years due to the damage to the roof system and the ongoing dispute as to the amount of the loss, Warwick Wings has and will continue to suffer irreparable harm, including, but not limited to, lost business revenue, without injunctive relief.

96.     In addition, considering any possible hardships to each party and to the public interest in proceeding to Appraisal in a timely manner to determine the amount of loss under the Policy, it is clear that the balance of the equities favors Warwick Wings.

97.     Moreover, requiring the parties to proceed to Appraisal will preserve the status quo and simply allow the parties to move forward in a resolution of the amount of loss according to the terms and conditions of the Policy.

**WHEREFORE,** Warwick Wings respectfully requests this Court to enter judgment against Liberty Mutual on Count Four for Preliminary and Permanent Injunctive Relief and order the parties to immediately proceed to Appraisal in accordance with the terms and conditions of the Policy and for such other and further relief as this Court deems equitable and just.

**COUNT FIVE**
**(Negligence / Defective Design against Halliwell, Mr. Cormier,**
**PT&C, and Mr. Yarborough)**

98.     Warwick Wings realleges and incorporates Paragraphs 1 through 97 above as if set forth fully herein.

99.     Halliwell, Mr. Cormier, PT&C, and Mr. Yarborough provided engineering services and/or evaluations concerning the Restaurant with actual knowledge that Warwick Wings would rely on those services and/or evaluations and the accuracy thereof.

Case Number: KC-2017-0170
Filed in Kent County Superior Court
Submitted: 4/12/2017 10:14:20 AM
Envelope: 1001576
Reviewer: Lindsay Z.

100.   Mr. Cormier and Mr. Yarborough signed and sealed their letters, reports, and/or calculations concerning the Restaurant with their professional engineering stamps.

101.   Mr. Cormier and Mr. Yarborough, as professional engineers, employed by Halliwell and PT&C, respectively, had independent duties to ensure that the engineering reports and calculations referenced above for the Restaurant were correct, in compliance with the applicable building codes, and prepared with reasonable care, skill, ability, and diligence ordinarily required of a professional engineer in the same or similar circumstances.

102.   It was foreseeable to Halliwell, Mr. Cormier, PT&C, and Mr. Yarborough that Warwick Wings would rely upon and use the engineering reports and calculations referenced above based upon the damage suffered to the Restaurant.

103.   Mr. Cormier and Mr. Yarborough were negligent in that their respective engineering reports and calculations were defective and/or failed to comply with the applicable building codes concerning the roof failure at the Restaurant.

104.   By failing to provide engineering reports and/or calculations in accordance with the applicable building codes and/or professional engineering standards, Mr. Cormier, Mr. Yarborough, Halliwell, and PT&C caused Liberty Mutual to refuse to adjust Warwick Wings' claims properly and promptly, thereby causing damages to Warwick Wings.

105.   By failing to provide engineering reports and/or calculations in accordance with the applicable building codes and/or professional engineering standards, Mr. Cormier and Mr. Yarborough breached their duty of care owed to Warwick Wings.

106.   As a direct and proximate result of Mr. Cormier's and Mr. Yarborough's breaches of their duty of care and rendering of negligent and/or defective professional engineering services, Warwick Wings has incurred substantial damages.

19

Case Number: KC-2017-0170
Filed in Kent County Superior Court
Submitted: 4/12/2017 10:14:20 AM
Envelope: 1001576
Reviewer: Lindsay Z.

107.    Pursuant to R.I. GEN. LAWS § 5-8-21(3), Halliwell and PT&C are jointly and severally liable for the negligent acts of their respective engineers, Mr. Cormier and Mr. Yarborough, concerning the engineering reports and calculations.

**WHEREFORE,** Warwick Wings respectfully requests this Court to enter judgment against Halliwell, Mr. Cormier, PT&C, and Mr. Yarborough, jointly and severally, on Count Five for Negligent/Defective Design in an amount to be determined a trial, plus interest, and costs incurred in bringing this action, and for such other and further relief as this Court deems equitable and just.

### COUNT SIX
### (Negligence against Young and Interstate)

108.    Warwick Wings realleges and incorporates Paragraphs 1 through 107 above as if set forth fully herein.

109.    As entities providing restoration, remediation, and reconstruction services, Young and Interstate had a duty to exercise the ability, skill, and care customarily and reasonably exercised by other members of their professions.

110.    It was foreseeable to Young and Interstate that Warwick Wings would rely upon and use the reconstruction estimates referenced above based upon the damage suffered to the Restaurant.

111.    Young and Interstate were negligent in that their respective reconstruction estimates were defective and/or failed to include all items necessary to repair to the damage to the Restaurant, including, but not limited to, compliance with the applicable building codes.

112.    By providing reconstruction estimates which were defective, incomplete, and failed to account for compliance with the applicable building codes, Young and Interstate breached their duty of care owed to Warwick Wings.

113.    As a direct and proximate result of Young's and Interstate's breaches of their duty of care and rendering of negligent and/or defective reconstruction estimates, Warwick Wings has incurred substantial damages.

Case Number: KC-2017-0170
Filed in Kent County Superior Court
Submitted: 4/12/2017 10:14:20 AM
Envelope: 1001576
Reviewer: Lindsay Z.

**WHEREFORE,** Warwick Wings respectfully requests this Court to enter judgment against Young and Interstate on Count Six for Negligence in an amount to be determined a trial, plus interest, and costs incurred in bringing this action, and for such other and further relief as this Court deems equitable and just.

## JURY DEMAND

Plaintiffs request a trial by jury on all issues so triable.

Respectfully submitted,

**HOOT OWL RESTAURANTS LLC, WARWICK WINGS, LLC, AND CONCORD REALTY CORP.,** *by counsel,*

/s/ Michael A. Kelly
Michael A. Kelly, Esq. (#2116)
Nicholas J. Goodier, Esq. (#7858)
Erin A. Hockensmith, Esq. (#9588)
KELLY & MANCINI, PC
128 Dorrance Street, Suite 300
Providence, R.I. 02903
Tel: (401) 490-7334
Fax: (401) 490-7874
mkelly@kellymancini.com
ngoodier@kellymancini.com
ehockensmith@kellymancini.com
*Counsel for Plaintiffs*

Dated: April 12, 2017

Case Number: KC-2017-0170
Filed in Kent County Superior Court
Submitted: 4/12/2017 10:14:20 AM
Envelope: 1001576
Reviewer: Lindsay Z.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on this April 12, 2017, I filed and served the foregoing document through the electronic filing system on all parties of record. In addition, I served the foregoing document by U.S. certified mail, postage prepaid to:

> Jonathan D. Mutch, Esq.
> Melissa M. D'Alelio, Esq.
> Robins Kaplan, LLP
> 800 Boylston Street, Suite 2500
> Boston, MA 02199
>
> Kevin J. Holley, Esq.
> Gunning & LaFazia, Inc.
> 33 College Hill Road, Suite 25B
> Warwick, RI 02886

The document electronically filed and served is available for viewing and/or downloading from the Rhode Island Judiciary's Electronic Filing System.

/s/ Lynn M. Daigle
Lynn M. Daigle
Kelly & Mancini, PC
128 Dorrance Street, Suite 300
Providence, RI 02903
Tel: (401) 490-7334
Fax: (401) 490-7874

Case Number: KC-2017-0170
Filed in Kent County Superior Court
Submitted: 4/12/2017 10:14:20 AM
Envelope: 1001576
Reviewer: Lindsay Z.

# EXHIBIT 1

Case Number: KC-2017-0170
Filed in Kent County Superior Court
Submitted: 4/12/2017 10:14:20 AM
Envelope: 1001576
Reviewer: Lindsay Z.

Policy Number   YU2-Z91-444950-034
Issued by       Liberty Mutual Fire Insurance Company

### ANNUAL MEETING NOTICE

Your policy is issued by a stock insurance company subsidiary of the Liberty Mutual Holding Company Inc., a Massachusetts mutual holding company. The named insured first named in the Declarations is a member of Liberty Mutual Holding Company Inc.

As a member of Liberty Mutual Holding Company Inc., the named insured first named is entitled, among other things, to vote either in person or by proxy at the annual meeting or special meetings of said company. The Annual Meeting of Liberty Mutual Holding Company Inc. is at its offices located at 175 Berkeley Street, Boston, Massachusetts, on the second Wednesday in April each year at ten o'clock in the morning.

Members of Liberty Mutual Holding Company Inc. may request a copy of the company's annual financial statements, which are posted on Liberty Mutual's website at www.libertymutual.com or by writing to Liberty Mutual Holding Company Inc., 175 Berkeley Street, Boston, Massachusetts, 02116, Attention: Corporate Secretary.

### PARTICIPATING PROVISION

You may be eligible to participate in the distribution of surplus funds of the company through any dividends that may be declared for this policy. A declaration or payment of dividends is not guaranteed. The amount of any dividends that may be declared shall be to the extent, and upon the conditions fixed and determined by the Board of Directors and in compliance with any laws that apply.

In witness whereof, the company has caused this policy to be signed by its President and its Secretary.

SECRETARY

PRESIDENT

Case Number: KC-2017-0170
Filed in Kent County Superior Court
Submitted: 4/12/2017 10:14:20 AM
Envelope: 1001576
Reviewer: Lindsay Z.



## RM SELECT™ POLICY

## POLICY REFERENCE INDEX

This INDEX is to help you read your Policy. It is not a part of the Policy and is in no way a substitute for reading your entire Policy.

Your Policy may or may not include all of the forms, endorsements, coverages and provisions listed in this INDEX. Refer to the POLICY INDEX, Form RM0003, for a list of forms and endorsements that are included on your policy.

PLEASE READ YOUR POLICY CAREFULLY!

|  | Form Number | Beginning on Page |
|---|---|---|
| ANNUAL MEETING NOTICE | LIL 90 04 | |
| POLICY INDEX | RM0003 | |
| STATE OR MUNICIPAL TAXES, SURCHARGE AND OTHER MISCELLANEOUS CHARGES SUMMARY | RM0005 | |
| DECLARATIONS | RM1000 | |
| Named Insured and Mailing Address | | 1 |
| Policy Period | | 1 |
| Policy Premium | | 1 |
| A. Insuring Agreement | | 2 |
| B. Coverages | | 2 |
| C. Limits of Liability | | 2 |
| D. Standard Extensions of Coverage | | 2 |
| E. Optional Extensions of Coverage – Sublimits of Liability | | 2 |
| F. Equipment Breakdown Coverage | | 3 |
| G. Deductible and waiting periods | | 4 |
| Schedule | | 5 |
| COVERAGES | RM1001 | |
| A. Real Property | | 1 |
| B. Personal Property | | 1 |

© 2013 Liberty Mutual Insurance. All rights reserved.

Case Number: KC-2017-0170
Filed in Kent County Superior Court
Submitted: 4/12/2017 10:14:20 AM
Envelope: 1001576
Reviewer: Lindsey G.

## POLICY REFERENCE INDEX – (CONTINUED)

|  | Form Number | Beginning on Page |
|---|---|---|
| **COVERAGES – (CONTINUED)** | RM1001 | |
| C.  Loss of Business Income | | 1 |
| D.  Extra Expense | | 3 |
| E.  Equipment Breakdown | | 4 |
| **EXTENSIONS OF COVERAGE** | RM1002 | |
| A.  Standard Extensions of Coverage | | 1 |
| 1.  Accounts Receivable | | 1 |
| 2.  Arson Reward | | 2 |
| 3.  Computer Virus and Denial of Access | | 2 |
| 4.  Debris Removal Expense | | 3 |
| 5.  Deferred Payments | | 3 |
| 6.  Duty to Defend | | 3 |
| 7.  Extended Period of Restoration | | 4 |
| 8.  Fire Department Charges | | 4 |
| 9.  Fine Arts | | 4 |
| 10.  Fungus Cleanup Expense | | 4 |
| 11.  Installation of Personal Property or Personal Property of Others | | 5 |
| 12.  Lock and Key Replacement | | 5 |
| 13.  Personal Property of Employees | | 5 |
| 14.  Plants, Trees or Shrubs | | 5 |
| 15.  Pollution Cleanup Expense | | 5 |
| 16.  Professional Fees | | 6 |
| 17.  Removal | | 6 |
| B.  Optional Extensions of Coverage | | 6 |
| 1.  Course of Construction | | 6 |
| 2.  Errors and Omissions | | 7 |
| 3.  Exhibitions, Expositions, Fairs or Trade Shows | | 7 |
| 4.  Miscellaneous Locations | | 7 |
| 5.  New Locations | | 7 |
| 6.  Demolition Cost, Increased Construction Cost and Operation of Building Laws | | 8 |
| 7.  Salespeople | | 8 |
| 8.  Transit | | 9 |
| 9.  Unscheduled Locations | | 9 |
| **EXCLUSIONS** | RM1003 | |
| A.  GROUP A EXCLUSIONS | | 1 |
| B.  GROUP B EXCLUSIONS | | 3 |
| **PROPERTY NOT COVERED** | RM1004 | |
| **VALUATIONS** | RM1005 | |
| A.  Replacement Cost | | 1 |

RM0002 06-13

Case Number: KC-2017-0170
Filed in Kent County Superior Court
Submitted: 4/12/2017 10:14:20 AM
Envelope: 1001576
Reviewer: Lindsay Z.

## POLICY REFERENCE INDEX – (CONTINUED)

|  | Form Number | Beginning on Page |
|---|---|---|
| **VALUATIONS – (CONTINUED)** | RM1005 | |
| B. **Actual Cash Value** | | 1 |
| C. Other Valuations | | 2 |
| **CONDITIONS** | RM1006 | |
| A. Abandonment of Property | | 1 |
| B. Appraisal | | 1 |
| C. Assignment | | 1 |
| D. Brands and Labels | | 1 |
| E. Breach of Condition | | 1 |
| F. Cancellation | | 1 |
| G. Change of Terms | | 2 |
| H. Collection from Others | | 3 |
| I. Concealment, Misrepresentation or Fraud | | 3 |
| J. Inspection | | 3 |
| K. Liberalization | | 3 |
| L. Loss Payee | | 3 |
| M. Mortgage Holders | | 4 |
| N. No Benefit to Bailee | | 4 |
| O. No Reduction by Loss | | 4 |
| P. Nonrenewal | | 4 |
| Q. Other Insurance | | 5 |
| R. Our Options | | 5 |
| S. Pair, Set or Parts | | 5 |
| T. Payment of Loss | | 5 |
| U. **Policy Period** and Territory | | 6 |
| V. Recovered Property | | 6 |
| W. Right to Adjust with Owner | | 6 |

Case Number: KC-2017-0170
Filed in Kent County Superior Court
Submitted: 4/12/2017 10:14:20 AM
Envelope: 1001576
Reviewer: Lindsay Z.

## POLICY REFERENCE INDEX – (CONTINUED)

|  |  | Form Number | Beginning on Page |
|---|---|---|---|
| **CONDITIONS – (CONTINUED)** |  | RM1006 |  |
| X. | Subrogation |  | 6 |
| Y. | Suit |  | 6 |
| Z. | Suspension |  | 7 |
| A.A. | Titles of Paragraphs |  | 7 |
| B.B. | Vacancy |  | 7 |
| C.C. | Your Duties After a Loss |  | 8 |
| **DEFINITIONS** |  | RM1007 |  |
| A. | Accident |  | 1 |
| B. | Actual cash value |  | 1 |
| C. | Average daily value (ADV) |  | 1 |
| D. | Business income |  | 1 |
| E. | Covered location(s) |  | 2 |
| F. | Covered loss |  | 2 |
| G. | Covered property |  | 2 |
| H. | Data |  | 2 |
| I. | Data processing equipment |  | 2 |
| J. | Earth movement |  | 2 |
| K. | Effective date |  | 2 |
| L. | Extra expense |  | 2 |
| M. | Fine arts |  | 2 |
| N. | First tier wind Counties and Parishes |  | 2 |
| O. | Flood |  | 3 |
| P. | Fungus |  | 3 |
| Q. | Hail |  | 3 |
| R. | Limit(s) of liability |  | 3 |
| S. | Media |  | 3 |

Case Number: KC-2017-0170
Filed in Kent County Superior Court
Submitted: 4/12/2017 10:14:20 AM
Envelope: 1001576
Reviewer: Lindsay Z.

## POLICY REFERENCE INDEX – (CONTINUED)

|  |  | Form Number | Beginning on Page |
|---|---|---|---|
| **DEFINITIONS – (CONTINUED)** |  | RM1007 |  |
| T. | Miscellaneous location(s) |  | 3 |
| U. | Mobile equipment or tools |  | 4 |
| V. | Named Storm |  | 4 |
| W. | New location(s) |  | 4 |
| X. | New Madrid |  | 4 |
| Y. | Object(s) |  | 4 |
| Z. | Occurrence |  | 5 |
| A.A. | Perils insured against |  | 5 |
| B.B. | Period of restoration |  | 5 |
| C.C. | Perishable goods |  | 6 |
| D.D. | Personal property |  | 6 |
| E.E. | Personal property of others |  | 6 |
| F.F. | Policy period |  | 7 |
| G.G. | Pollutant(s) |  | 7 |
| H.H. | Pollution |  | 7 |
| I.I. | Puget Sound |  | 7 |
| J.J. | Real property |  | 7 |
| K.K. | Replacement cost |  | 7 |
| L.L. | Second tier wind Counties and Parishes |  | 7 |
| M.M. | Sinkhole collapse |  | 7 |
| N.N. | Software |  | 8 |
| O.O. | Specified perils |  | 8 |
| P.P. | Transit |  | 8 |
| Q.Q. | Unscheduled location(s) |  | 8 |
| R.R. | Valuable papers and records |  | 8 |
| S.S. | Volcanic activity |  | 9 |
| T.T. | We, us and our(s) |  | 9 |
| U.U. | Wind |  | 9 |
| V.V. | You and your(s) |  | 9 |

Case Number: KC-2017-0170
Filed in Kent County Superior Court
Submitted: 4/12/2017 10:14:20 AM
Envelope: 1001576
Reviewer: Lindsay Z.

## POLICY REFERENCE INDEX – (CONTINUED)

|  | Form Number | Beginning on Page |
|---|---|---|

**ENDORSEMENTS**

    See POLICY INDEX

Case Number: KC-2017-0170
Filed in Kent County Superior Court
Submitted: 4/12/2017 10:14:20 AM
Envelope: 1001576
Reviewer: Lindsay Z.

Policy Number YU2-Z91-444950-034

## RM SELECT™ POLICY

## POLICY INDEX

| TITLE | FORM NO. | EDITION DATE |
|---|---|---|
| ANNUAL MEETING NOTICE | LIL 90 04 | 06 13 |
| POLICY REFERENCE INDEX | RM0002 | 06-13 |
| POLICY INDEX | RM0003 | 02-11 |
| STATE OR MUNICIPAL TAXES, SURCHARGES AND OTHER MISCELLANEOUS CHARGES SUMMARY | RM0005 | 05-06 |
| PRODUCER OF RECORD INFORMATION | EN4008 | 01-11 |
| NORTH CAROLINA ADVISORY NOTICE TO POLICYHOLDERS | SNP 32 05 | 02-13 |
| DECLARATIONS | RM1000 | 02-11 |
| COVERAGES | RM1001 | 09-08 |
| EXTENSIONS OF COVERAGES | RM1002 | 02-11 |
| EXCLUSIONS | RM1003 | 02-11 |
| PROPERTY NOT COVERED | RM1004 | 02-11 |
| VALUATIONS | RM1005 | 02-11 |
| CONDITIONS | RM1006 | 02-11 |
| DEFINITIONS | RM1007 | 02-11 |
| ADDITIONAL NAMED INSURED | RM1100 | 01-04 |
| SCHEDULE OF MORTGAGE HOLDERS OR LOSS PAYEES | RM1102 | 03-08 |
| EARTH MOVEMENT COVERAGE | RM1106 | 03-08 |
| FLOOD COVERAGE | RM1108 | 03-08 |
| INTERRUPTION OF SERVICES COVERAGE EXTENSION | RM1110 | 02-11 |
| CONTINGENT LOSS OF BUSINESS INCOME OR EXTRA EXPENSE EXTENSION | RM1112 | 03-08 |
| ADDITIONAL DEDUCTIBLES AND WAITING PERIODS | RM1115 | 02-11 |
| STANDARD EXTENSIONS AMENDATORY | RM1119 | 03-08 |
| CAP ON LOSSES FROM CERTIFIED ACT(S) OF TERRORISM | RM1144R1 | 03-08 |
| ADDITIONAL FIRST TIER WIND COUNTIES AND INDEPENDENT CITIES (THE STATES OF VIRGINIA THROUGH AND INCLUDING MAINE) | RM1158 | 11-12 |
| CONDITIONAL EXCLUSION OF TERRORISM INVOLVING NUCLEAR, BIOLOGICAL OR CHEMICAL TERRORISM (RELATING TO DISPOSITION OF FEDERAL TERRORISM RISK INSURANCE ACT) | RM1192 | 01-14 |
| EQUIPMENT BREAKDOWN EXTENSIONS OF COVERAGE | RM1250 | 03-08 |
| NEW JERSEY CHANGES | RM1829 | 03-08 |
| PENNSYLVANIA CHANGES | RM1837 | 03-08 |
| NEW JERSEY PROPERTY- LIABILITY INSURANCE GUARANTY ASSOCIATION SURCHARGE | EN4129 | 01-04 |
| DISCLOSURE - TERRORISM RISK INSURANCE ACT | EN9052 | 03-08 |
| IMPORTANT NOTICE REGARDING THE EXPIRATION OF THE TERRORISM RISK INSURANCE ACT AND THE REDUCTION IN COVERAGE FOR TERRORISM LOSSES | CNI 90 07 | 01 14 |

Copyright 2011, Liberty Mutual Group of Companies - all rights reserved.

Case Number: KC-2017-0170
Filed in Kent County Superior Court
Submitted: 4/12/2017 10:14:20 AM
Envelope: 1001576
Reviewer: Lindsay Z.

Policy number YU2-Z91-444950-034

This endorsement is effective 05/25/2014 and will terminate with the policy.  It is issued by the company designated in the Declarations.  All other provisions of the policy remain unchanged.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## STATE OR MUNICIPAL TAXES, SURCHARGES AND OTHER MISCELLANEOUS CHARGES SUMMARY

This endorsement modifies insurance provided under the following:

DECLARATIONS, Form RM1000

The following is a breakdown of the total amount of State or Municipal taxes, surcharges or other miscellaneous charges shown on DECLARATIONS, Form RM1000.

NJ Surcharge                                                                                                    $243

Copyright 2006, Liberty Mutual Group of Companies - all rights reserved.

Case Number: KC-2017-0170
Filed in Kent County Superior Court
Submitted: 4/12/2017 10:14:20 AM
Envelope: 1001576
Reviewer: Lindsay Z.

Policy number YU2-Z91-444950-034

## Important Notice

## PRODUCER OF RECORD INFORMATION

This policy has been issued by **us** to **you** through the following producer of record:

Name and Address of Producer of Record

ARTHUR J GALLAGHER RISK MANAGEMENT SERVICES INC
1900 WEST LOOP S STE 1600

HOUSTON, TX 77027

Case Number: KC-2017-0170
Filed in Kent County Superior Court
Submitted: 4/12/2017 10:14:20 AM
Envelope: 1001576
Reviewer: Lindsay Z.

# NORTH CAROLINA
## ADVISORY NOTICE TO POLICYHOLDERS

North Carolina law requires the following warning:

WARNING:  THIS PROPERTY INSURANCE POLICY DOES NOT
PROTECT YOU AGAINST LOSSES FROM FLOODS, EARTHQUAKES,
MUDSLIDES, MUDFLOWS, LANDSLIDES, WINDSTORM OR HAIL.
YOU SHOULD CONTACT YOUR INSURANCE COMPANY OR AGENT
TO DISCUSS YOUR OPTIONS FOR OBTAINING COVERAGE FOR
THESE LOSSES.  THIS IS NOT A COMPLETE LISTING OF ALL OF THE
CAUSES OF LOSSES NOT COVERED UNDER YOUR POLICY.  YOU
SHOULD READ YOUR ENTIRE POLICY TO UNDERSTAND WHAT IS
COVERED AND WHAT IS NOT COVERED.

In conjunction with the foregoing (and reviewing the entire policy), note that this policy may include one (1) or more of the following forms or endorsements, which provide certain coverage:

Form RM1105, EARTH MOVEMENT SPRINKLER LEAKAGE EXTENSION
Form RM1106, EARTH MOVEMENT COVERAGE
Form RM1108, FLOOD COVERAGE

In addition, with the exception of a deductible, limitation, etc. (which will apply if contained in this policy), this policy only excludes wind or hail by endorsement (if any).

Case Number: KC-2017-0170
Filed in Kent County Superior Court
Submitted: 4/12/2017 10:14:20 AM
Envelope: 1001576
Reviewer: Lindsay Z.



Liberty Mutual.
INSURANCE

# RM SELECT™ POLICY

## DECLARATIONS

Policy number YU2-Z91-444950-034

Named Insured and Mailing Address

Hoot Owl Restaurants Llc

337 East Main St
Newark  DE  19711-7152

Form of Business Corporation

Premium Will Be Billed Annually

**Policy Period:** 05/25/2014 to 05/25/2015 at 12:01 A.M. standard time at above mailing address.

In return for the payment of the premium, and subject to all the terms of this policy, we agree with you to provide the insurance as stated in this policy.

| | |
|---|---:|
| Premium (Excluding premium for "certified act(s) of terrorism" under the Terrorism Risk Insurance Act (TRIA), as amended): | $65,665 |
| Premium for "certified act(s) of terrorism" under the Terrorism Risk Insurance Act (TRIA), as amended: | $724 |
| State or Municipal Taxes, Surcharges and Other Miscellaneous Charges: (See State or Municipal Taxes, Surcharges and Other Miscellaneous Charges Summary, Form RM0005, for breakdown) | $243 |
| Total Premium/Other Charges for Above **Policy Period:** | $66,632 |
| The Deposit Premium/Other Charges is: | $66,632 |

Issued By: Liberty Mutual Fire Insurance Company

By: *Dana D. Shutters*

_____
Authorized Company Representative OR Countersignature (as required)

Copyright 2011, Liberty Mutual Group of Companies - all rights reserved.

Case Number: KC-2017-0170
Filed in Kent County Superior Court
Submitted: 4/12/2017 10:14:20 AM
Envelope: 1001576
Reviewer: Lindsay Z.

# DECLARATIONS (Continued)

A.  Insuring Agreement

Subject to all the terms and conditions of this policy, we will pay for risks of direct physical loss or damage to **covered property** as a result of an **occurrence**, unless excluded.

If this policy provides Equipment Breakdown coverage then subject to all the terms and conditions of this policy we will pay for direct physical loss or damage to **covered property** as a result of an **accident to an object**, unless excluded.

This policy consists of the forms and endorsements shown on the POLICY INDEX, Form RM0003, and any endorsements attached to the policy. Insurance is provided at those locations and for those coverages and **limits of liability** shown on the Schedule of this form. Extensions of coverage, sublimits of liability and deductibles are listed on this form. Endorsements may contain separate terms, conditions, deductibles and limits or sublimits of liability.

Words in **bold faced type** have special meanings in this policy. They are defined in DEFINITIONS, Form RM1007. These definitions apply to this entire policy, and to any endorsements to it. Definitions that apply to individual forms or endorsements will be italicized and noted in those forms or endorsements. The names of forms are capitalized (for example, DECLARATIONS).

B.  Coverages

We provide the following coverages if they are marked with an "X". Coverages are provided in accordance with the terms of this policy. Terms that apply only to individual coverage forms are set forth in those forms. This policy provides coverage on a replacement cost basis for **real property**, **personal property**, **personal property of others** and equipment breakdown except as indicated on VALUATIONS, Form RM1005, or any other forms or endorsements attached to this policy.

(X) **Real Property**
(X) **Personal Property**, including **personal property of others**
(X) Equipment Breakdown
(X) Loss of Business Income
    ( ) **Real Property** or **Personal Property** only
    ( ) Equipment Breakdown only
    (X) **Real Property** or **Personal Property** and Equipment Breakdown
(X) **Extra Expense**
    ( ) **Real Property** or **Personal Property** only
    ( ) Equipment Breakdown only
    (X) **Real Property** or **Personal Property** and Equipment Breakdown

C.  **Limits of Liability**

We will not pay more than the applicable **limit of liability** shown on the Schedule of this form for any one (1) **occurrence** or any one (1) **accident** covered by this policy, nor will we pay for more than **your** interest in the lost or damaged property.

D.  Standard Extensions of Coverage

Refer to **A.** of EXTENSIONS OF COVERAGE, Form RM1002, for the standard extensions of coverage, including sublimits of liability, provided by this policy.

E.  Optional Extensions of Coverage – Sublimits of Liability

1.  The sublimits of liability shown in **E. 4.** below apply to the Optional Extensions of Coverage defined in **B.** of EXTENSIONS OF COVERAGE, Form RM1002. If no sublimit is shown, no coverage is provided.

2.  If a sublimit is shown in **E. 4.** below for **miscellaneous locations, new locations** and **unscheduled locations**, coverage may be limited or excluded elsewhere in this policy or its endorsements.

RM1000 02-11

Page 2 of 6

Case Number: KC-2017-0170
Filed in Kent County Superior Court
Submitted: 4/12/2017 10:14:20 AM
Envelope: 1001576
Reviewer: Lindsay Z.

## DECLARATIONS (Continued)

3. These sublimits are the most we will pay for any loss covered by these Optional Extensions of Coverage. For **miscellaneous locations, new locations and unscheduled locations**, the most we will pay for any loss or damage will be the lesser of:

    a. The sublimit shown below for **miscellaneous locations, new locations or unscheduled locations**; or

    b. The sublimit shown on any individual coverage form or endorsement.

4. Optional Extensions of Coverage:

| | | |
|---|---|---|
| a. | $1,000,000 | Course of Construction; |
| b. | $1,000,000 | Demolition Cost; |
| c. | $1,000,000 | Increased Construction Cost; |
| d. | $1,000,000 | Operation of Building Laws; |
| e. | $1,000,000 | Errors and Omissions; |
| f. | $No Coverage | Exhibitions, Expositions, Fairs or Trade Shows; |
| g. | $1,000,000 | at each **miscellaneous location**; |
| h. | $2,000,000 | at each **new location**, for up to 120 days from the date such **new location(s)** is first purchased or rented, whichever is earlier; |
| i. | $No Coverage | on covered **personal property** in the custody of salespeople; |
| j. | $100,000 | **Transit;** |
| k. | $No Coverage | at each **unscheduled location.** |

F. Equipment Breakdown Coverage

  1. Equipment Breakdown **limit of liability**

    If marked with an "X" the following **limits of liability** apply:

    (X) See the Schedule of this form;

    ( ) See Form Not Applicable; or

    ( ) **Limit(s) of liability** shown below are separate from any other applicable **limit of liability** or any sublimit of liability of this policy.

| | |
|---|---|
| $Not Applicable | Damage to covered **object(s)**, loss of **business income**, and **extra expense**; |
| $Not Applicable | Damage to covered **object(s)** and loss of **business income**; |
| $Not Applicable | Damage to covered **object(s)** and **extra expense**; |
| $Not Applicable | Damage to covered **object(s)**; |
| $Not Applicable | Loss of **business income** and **extra expense**; |
| $Not Applicable | Loss of **business income**; |
| $Not Applicable | **Extra expense.** |

Case Number: KC-2017-0170
Filed in Kent County Superior Court
Submitted: 4/12/2017 10:14:20 AM
Envelope: 1001576
Reviewer: Lindsay Z.

## DECLARATIONS (Continued)

**2.** For equipment breakdown extensions of coverage see EQUIPMENT BREAKDOWN EXTENSIONS OF COVERAGE, Form RM1250.

**G.** Deductible and waiting periods, except as indicated on any other forms or endorsements attached to this policy.

**1.** $10,000. Unless marked with an "X" in **G. 2.**, or as provided in **G. 3.** below, we will not pay unless a **covered loss** from any one (1) **occurrence** exceeds the amount shown.

**2.** (X) See ADDITIONAL DEDUCTIBLES AND WAITING PERIODS, Form RM1115.

**3.** Equipment breakdown deductibles or waiting periods will be applied as specified below:

    **a.** If **you** have a combined deductible, we will not pay unless a covered equipment breakdown loss from any one (1) **accident** is more than:

| | |
|---|---|
| $See G.1. above | for loss to covered **object(s)**, loss of business income, and extra expense; |
| $Not Applicable | for loss to covered **object(s)** and loss of business income; |
| $Not Applicable | for loss to covered **object(s)** and extra expense |

    **b.** If one (1) or more deductible amounts are shown below, each will be applied separately.

| | |
|---|---|
| $Not Applicable | Covered **object(s)**. |
| $Not Applicable | Loss of business income and extra expense. |
| $Not Applicable | Loss of business income. |
| $Not Applicable | **Extra expense.** |
| Not Applicable | times the **average daily value** of loss of **business income** or **extra expense** during the **period of restoration**. |
| Not Applicable | hours immediately following the **accident** for loss of **business income** or extra expense. |

    **c.** We will not pay for loss of **business income**, **extra expense**, or, to the extent **perishable goods** coverage is provided in EQUIPMENT BREAKDOWN EXTENSIONS OF COVERAGE, Form RM1250, unless a covered equipment breakdown loss from any one (1) **accident** to an **object** exceeds a waiting period of Not Applicable hours.

    Once the waiting period has been exceeded coverage will begin at the initial time of the interruption, and will be subject to the deductibles shown in **G. 3.**

    **d.** ( ) See ADDITIONAL DEDUCTIBLES AND WAITING PERIODS, Form RM1115.

Once a deductible or waiting period is exceeded, we will then pay for the excess, up to the applicable **limit of liability**.

If a **covered loss**, involves two (2) or more deductibles, we will use no more than the largest of the applicable deductibles except as provided in **G. 3. b.** or the ADDITIONAL DEDUCTIBLES AND WAITING PERIODS, Form RM1115.

Case Number: KC-2017-0170
Filed in Kent County Superior Court
Submitted: 4/12/2017 10:14:20 AM
Envelope: 1001576
Reviewer: Lindsay Z.

## DECLARATIONS (Continued)

Schedule

| No. | Location or Sub-location | Coverage | Limit of Liability |
|-----|--------------------------|----------|--------------------|
|     | All covered locations including coverage for Equipment Breakdown as per Statement of Values on file with us, except as scheduled below.  Insurance does not apply at locations and/or coverages at locations unless a specific value is provided by you. | Blanket **Real Property** | $15,825,000* |
|     |                          | Blanket **Personal Property** | $3,400,000* |
|     |                          | Blanket Loss of **Business Income** | $6,875,000* |
|     |                          | Blanket **Extra Expense** | $1,000,000* |

*Limits include Equipment Breakdown

RM1000 02-11

Page 5 of 6

Case Number: KC-2017-0170
Filed in Kent County Superior Court
Submitted: 4/12/2017 10:14:20 AM
Envelope: 1001576
Reviewer: Lindsay Z.

## DECLARATIONS (Continued)

List of Locations:

| Loc # | Address | City | State | Zip | Country |
|---|---|---|---|---|---|
| 1 | 80 Rehoboth Beach Gdns | Rehoboth Beach | DE | 19971-1436 | |
| 2 | 194 S Dupont Hwy | New Castle | DE | 19720-4149 | |
| 3 | 337 E Main St | Newark | DE | 19711-7192 | |
| 4 | 132-136 Astro Shopping Ctr | Newark | DE | 19711-7254 | |
| 5 | 41 Route 4 East | Hackensack | NJ | 07601 | |
| 6 | 400 Mercer Mall | Lawrenceville | NJ | 08648 | |
| 7 | 2821 Boardwalk A | Atlantic City | NJ | 08401-6338 | |
| 8 | 3939 Route 17 South | Paramus | NJ | 07652 | |
| 9 | 2821 Boardwalk | Atlantic City | NJ | 08401 | |
| 11 | 2821 Boardwalk B | Atlantic City | NJ | 08401-6338 | |
| 12 | 195 Route 18 | East Brunswick | NJ | 08816 | |
| 13 | 1110 Baltimore Pike | Glen Mills | PA | 19342-1013 | |
| 14 | 240 N Gulph Rd | King Of Prussia | PA | 19406-2804 | |
| 15 | 667 Airport Rd | Warwick | RI | 02886 | |
| 16 | 9183 Roosevelt Blvd. | Philadelphia | PA | 19114 | |

RM1000 02-11

Page 6 of 6

Case Number: KC-2017-0170
Filed in Kent County Superior Court
Submitted: 4/12/2017 10:14:20 AM
Envelope: 1001576
Reviewer: Lindsay Z.

## COVERAGES

**A.** If coverage for **real property** is provided as shown in **B.** Coverages of the DECLARATIONS, Form RM1000, we will pay for a **covered loss** to **your real property** at or within one-thousand (1,000) feet of a **covered location.**

**B.** If coverage for **personal property** is provided as shown in **B.** Coverages of the DECLARATIONS, Form RM1000, we will pay for a **covered loss** to **your personal property**, including **personal property of others** and valuable papers and records, at or within one-thousand (1,000) feet of a **covered location.**

**C.** If coverage for loss of **business income** is provided as shown in **B.** Coverages of the DECLARATIONS, Form RM1000, we will pay for:

1. The actual loss of **business income you** incur during a **period of restoration** directly resulting from damage by a **peril insured against** to the type of property covered by this policy at a **covered location.**

2. The necessary expenses you incur in excess of **your** normal operating expenses that reduces **your** loss of **business income.** We will not pay more than we would pay if **you** had been unable to make up lost production or continue operations or services.

3. The actual loss of **business income you** incur if **you** are denied access to a **covered location** by order of civil or military authority if:

    a. the order results from a **covered loss**; or

    b. the order results from damage by a **peril insured against** to the type of property covered by this policy within one (1) statute mile of a **covered location.**

   This coverage will apply for a period not to exceed twenty-one (21) consecutive days from the date of the order.

4. The actual loss of **business income you** incur if **your** ingress to or egress from a **covered location** is prevented as the direct result of a **peril insured against** to the type of property covered by this policy within one (1) statute mile of a **covered location.**

   This coverage will apply for a period not to exceed twenty-one (21) consecutive days from the date **your** ingress or egress is first prevented.

5. In determining the actual loss of **business income,** consideration must be given to:

    a. The experience of the business before the loss and the probable experience after the loss;

    b. The continuation of only those normal charges and expenses that would have been incurred had no interruption of production or suspension of business operations or services happened;

    c. The demonstration of an actual loss of sales, income, or rental income; and

    d. Any amount recovered, at selling price, for loss or damage to merchandise that will be considered to have been sold.

6. **We** will not pay unless **you** are wholly or partially prevented from:

    a. producing goods; or

    b. continuing business operations or services.

Copyright 2008, Liberty Mutual Group of Companies - all rights reserved.

RM1001 09-08

Case Number: KC-2017-0170
Filed in Kent County Superior Court
Submitted: 4/12/2017 10:14:20 AM
Envelope: 1001576
Reviewer: Lindsay Z.

## COVERAGES (Continued)

7. **You** are required to mitigate **your** loss by:

   a. Making up lost production within a reasonable period of time not limited to the **period of restoration**.

   b. Continuing business operations or services during the **period of restoration**.

   c. Using any property or service:

      (1) owned or controlled by **you**; or

      (2) obtainable from any other sources.

   d. Working extra time or overtime.

   e. Using inventory.

   **We** will not pay for any loss to the extent it can be reduced through these or any other means whether at a **covered location** or any other location.

8. **We** will not pay for:

   a. Any loss during any idle period. Idle period includes, but is not limited to, any period when production, operation or service would cease or be prevented due to:

      (1) physical damage not insured under this policy on or away from the **covered location**;

      (2) planned or rescheduled shutdown or maintenance;

      (3) strikes or other work stoppage; or

      (4) any reason other than a **covered loss**.

   b. Any increase in loss due to:

      (1) suspension, cancellation or lapse of any lease, contract, license or order.

      (2) fines or damage for breach of contract for late or non-completion of orders, or for penalties of any nature.

   c. Any consequential, indirect or remote loss.

   d. Any loss resulting from damage to:

      (1) finished goods manufactured by **you**, nor for the time required for their reproduction.

      (2) property in **transit**.

   e. Any loss or expense recoverable elsewhere in this policy.

9. The most **we** will pay for a loss under this coverage is the lesser of:

   a. **Your** actual loss of **business income** and necessary expense; or

   b. The applicable **limit of liability** shown on the Schedule of the DECLARATIONS, Form RM1000, or any endorsements to this policy.

Case Number: KC-2017-0170
Filed in Kent County Superior Court
Submitted: 4/12/2017 10:14:20 AM
Envelope: 1001576
Reviewer: Lindsay Z.

## COVERAGES (Continued)

**D.** If coverage for **extra expense** is provided as shown in **B. Coverages** of the DECLARATIONS, Form RM1000, **we** will pay for:

1.  The actual **extra expense you** incur during a **period of restoration** directly resulting from damage by a **peril insured against** to the type of property covered by this policy at a **covered location.**

2.  The actual **extra expense you** incur if **you** are denied access to a **covered location** by order of civil or military authority if:

    a.  the order results from a **covered loss**; or

    b.  the order results from damage by a **peril insured against** to the type of property covered by this policy within one (1) statute mile of a **covered location.**

    This coverage will apply for a period not to exceed twenty-one (21) consecutive days from the date of the order.

3.  **We** will not pay for:

    a.  Loss of business income.

    b.  Costs which would have been incurred in conducting **your** business during the same period had no **covered loss** happened.

    c.  The cost of permanent repair or replacement of property that has been damaged or destroyed.

    d.  Any loss during any idle period. Idle period includes, but is not limited to, any period when production, operation or service would cease or be prevented due to:

        (1)  physical damage not insured under this policy on or away from the **covered location;**

        (2)  planned or rescheduled shutdown or maintenance;

        (3)  strikes or other work stoppage; or

        (4)  any reason other than a **covered loss.**

    e.  Any increase in loss due to:

        (1)  suspension, cancellation or lapse of any lease, contract, license or order.

        (2)  fines or damage for breach of contract for late or non-completion of orders, or for penalties of any nature.

    f.  Any consequential, indirect or remote loss.

    g.  Any loss resulting from damage to:

        (1)  finished goods manufactured by **you**, nor for the time required for their reproduction.

        (2)  property in **transit.**

    h.  Any loss or expense recoverable elsewhere in this policy.

Case Number: KC-2017-0170
Filed in Kent County Superior Court
Submitted: 4/12/2017 10:14:20 AM
Envelope: 1001576
Reviewer: Lindsay Z.

## COVERAGES (Continued)

4.   The most we will pay for a loss under this coverage is the lesser of:

    a.   **Your** actual **extra expense**; or

    b.   The applicable **limit of liability** shown on the Schedule of the DECLARATIONS, Form RM1000, or any endorsements to this policy.

E.   If coverage for equipment breakdown is provided as shown in **B.** Coverages of the DECLARATIONS, Form RM1000, the following provisions apply to loss or damage that results from or is caused by an **accident** to a covered **object**:

1.   Exclusions **B. 8., B. 9., B. 10.** and **B. 11.** in EXCLUSIONS, Form RM1003, do not apply to a **covered loss** that result from an **accident** to covered **object**(s).

2.   **We** will pay if an **accident** to covered **object**(s) causes:

    a.   Loss to property **you** own;

    b.   Loss to the property of others in **your** care, custody or control and for which **you** are legally liable.

3.   If direct loss or damage to an electrical **object**(s) results from the peril of **flood** **we** will pay for the amount **you** actually expend to dry out the **object**(s).

    **Our** payment to **you** will:

    a.   Be subject to the applicable direct damage **limit of liability** and deductible as shown in **F. 1.** and **G. 2.** of the DECLARATIONS, Form RM1000, for damage to covered **object**(s); and

    b.   Not exceed the value of the damaged **object**(s).

RM1001 09-08

Page  4  of  4

Case Number: KC-2017-0170
Filed in Kent County Superior Court
Submitted: 4/12/2017 10:14:20 AM
Envelope: 1001576
Reviewer: Lindsay Z.

## EXTENSIONS OF COVERAGE

**A.** Standard Extensions of Coverage

In the event of a **covered loss**, the coverage provided by this policy is extended as follows:

**1.** Accounts Receivable

    **a.** We will pay up to a **limit of liability** of $100,000 for the following expenses **you** incur directly resulting from loss or damage by a **peril insured against** to **your** records of accounts receivable at a **covered location**:

        **(1)** Amounts due **you** from customers that **you** are unable to collect;

        **(2)** Interest charges on any loan to offset amounts **you** are unable to collect, pending **our** payment of those amounts;

        **(3)** Collection expense above **your** normal collection expense; and

        **(4)** Reasonable expenses **you** incur to reestablish **your** records of accounts receivable.

    **b.** For the purposes of this extension of coverage, the following additional exclusions apply and we will not pay for:

        **(1)** Any loss that requires an audit or inventory to establish its existence;

        **(2)** Any fraudulent, dishonest or criminal act done by:

            **(a)** Anyone entrusted with the accounts receivables, including their employees and agents; or

            **(b)** Anyone having an interest in the accounts receivable.

        This exclusion does not apply to the acts of a carrier for hire.

        **(3)** Bookkeeping, accounting, or billing errors or omissions.

        **(4)** Wrongful alteration, falsification, manipulation, concealment, destruction, or disposal of records of accounts receivable, committed to conceal the wrongful giving, taking, getting, or withholding of money, securities, or other property.

    **c.** When records of accounts receivable have been damaged or destroyed, **you** must use all reasonable efforts, including legal action if necessary, to obtain collection of any outstanding accounts receivable, and we will pay such costs and expenses of obtaining collection to the extent they reduce **your** loss.

    **d.** When records of accounts receivable have been damaged or destroyed, **you** will use any property or service owned or controlled by **you** or obtainable from other sources in order to reduce **your** loss.

    **e.** If **you** are unable to accurately determine the amount of outstanding accounts receivable at the time of loss, **our** payment will be calculated in the following manner:

    **Your** average monthly accounts receivable amount, based on the twelve (12) months preceding the loss, adjusted for normal fluctuations in the month in which the loss occurs, or for any demonstrated variance for that month.

Copyright 2011, Liberty Mutual Group of Companies - all rights reserved.

Case Number: KC-2017-0170
Filed in Kent County Superior Court
Submitted: 4/12/2017 10:14:20 AM
Envelope: 1001576
Reviewer: Lindsay Z.

## EXTENSIONS OF COVERAGE (Continued)

    **f.**  The following will be deducted from the total amount of accounts receivable, regardless of the method used to determine that amount:

        (1) Balances for accounts not damaged or affected by the loss;

        (2) Amounts of accounts you are able to reestablish and collect;

        (3) An allowance for bad debts you are not normally able to collect; and

        (4) All unearned interest and service charges.

**2.**  Arson Reward

If one (1) or more **covered losses** are caused by or result from any fires of a suspicious nature, **we** will pay a $25,000 reward to an individual or individuals provided:

    **a.**  The individual(s) report(s) the suspected arsonist to local law enforcement officials; and

        (1) The arsonist is apprehended, brought to trial, and convicted of arson to **your covered property**; or

        (2) The arsonist is apprehended, confesses and/or pleads guilty to arson to **your covered property** without going to trial.

    **b.**  **Our** payment of this reward will not be increased by:

        (1) The number of individuals reporting the arsonist(s);

        (2) The number of arsonists involved in the **covered loss**; or

        (3) The number of **covered losses**.

No deductible applies to this extension of coverage.

**3.**  Computer Virus and Denial of Access

**We** will pay up to $25,000 for loss or damage to, or any cost, claim or expense caused by or resulting directly or indirectly from any of the following, regardless of any other cause or event that contributes to the loss, damage, cost, claim or expense at the same time or in any sequence:

    **a.**  The introduction of a malicious code, program, virus, worm, Trojan Horse program, macro time or logic bomb or similar unauthorized instruction which is designed or intended to damage, corrupt, destroy, distort, or delete any part of the system or disrupt its normal operation, into any of the following, whether owned by you or others:

        (1) **Data processing equipment, software, data**, or **media**;

        (2) Information repository;

        (3) Hardware or **software** based computer operating systems;

        (4) Microprocessors;

        (5) Integrated circuits;

        (6) Computer networks;

Case Number: KC-2017-0170
Filed in Kent County Superior Court
Submitted: 4/12/2017 10:14:20 AM
Envelope: 1001576
Reviewer: Lindsay Z.

## EXTENSIONS OF COVERAGE (Continued)

          (7)  Website service; or

          (8)  Any other electronic equipment, computerized equipment, or similar device.

    **b.**  A change in the functionality, availability, operation, use of accessibility to or operation of any of the items described in **3. a. (1) - (8)** above.

**4.**  Debris Removal Expense

    **a.**  We will pay for the expense to remove the debris from a **covered loss**. We will only pay these expenses if we receive immediate written notice of the **covered loss** and if these expenses are reported to us in writing within one-hundred-eighty (180) days of the date of the **covered loss**.

    **b.**  Debris removal expense is limited to a sublimit of liability of $250,000.

    **c.**  We will pay up to $25,000 for expenses to remove from a **covered location**, windblown debris of property not covered by this policy.

    **d.**  Debris removal expense does not include any costs to clean up or remove **pollutants, fungus,** bacteria, wet or dry rot, or decay.

**5.**  Deferred Payments

    **a.**  We will pay up to a sublimit of liability of $25,000 for the uncollectable, unpaid balance owed **you** for direct physical loss or damage caused by or resulting from a **peril insured against** to **personal property** of the type covered by this policy that was sold by **you** under a conditional sale or trust agreement or any installment or deferred payment plan after the **personal property** has been delivered to **your** client and is now in their care, custody and control.

    **b.**  In the event of loss or damage caused by or resulting from a **peril insured against** to **personal property** sold under any of the payment plans shown in **5. a.** above, **you** will use all reasonable effort, including legal action against **your** client, to:

          (1)  Collect any outstanding balance due **you**; or

          (2)  Regain possession of the **personal property**.

    **c.**  We will not pay for loss or damage caused by or resulting from:

          (1)  A recall of **your** product. This includes but is not limited to **your** cost to recall, test or to advertise the recall.

          (2)  Theft or conversion of **your personal property** sold under any payment plan shown in **5. a.** above by **your** client after they have taken possession of the **personal property**.

    **d.**  This extension of coverage only applies to **your personal property** sold under any of the payment plans shown in **5. a.** above that is located within the territory of this policy.

    **e.**  Coverage provided by this extension does not apply if **your** client continues with their payments.

**6.**  Duty to Defend

**We** will defend that part of any suit against **you** involving **personal property of others** when all of the following conditions exist:

Case Number: KC-2017-0170
Filed in Kent County Superior Court
Submitted: 4/12/2017 10:14:20 AM
Envelope: 1001576
Reviewer: Lindsay Z.

## EXTENSIONS OF COVERAGE (Continued)

**a.** The suit seeks payment for physical loss or damage to the **personal property of others**; and

**b.** The physical loss or damage is caused by a **peril insured against**; and

**c.** The physical loss or damage takes place while the **personal property of others** is in your custody; and

**d.** The **personal property of others** is the type of property covered by this policy.

We will do so even if such suit is groundless, false or fraudulent, but we may, without prejudice, make such investigation, negotiation and settlement of any claim or suit, as we deem appropriate.

**7.** Extended **Period of Restoration**

**a.** If loss of **business income** coverage is provided, we will pay the actual loss of **business income you** sustain due to a reduction in sales, earnings or rental income that directly results from direct physical loss or damage to **your covered property** by a **peril insured against**, for the additional time required, when **you** use reasonable speed, to restore **your** business to the condition it would have been in if no loss had occurred. This additional time starts with the time when the **period of restoration** would end, and continues for no more than sixty (60) consecutive days immediately following the **period of restoration**.

**b.** This extension of coverage does not apply if **you** elect not to either repair or replace **your covered property**, or to resume the operation of **your** business. For purposes of this extension of coverage the exclusions and restrictions in this policy regarding loss of **your** market share do not apply to any claim made under this extension of coverage.

**8.** Fire Department Charges

We will pay charges **you** incur when the fire department is called to save or protect **covered property** from a **covered loss**.

**9.** **Fine Arts**

We will pay up to a sublimit of liability of $100,000 for **covered loss** to your **fine arts**. We will not however pay for:

**a.** Loss or damage sustained from any repair, restoration, or retouching process;

**b.** Breakage of art glass windows, statuary, marble, glassware, bric-a-brac, porcelains, and similar fragile articles, unless caused by fire, lightning, aircraft, theft and or attempted theft, windstorm, **earth movement, flood**, explosion, vandalism, collision, derailment or overturn of conveyance; or

**c.** Loss or damage to **your fine arts** while away from a **covered location**.

**10.** **Fungus Cleanup Expense**

**a.** If **fungus** results from a **covered loss** due to fire or lightning, we will pay up to the applicable **limit of liability** for the cost and expense:

    **(1)** To remove **fungus** from **covered property** at a **covered location**;

    **(2)** To repair or replace any undamaged portion of **covered property** at a **covered location** that must be removed to gain access to **fungus** in order to remove it; and

    **(3)** To test for the presence of **fungus** on **covered property** at a **covered location** after **fungus** has been removed as provided by this extension.

RM1002 02-11

Case Number: KC-2017-0170
Filed In Kent County Superior Court
Submitted: 4/12/2017 10:14:20 AM
Envelope: 1001576
Reviewer: Lindsay Z.

## EXTENSIONS OF COVERAGE (Continued)

    **b.** If **fungus** results from a **covered loss** due to a **peril insured against** other than fire or lightning, we will pay up to $250,000 for the costs and expenses outlined in 10. a. (1) – (3) of this extension of coverage.

    **c.** In order for this extension of coverage to apply **we** must receive immediate written notice of the **covered loss**, and these costs and expenses must be reported to us in writing within one-hundred-eighty (180) days of the date of the **covered loss**.

    **d.** The removal and testing for **fungus** does not include any costs to remove **pollutants**.

**11.** Installation of **Personal Property** or **Personal Property of Others**

**We** will pay up to $250,000 for direct physical loss or damage by a **peril insured against** to **your personal property**, or **personal property of others**, which **you** have sold under an installation agreement, if **your** responsibility continues until the purchaser accepts the installation. Installation coverage applies to any non-owned location within the policy territory.

**12.** Lock and Key Replacement

    **a.** When a master key or grand master key is lost or damaged from a **covered loss**, we will pay the lesser of:

        **(1)** The actual cost to replace keys;

        **(2)** The cost to rekey or reprogram the current locks to accept new keys; or

        **(3)** When needed, new locks including the installation and reprogramming of the new locks.

    **b.** The most we will pay in any one (1) **occurrence** for this extension of coverage is a sublimit of liability of $25,000.

**13.** **Personal Property** of Employees

**We** will pay for loss or damage by a **peril insured against** to the **personal property** (other than vehicles) of **your** employees when such property is at a **covered location** or being used by the employee in the course of employment. **We** will not pay for any loss or damage to such property that occurs at the employee's residence.

**14.** Plants, Trees or Shrubs

**We** will pay up to a sublimit of liability of $100,000 for a **covered loss** to plants, trees and shrubs, however loss or damage caused by freezing, disease or drought is excluded.

**15.** Pollution Cleanup Expense

    **a.** **We** will pay to remove **pollutants** from **covered property** at a **covered location** if the **pollution** results from a **specified peril**, subject to the applicable **limit of liability**.

    **b.** **We** will pay up to an annual aggregate **limit of liability** of $25,000 to remove **pollutants** from **covered property** at a **covered location**, if the **pollution** results from a **peril insured against** other than a **specified peril**.

    **c.** If pollution results from a **peril insured against**, we will pay up to an annual aggregate **limit of liability** of $25,000:

        **(1)** To remove **pollutants** from land, soil, surface or ground water upon, within, beneath or comprising a **covered location**; or

       **(2)** For testing performed in the course of extracting the **pollutants** from **covered locations**.

Case Number: KC-2017-0170
Filed in Kent County Superior Court
Submitted: 4/12/2017 10:14:20 AM
Envelope: 1001576
Reviewer: Lindsay Z.

## EXTENSIONS OF COVERAGE (Continued)

**We will** pay for removal or testing after a **covered loss** that occurs during the **policy period**.

**We will** only pay these expenses if **we** receive immediate written notice of the **covered loss** and if these expenses are reported to **us** in writing within one-hundred-eighty (180) days of the date of the **covered loss**.

16. Professional Fees

   a. **We will** pay up to $25,000 for the reasonable costs **you** incur, for auditors, architects, accountants and engineers whom **you** hire to prepare and verify the details of a claim from a **covered loss**.

   b. Professional fees covered under this extension, however, do not include:

   (1) any fees or expenses of attorneys;

   (2) any fees or expenses of public adjusters or any of their subsidiaries or associated entities;

   (3) fees based on a contingency; or

   (4) the cost of **your** own employees.

17. Removal

   a. **We will** pay the reasonable and necessary costs or expenses **you** incur:

   (1) to remove **covered property** from locations under imminent threat by a **peril insured against**; and

   (2) to return the **covered property** to the original location it had been removed from once the danger by a **peril insured against** has ended.

   b. When **covered property** has been removed for this reason, it will be insured against loss or damage from a **peril insured against** at the temporary location according to the following terms:

   (1) For up to ninety (90) days at each place to which the property has been taken for preservation;

   (2) The applicable **limit of liability** will apply to each temporary location on a pro rata basis, based on the value **your covered property** stored at that location bears to the total value of **covered property** originally insured at the location under imminent threat.

The sublimits of liability, rewards or other amounts payable under these standard extensions of coverage do not increase and are not in addition to any other applicable **limit of liability**.

B. Optional Extensions of Coverage

These extensions of coverage apply only if the applicable sublimit of liability is shown in **E. Optional Extensions of Coverage – Sublimits of Liability** of the DECLARATIONS, Form RM1000.

1. Course of Construction

   a. **We will** pay for direct physical loss or damage to **real property** of the type insured by this policy, including new additions and buildings at an existing **covered location**, that **you** begin to construct during the **policy period**.

   (1) This coverage only applies for sixty (60) days from the date **you** begin construction.

Case Number: KC-2017-0170
Filed in Kent County Superior Court
Submitted: 4/12/2017 10:14:20 AM
Envelope: 1001576
Reviewer: Lindsay Z.

## EXTENSIONS OF COVERAGE (Continued)

    (2)  To continue this coverage beyond the sixty (60) days, **you** must:

        (a)  Report newly constructed **real property** to **us** prior to the end of that sixty (60) day period; and

        (b)  Pay premium from the date **you** begin construction.

  **b.**  **We** will also pay under this extension of coverage for materials, supplies, machinery, equipment and fixtures, including those that are **personal property of others**, which are:

    (1)  Intended by **you** for use in construction; and

    (2)  Located on the construction site awaiting use in construction.

  **c.**  This coverage only applies to the construction of **real property you** intend to own or occupy once constructed.

**2.**  Errors and Omissions

If a **covered loss** is not payable under this policy solely because of an error or unintentional omission made by **you**:

  **a.**  In the description of where **covered property** is physically located;

  **b.**  To include any location:

    (1)  owned, rented or leased by **you** on the **effective date** of this policy; or

    (2)  purchased, rented or leased by **you** during the term of the policy; or

  **c.**  That results in cancellation of the property insured under this policy, except for cancellation due to nonpayment of premium.

Then **we** will pay the amount **we** would have paid had the error or omission not been made, but not exceeding the **limit of liability** provided for Errors and Omissions shown on the DECLARATIONS, Form RM1000.

This coverage does not apply, however, if coverage is found, in whole or in part, elsewhere in this policy.

**3.**  Exhibitions, Expositions, Fairs or Trade Shows

**We** will pay for loss or damage to **your personal property** while at an exhibition, exposition, fair or trade show.

Coverage also applies while **your personal property** is being transported between a **covered location** and the location of the exhibition, exposition, fair or trade show.

**4.**  Miscellaneous Locations

**Miscellaneous locations** are insured for coverages marked with an "X" in **B.** Coverages of the DECLARATIONS, Form RM1000, and coverages provided by endorsement.

**5.**  New Locations

  **a.**  **New locations** are insured for coverages marked with an "X" in **B.** Coverages of the DECLARATIONS, Form RM1000, and coverages provided by endorsement for the period of time specified in **E. 4. h.** of the DECLARATIONS, Form RM1000.

RM1002 02-11

Case Number: KC-2017-0170
Filed in Kent County Superior Court
Submitted: 4/12/2017 10:14:20 AM
Envelope: 1001576
Reviewer: Lindsay Z.

## EXTENSIONS OF COVERAGE (Continued)

    **b.** To continue this coverage beyond the time frame specified, **you** must:

        **(1)** Report **new locations** to us prior to the end of the period specified on the DECLARATIONS, Form RM1000; and

        **(2)** Pay premium from the date **you** purchase or rent these **new locations**.

**6.** Demolition Cost, Increased Construction Cost and Operation of Building Laws

    **a.** In the event of a **covered loss**, **we** will pay:

        **(1)** Demolition Cost

        The cost incurred to demolish all or part of **your covered real property**, including the cost to clear the site, if any law or ordinance that exists at the time of loss requires such demolition.

        **(2)** Increased Construction Cost

        The increased cost **you** incur for materials and labor required to rebuild the damaged portion of **your real property** at the same location and in a manner that satisfies the minimum requirements of the applicable law or ordinance existing at the time of the loss.

        **(3)** Operation of Building Laws

        The cost **you** incur to rebuild at the same location any undamaged part of **your real property** that is required by law to be demolished after a **covered loss**, excluding any costs associated with demolition. **We** will only pay the costs to satisfy the minimum requirements of the applicable law or ordinance that exists at the time of the loss.

    **b.** **We** will not pay for any of these costs:

        **(1)** Unless they are incurred within two (2) years from the date of loss.

        **(2)** If they are incurred due to any law or ordinance that:

            **(a)** **You** were required to comply with before the loss, even if the building was undamaged; and

            **(b)** **You** failed to comply with.

        **(3)** If they are associated with any demolition, abatement, removal, cleanup, debris removal, repair, monitoring or testing, increased cost of repair or other cost resulting from enforcement of any such law or ordinance which relates to **pollution, fungus**, bacteria, wet or dry rot, or decay.

**7.** Salespeople

    **a.** **Your** covered **personal property** in the custody of salespeople.

    **b.** Coverage does not apply to loss or damage by theft from the salespersons vehicle unless:

        **(1)** The vehicle is equipped with a fully enclosed body or compartment;

        **(2)** The doors, windows and hatches were securely locked; and

Case Number: KC-2017-0170
Filed in Kent County Superior Court
Submitted: 4/12/2017 10:14:20 AM
Envelope: 1001576
Reviewer: Lindsay Z.

## EXTENSIONS OF COVERAGE (Continued)

    (3)  There are visible signs of forced entry to the vehicle

    at the time of loss.

8.  **Transit**

    **Your** covered **personal property** while in **transit.**

    This extension of coverage also applies to **personal property of others** while in **transit** at **your** risk, but does not apply if **you** are acting as a common or contract carrier.

9.  **Unscheduled Locations**

    **Unscheduled locations** are insured for coverages marked with an "X" in **B.** Coverages of the DECLARATIONS, Form RM1000, and coverages provided by endorsement.

The sublimits of liability or amounts payable under these optional extensions of coverage do not increase and are not in addition to any other applicable **limit of liability.**

Case Number: KC-2017-0170
Filed in Kent County Superior Court
Submitted: 4/12/2017 10:14:20 AM
Envelope: 1001576
Reviewer: Lindsay Z.

# EXCLUSIONS

## A.  GROUP A EXCLUSIONS

We will not pay for loss or damage caused by or resulting from any of the following, regardless of any other cause or event, including a **peril insured against**, that contributes to the loss at the same time or in any other sequence:

1. Loss attributable to:

   a.  War, including undeclared or civil war; or

   b.  Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

   c.  Insurrection, rebellion, revolution, usurped power, including action taken by a governmental authority in hindering or defending against any of these

   whether or not involving the use of any chemical, biological or nuclear substance.

2. **Earth movement**, whether sudden or gradual.

   a.  If a loss to **covered property** by fire, theft, or explosion ensues, we will pay for that loss.

   b.  This exclusion does not apply to **covered property** in transit.

   c.  This exclusion does not apply to **sinkhole collapse** or **volcanic activity**.

3. **Flood.**

   a.  If a loss to **covered property** by fire, theft, or explosion ensues, we will pay for that loss.

   b.  This exclusion does not apply to **covered property** in transit.

4. Fungus, bacteria, wet or dry rot, decay.

   If a loss to **covered property** from a **specified peril** ensues, we will pay for that loss.

5. **Pollution.**

6. Demolition cost, operation of building laws and increased cost of construction including the enforcement of any ordinance or law regulating the use, construction, repair or demolition of buildings or structures.

7. Seizure or destruction of **covered property** by government order.

   We will pay for loss to **covered property** resulting from acts of destruction ordered by government to prevent the spread of fire.

8. Nuclear reaction or nuclear radiation, or radioactive contamination.

   If a loss to **covered property** by fire ensues, we will pay for that loss unless otherwise limited or excluded elsewhere in this policy, including any limits or exclusions applicable to terrorism.

Copyright 2011, Liberty Mutual Group of Companies - all rights reserved.

RM1003 02-11                                                                                                    Page  1  of  4

Case Number: KC-2017-0170
Filed in Kent County Superior Court
Submitted: 4/12/2017 10:14:20 AM
Envelope: 1001576
Reviewer: Lindsay Z.

## EXCLUSIONS (Continued)

9.    Interference with or interruption of any public or private utility or any entity providing electrical, heating, air conditioning, refrigeration, telecommunication, steam, water, sewer or fuel service or any other service, if the failure occurs away from the covered location.

   If a covered loss ensues, we will pay for that loss.

10.   The actual or suspected presence or threat of any virus, organism or like substance that is capable of inducing disease, illness, physical distress or death, whether infectious or otherwise, including but not limited to any epidemic, pandemic, influenza, plague, SARS or Avian Flu.

11.   Except as shown in A. 3. Standard Extensions of Coverage of EXTENSIONS OF COVERAGE, Form RM1002, loss attributable to:

   a.   The introduction of a malicious code, program, virus, worm, Trojan Horse program, macro time or logic bomb or similar unauthorized instruction which is designed or intended to damage, corrupt, destroy, distort, or delete any part of the system or disrupt its normal operation, into any of the following, whether owned by you or others:

      (1) **Data processing equipment, software, data, or media;**

      (2) Information repository;

      (3) Hardware or software based computer operating systems;

      (4) Microprocessors;

      (5) Integrated circuits;

      (6) Computer networks;

      (7) Website service; or

      (8) Any other electronic equipment, computerized equipment, or similar device.

   b.   Programming, operation or operator error of any of the items described in 11. a. (1) - (8).

   c.   Incompatibility, or the inability to properly interface between any of the items described in 11. a. (1) - (8).

   d.   A change in the functionality, availability, operation, use of, accessibility to or operation of any of the items described in 11. a. (1) - (8).

   e.   Inability, failure or malfunction of the items as described in 11. a. (1) - (8) or any services, functions, or products that use or rely upon in any manner one (1) or more of the items as described in 11. a. (1) - (8) to correctly recognize, distinguish, interpret, process, provide or accept data or one (1) or more dates or times.

   f.   Advice, consultation, evaluation, design, inspection, installation, repair, replacement or maintenance done by you or for you to determine or correct any conditions or problems described by in 11. a. - e.

If loss to **covered property** by any of the following perils ensues, we will pay for that loss;

   a.   Fire;

   b.   Explosion; or

   c.   Leakage or accidental discharge from automatic fire protection system.

However, we will not pay for modification, repair or replacement of systems or devices described in 11. a. (1) - (8) in order to correct any potential or actual deficiencies or to change any features.

RM1003 02-11

Case Number: KC-2017-0170
Filed in Kent County Superior Court
Submitted: 4/12/2017 10:14:20 AM
Envelope: 1001576
Reviewer: Lindsay Z.

## EXCLUSIONS (Continued)

**B.  GROUP B EXCLUSIONS**

We will not pay for loss or damage caused by or resulting from any of the following:

1.  Unexplained or mysterious disappearance of any property.

2.  Shortage of property discovered on taking inventory.

3.  Theft by employees, whether acting alone or with others.

4.  Any criminal, fraudulent or dishonest acts committed alone or in collusion with others:

    a.  By **you**;

    b.  By any of **your** associates, proprietors, partners, directors, trustees, officers, agents, employees or representatives; or

    c.  By any person or entity to whom **you** or any of **your** associates, proprietors, partners, directors, trustees, officers, agents, employees or representatives voluntarily relinquishes possession of **covered property** with or without **your** authority.

    However, acts of destruction, including vandalism, by employees to **covered property** shall not be subject to this exclusion.

5.  Manufacturing or processing operations, which result in damage to stock or materials while the stock or materials are being processed, manufactured, worked on or tested.

    If a **covered loss** ensues, we will pay for that loss.

6.  Delay, loss of market, loss of use, indirect or remote loss or damage.

7.  Loss attributable to:

    a.  Wear and tear, deterioration, depletion, erosion, rust, corrosion;

    b.  Inherent vice, latent defect, or any quality in the **covered property** that causes it to damage or destroy itself;

    c.  Smog, acid rain, agricultural smudging;

    d.  Smoke, fumes, gas or vapor that result from industrial operations;

    e.  Settling, cracking, shrinking, bulging or expansion of pavements, foundations, walls, floors, roofs or ceilings, retaining walls or outdoor swimming pools;

    f.  Animals, birds, vermin, rodents or insects;

    g.  Change or extremes in temperature or humidity, whether atmospheric or not, except damage to equipment; or

    h.  Contamination, shrinkage, change in taste, texture, finish or color.

    If a **covered loss** ensues, we will pay for that loss.

8.  Failure or breakdown of machinery or equipment, including rupture or bursting caused by centrifugal force.

    If a **covered loss** ensues, we will pay for that loss.

    This exclusion will not apply to physical loss to **data, data processing equipment** or software.

Case Number: KC-2017-0170
Filed in Kent County Superior Court
Submitted: 4/12/2017 10:14:20 AM
Envelope: 1001576
Reviewer: Lindsay Z.

## EXCLUSIONS (Continued)

9.  Explosion of the following:

    a.  Steam boilers;

    b.  Steam turbines, steam engines, steam piping, electric steam generators; or

    c.  Gas turbines.

    If a loss to **covered property** by fire or explosion ensues, we will pay for that loss.

10. Rupture, bursting, cracking, burning or bulging of the following:

    a.  Steam boilers;

    b.  Steam turbines, steam engines, steam piping, electric steam generators;

    c.  Hot water boilers or other equipment for heating water;

    d.  Pressure vessels; or

    e.  Gas turbines.

    If a loss to **covered property** by fire or explosion ensues, we will pay for that loss.

11. Any electrical injury or disturbance to electrical appliances, devices, fixtures, wiring or other electrical or electronic equipment caused by electrical currents artificially generated.

    If a fire or an explosion loss ensues, we will pay for that loss.

    This exclusion will not apply to physical loss to:

    a.  **Data or software** caused by injury, disturbance, or erasure resulting from electricity or magnetic fields; or

    b.  **Data processing equipment** caused by short circuit, blowout, or other electrical damage.

12. Loss attributable to faulty, defective or inadequate:

    a.  Construction, workmanship or material;

    b.  Maintenance;

    c.  Design, plan or specification;

    d.  Developing, surveying or siting of buildings or structures during the course of construction or alterations.

    If a **covered loss** ensues, we will pay for that loss.

13. Loss or damage to bulkheads, piers, wharves, docks, seawalls or jetties from freezing or thawing, impact of watercraft, or by the pressure or weight of ice or water whether driven by **wind** or not.

14. Acts or decisions, including the failure to act or decide, of any governmental employee, agent, group, organization, agency or body.

    If a **covered loss** ensues, we will pay for that loss.

RM1003 02-11

Page  4  of  4

Case Number: KC-2017-0170
Filed in Kent County Superior Court
Submitted: 4/12/2017 10:14:20 AM
Envelope: 1001576
Reviewer: Lindsay Z.

# PROPERTY NOT COVERED

We do not cover loss to:

A. Aircraft;

B. Animals;

C. Bridges or tunnels, however pedestrian walkways connecting buildings are covered;

D. Caves, caverns, mines of any type, or any property contained within them;

E. Contraband or property in the course of illegal transportation or trade;

F. Currency, money, securities and negotiable instruments of any kind;

G. Dams, dikes, levees;

H. Furs, jewelry;

I. Locomotives, including rolling stock;

J. **Mobile equipment or tools**, when more than one-thousand (1,000) feet away from a **covered location**;

K. Precious metal, except when used in industrial or service operations;

L. Precious stones, except when used in industrial or service operations;

M. Property insured under import or export ocean cargo policies;

N. Property **you** transport as a common or contract carrier;

O. Property shipped by mail, unless sent registered or certified;

P. Vehicles, licensed for highway use, when more than one-thousand (1,000) feet away from a **covered location**. If **your** vehicles, licensed for highway use, are covered for physical damage by other insurance, **you** agree that such other insurance is considered **your** primary coverage for any loss or damage that occurs;

Q. Water, land, including land on which **covered property** is located, lawns, growing crops, or standing timber;

R. Watercraft, except watercraft that is part of **your** inventory while being stored un-fueled and on dry land at a **covered location**.

Copyright 2011, Liberty Mutual Group of Companies - all rights reserved.

Case Number: KC-2017-0170
Filed in Kent County Superior Court
Submitted: 4/12/2017 10:14:20 AM
Envelope: 1001576
Reviewer: Lindsay Z.

# VALUATIONS

**A.   Replacement Cost**

1.   Loss or damage to **covered property** will be valued at the time and place of the loss at **replacement cost** unless otherwise indicated in **B.** and **C.** below or by other forms or endorsements attached to this policy.

2.   We will not pay **replacement cost** until the lost or damaged property is actually repaired or replaced.  If repairs or replacement are not made within two (2) years after the date of the physical loss **we** will pay only the **actual cash value** amount.

   **a.**   Our obligations for **replacement cost** will be the smaller of:

   **(1)**   The cost to repair the damaged property; or

   **(2)**   The cost to replace or rebuild with new materials of like size, kind and quality; or

   **(3)**   The selling price of **your real property** or **personal property**, other than stock, that is offered for sale, less all saved expenses; or

   **(4)**   The amount of **your** legal liability to the owner of **personal property of others**; or

   **(5)**   The applicable **limit of liability**.

   **b.**   We will not pay for any increase in cost due to **your** failure to use reasonable speed to repair, rebuild or replace the damaged property.

   **c.**   If the replacement occurs at another location, **we** will not pay for the cost of land at either the original or the **new location**.

3.   If you elect not to rebuild **your real property** after a **covered loss**, you may still make claim for the **covered loss** to **your real property** at **replacement cost**, excluding any amounts for demolition or increased cost of construction, provided:

   **a.**   **you** actually spend those funds on capital expenditures to improve **real property** at **covered locations** within the policy territory;

   **b.**   those capital expenditures were not planned as of the date of loss; and

   **c.**   **you** make claim for the expenditure of these funds within two (2) years of the date of loss.

4.   If an **object** requires replacement due to an **accident**, **we** will pay **your** additional cost to replace with equipment that is better for the environment, safer or more efficient than the equipment being replaced.

   However, **we** will not pay more than one-hundred twenty-five (125) percent of what the cost would have been to repair or replace the **object(s)** with like kind and quality.

   This does not apply to any property subject to valuation based on **actual cash value**, nor does this provision increase any other applicable **limit of liability**.

The **period of restoration** will not be increased by any of the above.

**B.   Actual Cash Value**

   Loss or damage to these types of **covered property** will be valued at **actual cash value** at the time and place of loss:

Copyright 2011, Liberty Mutual Group of Companies - all rights reserved.

RM1005 02-11                                                                                                   Page  1  of  2

Case Number: KC-2017-0170
Filed in Kent County Superior Court
Submitted: 4/12/2017 10:14:20 AM
Envelope: 1001576
Reviewer: Lindsay Z.

## VALUATIONS (Continued)

    **a.**  Manuscripts;

    **b.**  **Mobile equipment or tools**; and

    **c.**  Vehicles licensed for highway use.

**C.**  Other Valuations

Loss or damage to these types of **covered property** will be valued at the time and place of loss as follows:

**1.**  Exposed film

The value of unexposed film of the same type and quality.

**2.**  **Fine Arts**

    **a.**  The lesser of the:

        (1)  Reasonable or necessary restoration or repair costs needed to return the damaged article(s) to its condition as of the time of loss;

        (2)  Cost to replace the damaged article;

        (3)  Value specified for an article(s) if shown on a schedule of **fine arts** on file with **us**, or

        (4)  Value specified for an article(s) if shown on the schedule of any form or endorsement attached to this policy.

    **b.**  In the event of the total loss of an article or articles which are a part of a pair or set, we will pay **you** the full amount of the value of such set as determined in **C. 2. a.** above and you will surrender the remaining article or articles of the set to **us**.

**3.**  Finished goods manufactured by **you**

The regular cash selling price at the location where the loss happens, less all discounts and charges to which the merchandise would have been subject had no loss occurred.

**4.**  **Media, data,** programs or any **software** stored on electronic, electromechanical, electromagnetic **data processing equipment** or production equipment.

The cost of transferring such from backup or from originals of a previous generation. We will not pay for any other cost, including research, engineering or other cost of restoring or recreating lost information.

**5.**  Stock in process

The value of raw materials and labor expended plus the proper proportion of overhead charges.

**6.**  **Valuable papers and records**

The value blank, plus the cost of copying from backup or from originals of a previous generation. We will not pay for any other cost, including research, engineering or other cost, of restoring or recreating lost information.

Case Number: KC-2017-0170
Filed in Kent County Superior Court
Submitted: 4/12/2017 10:14:20 AM
Envelope: 1001576
Reviewer: Lindsay Z.

# CONDITIONS

**A.** Abandonment of Property

**You** may not abandon property to **us**.

**B.** Appraisal

1.  If **you** fail to agree with **us** on the amount of a loss, either party may demand that the disputed amount be submitted for appraisal. A demand for appraisal will be made in writing within sixty (60) days after **our** receipt of proof of loss. Each party will then choose a competent and disinterested appraiser. Each party will notify the other of the identity of its appraiser within thirty (30) days of the written demand for appraisal.

2.  The two (2) appraisers will choose a competent and disinterested umpire. If the appraisers are unable to agree on an umpire within fifteen (15) days, **you** or **we** may petition a judge of a court of record in the state where the **covered loss** happened, to select an umpire.

3.  The appraisers will then set the amount of the loss or damage. If the appraisers submit a written report of an agreement to **you** and **us**, the amount they agree on will be the amount of **our** payment for the loss or damage. If the appraisers fail to agree within a reasonable time, they will submit their differences to the umpire. Written agreement signed by any two (2) of these three (3) will set the amount of loss or damage.

4.  Each appraiser will be paid by the party that selects him or her. Other expenses of the appraisal and compensation of the umpire will be paid equally by **you** and **us**.

**C.** Assignment

**Your** assignment of this policy will not be valid except with **our** written consent.

**D.** Brands and Labels

In the event of a **covered loss** to branded or labeled merchandise, **we** may choose to take title to all or any part of that merchandise, at the value established by the terms of this policy. **You** may, at **your** expense:

1.  Stamp "salvage" on the merchandise or its containers; or

2.  Remove or obliterate the brands or labels if such removal or obliteration will not physically damage the merchandise. **You** must re-label the merchandise or containers in compliance with the requirements of law.

**E.** Breach of Condition

A breach of any condition of this policy at any **covered location** will not affect coverage at any other **covered location** where, at the time of loss or damage, no breach exists.

**F.** Cancellation

1.  **You** may cancel this policy by mailing or delivering to **us** advance written notice of cancellation.

2.  If this policy has been in effect for less than sixty (60) days and is not a renewal of a policy **we** issued, **we** may cancel this policy for any reason by giving **you** written notice of cancellation at least:

    a.  Ten (10) days before the date of cancellation if **we** cancel for nonpayment of premium; or

Copyright 2011, Liberty Mutual Group of Companies - all rights reserved.

Case Number: KC-2017-0170
Filed in Kent County Superior Court
Submitted: 4/12/2017 10:14:20 AM
Envelope: 1001576
Reviewer: Lindsay Z.

## CONDITIONS (Continued)

    **b.** Sixty (60) days before the date of cancellation if we cancel for any other reason.

**3.** If this policy has been in effect for sixty (60) days or more or is a renewal of a policy we issued, we may cancel this policy by giving you written notice of cancellation at least:

    **a.** Ten (10) days before the date of cancellation if we cancel for one (1) or more of the following reasons:

        (1) Nonpayment of premium;

        (2) Conviction of a crime arising out of acts increasing the likelihood of a **covered loss**;

        (3) Discovery of fraud or material misrepresentation by you in obtaining this policy or in pursuing a claim under this policy;

        (4) Discovery of any willful or reckless act or omission by you increasing the likelihood of a **covered loss**; or

        (5) A determination by the Commissioner of Insurance that continuation of the policy would violate or place us in violation of the law.

    **b.** Sixty (60) days before the date of cancellation if we cancel for one (1) or more of the following reasons:

        (1) Physical changes in the property, which increase the likelihood of a **covered loss**;

        (2) A material increase in the likelihood of a **covered loss**; or

        (3) Loss or decrease of **our** reinsurance covering the insurance provided by this policy.

**4.** If we cancel for nonpayment of premium, **you** may continue the coverage and avoid cancellation by making full payment any time prior to the date of cancellation.

**5.** Notice of Cancellation will be delivered or sent by:

    **a.** Registered mail;

    **b.** Certified mail; or

    **c.** First-Class mail.

**We** will mail or deliver the notice to **your** last mailing address known to us.

**6.** Notice of cancellation will state the reason for cancellation, and the effective date of cancellation. The **policy period** will end on that date.

**7.** If this policy is canceled, we will send to **you** any premium refund due. If we cancel, the refund will be pro rata. If **you** cancel, the refund will be 90% of pro rata. The cancellation will be effective even if we have not yet made or offered a refund.

**8.** If notice is mailed, proof of mailing will be sufficient evidence of notice.

**G.** Change of Terms

    The terms of this insurance will not be waived, changed, or modified except by written endorsement issued by **us** and which becomes a part of this policy.

Case Number: KC-2017-0170
Filed in Kent County Superior Court
Submitted: 4/12/2017 10:14:20 AM
Envelope: 1001576
Reviewer: Lindsay Z.

## CONDITIONS (Continued)

**H.** Collection from Others

Payment to you for a **covered loss** will be reduced to the extent **you** have collected that loss from others.

**I.** Concealment, Misrepresentation or Fraud

This entire policy is void, if with the actual intent to deceive

   **1.  You;**

   **2.  Your** representatives; or

   **3.**  any insured;

commit fraud or conceal or misrepresent a fact or circumstance concerning

   **1.**  This policy;

   **2.**  The **covered property**;

   **3.  Your** interest in the **covered property**; or

   **4.**  A claim under this policy.

**J.** Inspection

   **1.**  During the period of this policy, **we** will be permitted, but not obligated, to inspect the **covered property**. Neither **our** right to make inspections, nor making them, nor any report of them, will imply for **you** or others, nor constitute an undertaking, that the **covered property** is safe, healthful, or in compliance with laws, regulations, codes or standards.

   **2.**  This condition does not apply to any inspections, surveys, reports or recommendations **we** may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

   We will have no liability to **you** or others because of any inspection or failure to inspect.

**K.** Liberalization

If, during the **policy period** or forty-five (45) days prior to the **policy period**, a filing of **ours** to a state insurance department would broaden this insurance without requiring any additional premium, then the terms and coverage of that filing will apply to **covered locations** and **covered property** within that state, effective on the dates specified within the filing.

**L.** Loss Payee

In the event of a **covered loss** to property in which both **you** and a loss payee shown on the SCHEDULE OF MORTGAGE HOLDERS OR LOSS PAYEES, Form RM1102, have an insurable interest, **we** will:

   **1.**  Adjust the **covered loss** with **you**; and

   **2.**  Make payment for the **covered loss** to **you** and the loss payee jointly, as their interests may appear.

Case Number: KC-2017-0170
Filed in Kent County Superior Court
Submitted: 4/12/2017 10:14:20 AM
Envelope: 1001576
Reviewer: Lindsay Z.

## CONDITIONS (Continued)

**M.  Mortgage Holders**

1.  We will pay for **covered loss** to buildings or structures to each mortgage holder shown on the SCHEDULE OF MORTGAGE HOLDERS OR LOSS PAYEES, Form RM1102, as their interests may appear.

2.  A mortgage holder has the right to receive loss payment even if the mortgage holder has started foreclosure or similar action on the building or structure.

3.  If we deny **your** claim because of **your** acts or because **you** have failed to comply with the terms of this policy, the mortgage holder will still have the right to receive loss payment, up to the amount of their insurable interest, but in no event more than the applicable **limit of liability**, if the mortgage holder:

    a.  Pays any premium due under this policy at **our** request;

    b.  Submits a signed, sworn proof of loss within sixty (60) days after receiving notice from **us** of **your** failure to do so; and

    c.  Has notified **us** of any change in ownership, occupancy, or substantial change in risk known to the mortgage holder.

    All terms and conditions of this policy will then apply directly to the mortgage holder.

4.  If we pay the mortgage holder for any **covered loss** and deny payment to you because you have failed to comply with the terms of this policy:

    a.  The mortgage holder's rights under the mortgage will be transferred to us to the extent of the amount we pay; and

    b.  The mortgage holder's right to recover the full amount of the mortgage claim will not be impaired.

    In the event of a **covered loss**, we will, at **our** option, pay the mortgage holder the whole principal of **your** mortgage plus any accrued interest.  In that event, **your** mortgage and note will be transferred to us, and **you** will pay **your** remaining mortgage debt to us.

5.  If we cancel or nonrenew this policy, we will give the mortgage holder the same notice we give to you.

6.  The term "mortgage holder" includes trustee.

**N.  No Benefit to Bailee**

No person or organization, having custody of **your covered property**, will benefit from this policy.

**O.  No Reduction by Loss**

Except for those coverages written with an annual aggregate **limit of liability** or sublimits of liability, we will pay for a **covered loss** without reducing any other applicable **limit of liability** or sublimits of liability.

**P.  Nonrenewal**

1.  If we decide not to renew this policy, **we** will mail or deliver a written notice of nonrenewal to **you** at least sixty (60) days before the expiration date of this policy.  Notice will be sent to **your** last mailing address known to us.  We will state the reason for nonrenewal.

RM1006 02-11

Case Number: KC-2017-0170
Filed in Kent County Superior Court
Submitted: 4/12/2017 10:14:20 AM
Envelope: 1001576
Reviewer: Lindsay Z.

## CONDITIONS (Continued)

2.  This notice will be delivered or sent by:

    a.  Registered mail;

    b.  Certified mail; or

    c.  First-Class mail.

3.  If notice is mailed, proof of mailing will be sufficient evidence of notice.

Q.  Other Insurance

1.  If there is any other insurance that would apply in the absence of this policy, we will pay for a **covered loss** only after the limits of all other applicable insurance are exhausted.

2.  If this policy is deemed by law to contribute to a loss with other insurance, we will pay only **our** proportionate share of the loss, up to the applicable **limit of liability. Our** share will be the proportion that the applicable **limit of liability** of this policy bears to the total applicable **limits of liability** available from all insurance.

3.  **You** are permitted to have other insurance over any limits or sublimits of liability specified in this policy.

4.  The existence of such insurance will not reduce any limit or sublimit of liability in this policy.

5.  To the extent this policy replaces another policy, coverage under this policy shall not become effective until such other policy has terminated.

R.  **Our** Options

At **our** option, we will repair, rebuild or replace damaged **covered property** with other property of like kind and quality within a reasonable period of time. If we elect to repair or replace the **covered property**, we will notify **you** of that decision within sixty (60) days of **our** receipt of **your** proof of loss. We will, at **our** option, take title to all or any part of the damaged or destroyed property at the agreed or appraised value.

S.  Pair, Set or Parts

In the event of a **covered loss** to an article that is part of a pair or set, **our** payment for that loss will be:

1.  The cost to repair or replace any part to restore the pair or set to its value before the **covered loss**; or

2.  The difference between the value of the pair or set before and after the **covered loss**.

In no event will the loss of part of a pair or set be regarded as a total loss of the pair or set.

When **covered property** consists of several parts, we will pay only for the lost or damaged part.

T.  Payment of Loss

We will pay the **covered loss** within thirty (30) days after we receive and accept the signed, sworn Proof of Loss, if:

1.  **You** have complied with all the terms of this policy;

Case Number: KC-2017-0170
Filed in Kent County Superior Court
Submitted: 4/12/2017 10:14:20 AM
Envelope: 1001576
Reviewer: Lindsay Z.

## CONDITIONS (Continued)

2.  We have reached agreement with **you** on the amount of **covered loss**, or

3.  An appraisal award is made as provided for in Condition **B.** Appraisal.

U.  **Policy Period** and Territory

We will only pay for direct physical loss or damage to **covered property** of the type insured by this policy as the result of a **peril insured against** during the **policy period** shown on the DECLARATIONS, Form RM1000, while the **covered property** is:

1.  Within the continental United States of America, Hawaii and Puerto Rico;

2.  Being moved on land or in the air within or between the continental United States of America and Canada; or moved on land or in the air within Hawaii or Puerto Rico; or

3.  Being moved on inland waters and intercoastal waterways of the continental United States of America, or on any of the Great Lakes.

V.  Recovered Property

1.  If either **you** or we recover any **covered property** after we have paid for its loss, that party must give the other prompt written notice of the recovery.

2.  If we recover the **covered property**, we will return it to **you**, if **you** so request. **You** must then return the amount we paid to **you** for it.

3.  If **you** recover the **covered property**, **you** may either keep it or surrender it to us. If **you** choose to keep it, **you** must return the amount we paid to **you** for it.

W.  Right to Adjust with Owner

1.  **Covered losses** will be adjusted with **you** except as provided in Condition **M.** Mortgage Holders.

2.  If a claim is made for damage to **covered property** of others, we will have the right to adjust that loss or damage with the owners of that property. Our payment to the owners will fully satisfy any claim of **yours** for damage to that property.

X.  Subrogation

1.  If we make payment for a loss, **you** will assign to us all **your** rights of recovery against any party for that loss. We will not acquire any rights of recovery **you** have waived prior to the loss. **You** agree to cooperate and not to waive, prejudice, settle or compromise any claim against any party after the loss has occurred.

2.  **You** will be paid any recovery, in the proportion that **your** deductible and any provable uninsured loss bears to the total loss less **your** proportion of fees and expenses.

Y.  Suit

No suit or other legal proceeding shall be brought against **us** unless there has been full compliance with all the policy terms and conditions. Any suit against **us** must be brought within two (2) years after the date on which the direct physical loss or damage occurred, or the shortest time permitted by law, whichever is greater.

RM1006 02-11

Case Number: KC-2017-0170
Filed in Kent County Superior Court
Submitted: 4/12/2017 10:14:20 AM
Envelope: 1001576
Reviewer: Lindsay Z.

## CONDITIONS (Continued)

**Z.**   Suspension

If Equipment Breakdown is marked with an "X" in **B.** Coverages of the DECLARATIONS, Form RM1000, and we discover a dangerous condition relating to an **object, we** may immediately suspend the insurance provided by this coverage for that covered equipment by written notice mailed or delivered to you either at **your** address or at the location of any **object.** Suspended insurance may be reinstated by us, but only by an endorsement issued as part of this policy. **You** will be credited for the unearned portion of the premium paid for the suspended insurance, pro rata, for the period of suspension. The suspension will be effective even if we have not yet made or offered a refund.

**A.A.**   Titles of Paragraphs

The titles of the paragraphs of this policy and of any endorsements attached to it are only for reference. They do not affect the terms to which they relate.

**B.B.**   Vacancy

1.   If any of **your real property:**

   a.   is vacant at the inception of this policy; or

   b.   becomes vacant, and remains vacant for more than sixty (60) consecutive days, during the **policy period;**

   it is a requirement of this policy that you:

   (1)   Notify us in writing of the vacancy prior to loss or damage; and

   (2)   Maintain in complete working order the protective safeguards present prior to the vacancy. Protective safeguards include, but are not limited to:

   (a)   Automatic sprinkler systems;

   (b)   Fire alarm systems;

   (c)   Guard or watchman services;

   (d)   Burglary systems; and

   (e)   Monitoring systems.

2.   If the above requirements are not met, then in addition to the other terms, conditions, limitations and exclusions in this policy, we will:

   a.   Not pay for any loss or damage caused by or resulting from any of the following:

   (1)   Breakage of building glass;

   (2)   **Fungus** (including **fungus** cleanup);

   (3)   Sprinkler leakage, unless the system has been protected against freezing;

   (4)   Theft or attempted theft;

   (5)   Vandalism;

Case Number: KC-2017-0170
Filed in Kent County Superior Court
Submitted: 4/12/2017 10:14:20 AM
Envelope: 1001576
Reviewer: Lindsay Z.

## CONDITIONS (Continued)

      (6) Malicious mischief; or

      (7) Water damage.

   **b.** Value the loss or damage for the vacant **real property** (including any loss or damage to **personal property**) at the time of loss at the smaller of:

      (1) The **actual cash value;**

      (2) The actual cost to repair; or

      (3) The selling price, less all saved expenses, if it was being offered or listed for sale at the time of loss.

**3.** **Real property** is considered vacant unless at least thirty (30) percent of the square footage is:

   **a.** Being used by **you** to conduct **your** customary operations; or

   **b.** Rented by **you** to a tenant or sub-tenant and is being used by them to conduct their customary operations.

**4.** **Real property** is not considered vacant during its ongoing construction or renovation.

**C.C.** **Your Duties After a Loss**

In case of loss **you** will:

**1.** Give **us** immediate written notice of the loss;

**2.** Give notice of such loss to the proper authorities if the loss may be due to a violation of the law;

**3.** As soon as possible, give **us** a description of the property involved and how, when and where the loss happened;

**4.** Take all reasonable steps to protect the **covered property** from further damage;

**5.** Promptly separate the damaged property from the undamaged property, and keep it in the best possible order for examination;

**6.** Furnish a complete inventory of the lost, damaged and destroyed property, showing in detail the quantity, and amount of loss claimed under the valuation provision of the policy;

**7.** Keep an accurate record of all repair costs;

**8.** Keep all bills, receipts and related documents that establish the amount of loss;

**9.** As often as may reasonably be required:

   **a.** Permit **us** to inspect the damaged property and take samples for inspection, testing and analysis.

   **b.** Produce for inspection and copying, all of **your** books of account, business records, bills and invoices.

   **c.** Permit **us** to question, under oath, **you** and any of **your** agents, employees, or representatives involved in the purchase of this insurance or the preparation of **your** claim, including any public adjusters and any of their agents, employees or representatives, and verify **your** answers with a signed acknowledgment.

RM1006 02-11

Case Number: KC-2017-0170
Filed in Kent County Superior Court
Submitted: 4/12/2017 10:14:20 AM
Envelope: 1001576
Reviewer: Lindsay Z.

## CONDITIONS (Continued)

10. Submit to **us**, within ninety (90) days from the date of loss, unless **we** extend the time in writing, a signed, sworn Proof of Loss that states to the best of **your** knowledge and belief:

    a. The time and cause of the loss;

    b. **Your** interest and the interest of all others in the property involved;

    c. Any other policies of insurance that may provide coverage for the loss;

    d. Any changes in title or occupancy of the property during the **policy period**; and

    e. The amount of **your** claimed loss.

    **You** shall also submit with the Proof of Loss:

    a. The inventory referred to in **C.C. 6.**;

    b. The records specified in **C.C. 7.** and **C.C. 8.**;

    c. Specifications for any damaged building; and

    d. Detailed estimates and invoices for the repair of any damage.

11. Cooperate with **us** in the investigation and adjustment of the loss.

Case Number: KC-2017-0170
Filed in Kent County Superior Court
Submitted: 4/12/2017 10:14:20 AM
Envelope: 1001576
Reviewer: Lindsay Z.

# DEFINITIONS

**A.  Accident** means a sudden, fortuitous event that causes direct physical damage to an **object(s)**, which requires that the **object(s)** be repaired or replaced, in whole or in part.

**Accident**, however, does not include any of the following:

**1.**  Fire, including water or other means used to extinguish the fire;

**2.**  Combustion explosion.  This includes but is not limited to, a combustion explosion of any steam boiler or other fired vessel;

**3.**  Discharge of molten material from equipment including the heat from such discharged material;

**4.**  Depletion, deterioration, rust, corrosion, erosion, settling or wear and tear or any other gradually developing condition;

**5.**  Misalignment, miscalibration, tripping off-line, or any condition which can be corrected by resetting, tightening, adjusting or cleaning, or by the performance of maintenance;

**6.**  Lightning;

**7.**  Any loss or damage caused by or resulting from any type of electrical or electronic insulation breakdown test; or

**8.**  Any loss or damage caused by or resulting from any type of hydrostatic, pneumatic or gas pressure test.

**B.  Actual cash value** means **replacement cost** less deduction for depreciation.

**C.  Average daily value (ADV)** means **your business income** that would have been earned during the **period of restoration** had no loss happened, divided by the number of operating days in that period.

The **average daily value (ADV)** applies to the **business income** value of the entire **covered location** whether or not the loss effects the entire **covered location**.  If more than one (1) **covered location** is included in the valuation of the loss, the **average daily value (ADV)** will be the combined value of all **covered locations**.

**D.  Business income** means:

Gross earnings, including rental income, plus all other earnings derived from the operation of the business, less all charges and expenses which do not necessarily continue.

For example:

**1.**  Manufacturing operations:

The net sales value of production less the cost of all raw stock, materials and supplies utilized in such production.

**2.**  Mercantile or nonmanufacturing operations:

The net sales less the cost of merchandise sold and materials and supplies consumed in the operations or services rendered by **you**.

Copyright 2011, Liberty Mutual Group of Companies - all rights reserved.

Case Number: KC-2017-0170
Filed in Kent County Superior Court
Submitted: 4/12/2017 10:14:20 AM
Envelope: 1001576
Reviewer: Lindsay Z.

## DEFINITIONS (Continued)

3.   Property rental operations:

The total expected gross rental income from tenant occupancy of **your covered location(s)**. This also includes all charges which are the legal obligation of **your** tenants, which would otherwise be **your** obligations, and the fair rental value of any portion of **your covered location(s)** which you occupy.

E.   **Covered location(s)** means those locations shown on the Schedule of the DECLARATIONS, Form RM1000, or on the Schedule of any endorsement to this policy.

F.   **Covered loss** means a loss to **covered property** at a **covered location** resulting from a **peril insured against**.

G.   **Covered property** means property insured by this policy.

H.   **Data** means any information recorded on **media** and used in **your** processing operations.

I.   **Data processing equipment** means processing units, terminals, tape drives, disk drives, controllers, printers, and other equipment capable of receiving, processing, storing or retrieving information.

J.   **Earth movement**, whether natural or man-made, includes but is not limited to:

1.   Earthquake;

2.   Landslide;

3.   Mudflow or mudslide; or

4.   Sinking, rising or shifting of the earth.

K.   **Effective date** means the day and time at which the insurance provided by this policy begins.

L.   **Extra expense** means the reasonable and necessary extra costs:

1.   Incurred to temporarily continue as nearly normal as practicable the conduct of **your** business; or

2.   Of temporarily using property or facilities of **yours** or others.

3.   For purposes of applying the above provision "normal" means the condition that would have existed had no **covered loss** happened.

M.   **Fine arts** means property of rarity, antiquity, or artistic merit, including but not limited to paintings; etchings; pictures (including their negatives); tapestries; statuary; marbles; bronzes; antique jewelry; antique furniture; antique silver; rare books; porcelains; rare or art glassware; art glass windows; valuable rugs; bric-a-brac and porcelains.

N.   **First tier wind Counties and Parishes** means the Counties and Parishes in the States as follows:

Baldwin and Mobile Counties in the State of Alabama;

All Counties in the State of Florida;

Bryan, Camden, Chatham, Glynn, Liberty and McIntosh Counties in the State of Georgia;

Case Number: KC-2017-0170
Filed in Kent County Superior Court
Submitted: 4/12/2017 10:14:20 AM
Envelope: 1001576
Reviewer: Lindsay Z.

## DEFINITIONS (Continued)

The Hawaiian Islands;

Cameron, Iberia, Jefferson, Lafourche, Orleans, Plaquemines, St Bernard, St Mary, St Tammany, Terrebonne and Vermilion Parishes in the State of Louisiana;

Hancock, Harrison, and Jackson Counties in the State of Mississippi;

Beaufort, Bertie, Brunswick, Camden, Carteret, Chowan, Currituck, Dare, Hyde, New Hanover, Onslow, Pamlico, Pasquotank, Pender, Perquimans, Tyrrell, and Washington Counties in the State of North Carolina;

Beaufort, Charleston, Colleton, Georgetown, Horry and Jasper Counties in the State of South Carolina;

Aransas, Brazoria, Calhoun, Cameron, Chambers, Galveston, Jefferson, Kenedy, Kleberg, Matagorda, Nueces, Refugio, San Patricio and Willacy Counties in the State of Texas; and

The Commonwealth of Puerto Rico.

**O.  Flood** means:

  1.  The release of water from, or the rising, overflowing, or breaking of boundaries of rivers, lakes, streams, ponds, or other natural or man-made bodies of water; or

  2.  Waves, tides, tidal waves, surface water, rain accumulation or runoff.

  **Flood** includes spray from any of them, all whether driven by **wind** or not.

**P.  Fungus** means any of a major group (fungi) of saprophytic and parasitic lower plants that lack chlorophyll and include but are not limited to molds, rusts, mildews, smuts, mushrooms, and yeasts, and any mycotoxins, spores, scents or by-products produced or released by fungi.

**Q.  Hail** means precipitation composed of concentric layers of clear ice and hardened snow in the shape of stones ranging in size from pea to softball or larger.

**R.  Limit(s) of liability** means the maximum amount we will pay for a **covered loss**.

**S.  Media** means the medium on which **data** or **software** is stored, such as magnetic tape, perforated paper tape, punch cards, media cards, discs, drums, and other storage devices used in **your data processing equipment**.

**T.  Miscellaneous location(s)** means a location other than:

  1.  A **covered location**;

  2.  A **new location**;

  3.  An **unscheduled location**;

  4.  A location where **covered property** is at an exhibition, exposition, fair or trade show; or

  5.  A location for which coverage is found, in whole or in part, elsewhere in this policy including any coverage under errors and omissions.

RM1007 02-11

Case Number: KC-2017-0170
Filed in Kent County Superior Court
Submitted: 4/12/2017 10:14:20 AM
Envelope: 1001576
Reviewer: Lindsay Z.

## DEFINITIONS (Continued)

U. **Mobile equipment or tools** means **your** machinery and equipment principally used by **you** or **your** employees away from a **covered location**, including:

1. Tools, whether powered or not; and

2. Machinery and equipment that is attached to a vehicle licensed for highway use.

**Mobile equipment or tools** does not, however, include vehicles licensed for highway use.

V. **Named Storm** means any storm or weather disturbance that is named by the U.S. National Weather Service. All damage resulting from a single **named storm** that occurs within a continuous seventy-two (72) hour period will be considered a single **occurrence**.

W. **New location(s)** means **real property you** purchase or rent, including **personal property** at that location, after the **effective date** of this policy.

X. **New Madrid** means the Counties and Independent Cities in the States as follows:

Clay, Craighead, Crittenden, Cross, Greene, Independence, Jackson, Lawrence, Lee, Mississippi, Monroe, Phillips, Poinsett, Randolph, St Francis, White, and Woodruff Counties in the State of Arkansas;

Alexander, Franklin, Gallatin, Hamilton, Hardin, Jackson, Johnson, Massac, Perry, Pope, Pulaski, Randolph, Saline, Union, and Williamson Counties in the State of Illinois;

Ballard, Calloway, Carlisle, Crittenden, Fulton, Graves, Hickman, Livingston, Lyon, Marshall, and Mccracken Counties in the State of Kentucky;

Desoto, Marshall, Tate, and Tunica Counties in the State of Mississippi;

Bollinger, Butler, Cape Girardeau, Carter, Dunklin, Iron, Jefferson, Madison, Mississippi, New Madrid, Perry, Pemiscot, Reynolds, Ripley, St Charles, St Francois, St Louis, Ste Genevieve, Scott, Stoddard, and Wayne Counties and the Independent City of St. Louis in the State of Missouri;

Crockett, Dyer, Fayett, Gibson, Hardeman, Haywood, Henry, Lake, Lauderdale, Madison, Obion, Shelby, Tipton, and Weakley Counties in the State of Tennessee.

Y. **Object(s)** means the following:

1. Unless specified otherwise in an endorsement to this policy:

   a. Equipment at a **covered location** that generates, transmits or utilizes energy including electronic communications and **data processing equipment**.

   b. Equipment at a **covered location** which, during normal usage, operates under vacuum or pressure, other than the weight of its contents.

2. **Object(s)** does not include any of the following:

   a. Structure, including but not limited to the structural portions of buildings and towers, scaffolding, and any air supported structure;

   b. Foundation;

RM1007 02-11

Case Number: KC-2017-0170
Filed in Kent County Superior Court
Submitted: 4/12/2017 10:14:20 AM
Envelope: 1001576
Reviewer: Lindsay Z.

# DEFINITIONS (Continued)

    c.  Cabinet, compartment, conduit or ductwork;

    d.  Insulating or refractory material;

    e.  Buried vessels or piping;

    f.  Waste, drainage or sewer piping;

    g.  Piping, valves or fittings forming a part of a sprinkler or fire suppression system;

    h.  Water piping that is not part of a closed loop used to conduct heat or cooling from a boiler of refrigeration or air conditioning system;

    i.  Vehicle or any equipment mounted on a vehicle;

    j.  Satellite, spacecraft, or any equipment mounted on a satellite or spacecraft;

    k.  Dragline, excavation or construction equipment;

    l.  Equipment manufactured by **you** for sale; or

    **m.**  **Data.**

**Z.**    **Occurrence** means all loss or damage attributable directly or indirectly to one (1) cause or series of similar causes. All such loss or damage will be added together, and the total loss or damage will be treated as one (1) **occurrence** irrespective of the amount of time or area over which such loss or damage occurs.

**A.A.**    **Perils insured against** means causes of loss for which this policy provides coverage.

**B.B.**    **Period of restoration** means;

    1.  For buildings and equipment, the period of time

        a.  starts at the time of a **covered loss** and,

        b.  ends when using reasonable speed the building and equipment could be:

            (1)  repaired or replaced; and

            (2)  made ready for operations;

    under the same or equivalent physical and operating conditions that existed prior to the damage.

    2.  For buildings in the course of construction:

        a.  **We** will apply the time period defined in **B.B. 1.** above to the level of business that would have been reasonably achieved after construction and startup would have been completed had no physical damage happened; and

        b.  **We** will give consideration to the actual experience of the business after completion of the construction and startup.

Case Number: KC-2017-0170
Filed in Kent County Superior Court
Submitted: 4/12/2017 10:14:20 AM
Envelope: 1001576
Reviewer: Lindsay Z.

## DEFINITIONS (Continued)

3. For stock in-process and mercantile stock, including finished goods not manufactured by you, the time required using reasonable speed:

   a. To restore stock in process to the same state of manufacture which existed at the beginning of the interruption of production or suspension of business operations or services; and

   b. To replace physically damaged mercantile stock.

4. For raw materials and supplies, the period of time:

   a. Of actual interruption of production or suspension of operation or services which results from your inability to obtain suitable replacement raw materials and supplies; but

   b. Limited to that period for which the damaged raw materials and supplies would have satisfied operating needs.

5. For **valuable papers and records**, the time required using reasonable speed to copy the physically damaged **valuable papers and records** from backup or from originals of a previous generation.  This time does not include research, engineering or any other time necessary to restore or recreate lost information.

6. For **data**, **programs**, or other **software**, the time required using reasonable speed to restore the physically damaged or destroyed **data**, **programs**, or other **software** from backup. This time does not include research, engineering or any other time necessary to restore or recreate lost information.

7. The **period of restoration** does not include any additional time due to **your** inability to resume operations for any other reason, including but not limited to:

   a. Making changes to equipment.

   b. Making changes to the buildings, or structures, except as provided in the Demolition Cost, Increased Construction Cost and Operation of Building Laws provision, if a **limit of liability** is shown in **E. 4. b.**, **E. 4. c.** or **E. 4. d.** of the DECLARATIONS, Form RM1000, attached to this policy.

   c. Restaffing or retraining employees.

   d. Any law or ordinance that requires testing, monitoring, clean up, removal, decontamination, treatment, detoxification or neutralization of, or any other response to **pollution** or **pollutant(s)**.

8. The expiration of this policy will not terminate the **period of restoration**.  In no event will the **period of restoration** exceed twenty-four (24) months from the date of loss.

C.C. **Perishable goods** means any **covered property** subject to deterioration or impairment as a result of a change in conditions including but not limited to temperature, humidity or pressure.

D.D. **Personal property** means **your** tangible things, other than **real property**, including improvements and betterments you have made in buildings you do not own.

E.E. **Personal property of others** means tangible things **you** do not own, other than **real property**, that are:

1. Sold by **you** that **you** agreed, prior to loss, to insure for the account of the purchaser during delivery;

2. In **your** custody which **you** agreed, prior to loss, to insure; or

RM1007 02-11                                                                 Page 6 of 9

Case Number: KC-2017-0170
Filed in Kent County Superior Court
Submitted: 4/12/2017 10:14:20 AM
Envelope: 1001576
Reviewer: Lindsay Z.

## DEFINITIONS (Continued)

3.  In your care, custody or control, and for which **you** are legally liable, but only to the extent of **your** insurable interest therein.

**F.F.**  **Policy period** means the time during which insurance is provided by this policy.

**G.G.**  **Pollutant(s)** means any solid, liquid, gaseous or thermal irritant or contaminant, including, but not limited to, fiber, smoke, vapor, soot, fumes, acids, alkalis, chemicals, biological, organic or bacterial agents and waste. "Waste" includes, but is not limited to, materials to be recycled, reconditioned or reclaimed. However, **pollutant(s)** does not include ammonia.

**H.H.**  **Pollution** means the presence, discharge, dispersal, seepage, migration, release or escape of any **pollutant(s)**.

**I.I.**  **Puget Sound** means the Counties of Clallam, Island, Jefferson, King, Kitsap, Mason, Pierce, San Juan, Skagit, Snohomish, Thurston, and Whatcom in the State of Washington.

**J.J.**  **Real property** means buildings and any other structure, including:

1.  Completed additions, extensions, permanent fittings or fixtures;

2.  Machinery and equipment used to service the buildings;

3.  Yard fixtures.

**K.K.**  **Replacement cost** means the cost to replace **covered property**:

1.  With new materials of like kind and quality and used for the same purpose; and

2.  At the location where the loss happened.

But **replacement cost** excludes any increased cost of repair or reconstruction by reason of any law or ordinance regulating construction, repair or use.

**L.L.**  **Second tier wind Counties and Parishes** means the Counties and Parishes in the States as follows:

Clarke, Covington, Escambia, Geneva, Monroe, and Washington Counties in the State of Alabama;

Brantley, Brooks, Bulloch, Charlton, Effingham, Evans, Long, Tattnall, Thomas, and Wayne Counties in the State of Georgia;

Acadia, Assumption, Calcasieu, Iberville, Jefferson Davis, Lafayette, St Charles, St James, St John the Baptist, St Martin, Tangipahoa and Washington Parishes in the State of Louisiana;

George, Pearl River, and Stone Counties in the State of Mississippi;

Bladen, Columbus, Craven, Duplin, Gates, Halifax, Hertford, Jones, Lenoir, Martin, Northampton, Pitt and Sampson Counties in the State of North Carolina;

Bamberg, Berkeley, Dillon, Dorchester, Hampton, Marion and Williamsburg Counties in the State of South Carolina;

Bee, Brooks, Fort Bend, Goliad, Hardin, Harris, Hidalgo, Jackson, Jim Wells, Liberty, Live Oak, Orange, Victoria, and Wharton Counties in the State of Texas.

**M.M.**  **Sinkhole collapse** means loss to **covered property** resulting from the sudden sinking or collapse of any land into naturally occurring underground empty spaces created by the action of water on limestone or similar rock formations. Coverage for **sinkhole collapse** does not include the cost of filling sinkholes.

Case Number: KC-2017-0170
Filed in Kent County Superior Court
Submitted: 4/12/2017 10:14:20 AM
Envelope: 1001576
Reviewer: Lindsay Z.

## DEFINITIONS (Continued)

**N.N.**  **Software** means programs stored on **media** that instruct **data processing equipment** how to process **data**.

**O.O.**  **Specified perils** means direct physical loss or damage caused by or resulting from:

1. Fire;

2. Lightning;

3. Aircraft;

4. Explosion;

5. Riot;

6. Civil commotion;

7. Smoke;

8. Vehicles;

9. **Wind or hail**;

10. Malicious mischief;

11. Leakage or accidental discharge from automatic fire protection system;

12. Collapse.

**P.P.**  **Transit** means the conveyance of **your personal property** within the **policy period** and territory as specified in this policy, from the time it leaves the original point of shipment until it arrives at its intended destination.

This period includes:

1. While the property is in the care, custody or control of hired carriers; and

2. Transfers between conveyances.

**Transit** does not include **personal property** while in the custody of **your** salespeople, or while being conveyed between a **covered location** and the location of an exhibition, exposition, fair or trade show.

Should this policy expire or be canceled after the property leaves the original point of shipment but before it arrives at its intended destination, coverage will continue on this **personal property** until it arrives at its intended destination.

**Q.Q.**  **Unscheduled location(s)** means:

1. **Real property** reported to **us**, but not shown on the Schedule of the DECLARATIONS, Form RM1000, which **you** owned or rented before the **effective date**; and

2. Locations reported to **us**, but not shown on the Schedule of the DECLARATIONS, Form RM1000, at which **you** had **personal property** before the **effective date** other than **new locations**.

**R.R.**  **Valuable papers and records** means written or printed documents or records including books, maps, negatives, drawings, abstracts, deeds, mortgages and manuscripts.

RM1007 02-11

Case Number: KC-2017-0170
Filed in Kent County Superior Court
Submitted: 4/12/2017 10:14:20 AM
Envelope: 1001576
Reviewer: Lindsay Z.

## DEFINITIONS (Continued)

S.S.   **Volcanic activity** means direct physical loss or damage to **covered property** directly resulting from:

1.   Airborne volcanic blast or shockwave;

2.   Ash, dust or particulate matter; or

3.   Lava flow.

All **volcanic activity** resulting from volcanic eruptions occurring within any one-hundred sixty-eight (168) hour period will constitute a single **occurrence**.

**Volcanic activity** does not include the cost to remove ash, dust or particulate matter that does not cause direct physical damage to **covered property**.

T.T.   **We, us and our**(s) means the company issuing this policy, as shown on the DECLARATIONS, Form RM1000.

U.U.   **Wind** means the direct action of the movement of air at any velocity.

V.V.   **You and your**(s) mean the named insured shown on the DECLARATIONS, Form RM1000.

RM1007 02-11

Page 9 of 9

Case Number: KC-2017-0170
Filed in Kent County Superior Court
Submitted: 4/12/2017 10:14:20 AM
Envelope: 1001576
Reviewer: Lindsay Z.

Policy number YU2-Z91-444950-034

This endorsement is effective 05/25/2014 and will terminate with the policy. It is issued by the company designated in the Declarations. All other provisions of the policy remain unchanged.

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## ADDITIONAL NAMED INSURED

This endorsement modifies insurance provided under the following:

CONDITIONS, Form RM1006

We will provide insurance under this policy to each of the persons or organizations shown as an additional named insured on the Schedule of this endorsement.

We will adjust any covered loss only with you.

You will pay the premium for the insurance we provide to the additional named insureds. In the event that you become bankrupt or insolvent, each additional named insured shall pay the premium for the insurance it receives.

We will make our payment jointly to you and any person or organization shown on the Schedule.

Schedule

| Additional Named Insured | Location |
| --- | --- |
| WARWICK WINGS, LLC | 667 Airport Road, Warwick, RI 02886 |
| REHOBOTH WINGS, LLC | 80 Rehoboth Beach Ave, Rehoboth Beach, DE 19971 |
| NC WINGS, LLC | 194 South Dupont New Castle, DE 19720 |
| ATTILLA WINGS LLC AND AMERICAN INDUSTRY & CREDIT FIN GROUP, LTD.; ATILLA WINGS LLC 401K PLAN | 337 East Main Street Newark, DE 19711 |
| NEWARK WINGS, LLC | 132-136 Astro Shopping Center Newark, DE 19711 |
| HACKENSACK WINGS, LLC | 41 Route 4 East Hackensack, NJ 07601 |
| PRINCETON WINGS, LLC | 400 Mercer Mall Lawrenceville, NJ 08648 |
| AC WINGS, LLC | 2821 Boardwalk Atlantic City, NJ 08401 |

Copyright 2004, Liberty Mutual Group of Companies - all rights reserved.

RM1100 01-04

Case Number: KC-2017-0170
Filed in Kent County Superior Court
Submitted: 4/12/2017 10:14:20 AM
Envelope: 1001576
Reviewer: Lindsay Z.

## ADDITIONAL NAMED INSURED (Continued)

Schedule

| Additional Named Insured | Location |
|---|---|
| PR WINGS, LLC | 3939 Route 17 South<br>Paramus, NJ  07652 |
| ADAM GOOD CRAB HOUSE, LLC | 2821 Boardwalk<br>Atlantic City, NJ  08401 |
| MS WINGS, LLC | 461 Route 38 West<br>Maple Shade, NJ  08052 |
| ADAM GOOD, LLC | 2821 Boardwalk<br>Atlantic City, NJ  08401 |
| BRUNSWICK WINGS, LLC | 195 Route 18<br>East Brunswick, NJ  08816 |
| CONCORD WINGS, LLC | 1110 Baltimore Pike<br>Glen Mills, PA  19342 |
| KP WINGS, LLC<br>HOOTERS KINGS OF PRUSSIA | 240 North Gulph Road<br>King of Prussia, PA  19406 |
| NE PHILLY WINGS, LLC | 9183 Roosevelt Blvd.<br>Philadelphia, PA 19114 |

RM1100 01-04

Case Number: KC-2017-0170
Filed in Kent County Superior Court
Submitted: 4/12/2017 10:14:20 AM
Envelope: 1001576
Reviewer: Lindsay Z.

Policy number YU2-Z91-444950-034

This endorsement is effective 05/25/2014 and will terminate with the policy. It is issued by the company designated in the Declarations. All other provisions of the policy remain unchanged.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## SCHEDULE OF MORTGAGE HOLDERS OR LOSS PAYEES

| Location | Description of Property | Name and Address of Mortgage Holder or Loss Payee | Interests ("M" for Mortgage Holder) ("LP" for Loss Payee) |
|---|---|---|---|
| 667 Airport Road, Warwick, RI 02886 | **Real Property** | Concord Realty Corp P.O. Box 6184 Providence, RI 02940 | M |

Copyright 2008, Liberty Mutual Group of Companies - all rights reserved.

RM1102 03-08

Case Number: KC-2017-0170
Filed in Kent County Superior Court
Submitted: 4/12/2017 10:14:20 AM
Envelope: 1001576
Reviewer: Lindsay Z.

Policy number YU2-Z91-444950-034

This endorsement is effective 05/25/2014 and will terminate with the policy. It is issued by the company designated in the Declarations. All other provisions of the policy remain unchanged.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## EARTH MOVEMENT COVERAGE

This endorsement modifies insurance provided under the following:

EXCLUSIONS, Form RM1003

1.  We will pay for direct physical loss or damage to **covered property** caused by sudden **earth movement** within a state(s) or at a location(s) shown on the Schedule of this endorsement.

    In addition, if coverage is provided for **business income or extra expense in B.** Coverages of the DECLARATIONS, Form RM1000, we will pay for covered loss of **business income** or **extra expense** that results from direct physical loss or damage to **covered property** caused by sudden **earth movement** within a state(s) or at a location(s) shown on the Schedule of this endorsement.

    If **your** policy includes EARTH MOVEMENT SPRINKLER LEAKAGE EXTENSION, Form RM1105, there is no coverage in this endorsement for any loss or damage (including any coverage for **business income or extra expense**) resulting from leakage of an automatic fire extinguishing system caused by sudden **earth movement** (see Form RM1105 for any coverage for such loss or damage).

    All **earth movement**, including any earthquake shocks, within a continuous seventy-two (72) hour period will be considered a single **occurrence**. The expiration of this policy will not reduce this seventy-two (72) hour period.

2.  **Limit of Liability**

    The following **limits of liability** do not increase and are not in addition to any other applicable **limit of liability**.

    A.  The most we will pay for all loss or damage, including any loss of **business income** or **extra expense**, for each **occurrence** of sudden **earth movement** loss will be the lesser of the applicable **limit of liability** shown on:

        (1)  The DECLARATIONS, Form RM1000;

        (2)  EXTENSIONS OF COVERAGE, Form RM1002;

        (3)  The Schedule of this endorsement for that particular state or the particular location(s); or

        (4)  Any other applicable endorsement to this policy.

    B.  The most we will pay for all loss or damage caused by all sudden **earth movement**, including any loss of **business income** or **extra expense**, during any one (1) policy year is $5,000,000.

Copyright 2008, Liberty Mutual Group of Companies – all rights reserved.

Case Number: KC-2017-0170
Filed in Kent County Superior Court
Submitted: 4/12/2017 10:14:20 AM
Envelope: 1001576
Reviewer: Lindsay Z.

## EARTH MOVEMENT COVERAGE (Continued)

3. Deductible Amount

A. We will not pay for a sudden **earth movement** loss until the loss exceeds either the applicable flat amount deductible or percentage deductible shown for that particular state or the particular location(s) shown on the Schedule of this endorsement. We will then pay the amount of loss in excess of the applicable deductible, up to the applicable **limit of liability**.

B. If a percentage deductible is shown on the Schedule of this endorsement, the deductible amount will be determined as follows:

We will not pay for an **earth movement** loss until the loss exceeds the greater of:

(1) The sum of multiplying the deductible factor shown on the Schedule of this endorsement for a particular state or location(s) times:

a. the total reported values on file with us for the **covered property** at the **covered location** when and where the loss occurred; plus

b. the full annual **business income** value which **you** would have earned in the twelve (12) month period following the loss had no loss occurred; or

(2) The corresponding minimum deductible amount also shown for that particular state or the particular location(s).

We will then pay the amount of the loss in excess of the greater of these two (2) amounts up to the applicable **limit of liability**.

C. These deductibles do not apply to **covered property** in transit.

D. If indicated by an asterisk (*) after the deductible amount, a separate deductible amount will apply to any **covered property**, loss of **business income**, **extra expense**, or any other coverage or peril listed on the Schedule of this endorsement.

4. This endorsement does not apply to, and no **earth movement** coverage is provided for, the following coverage(s):

Form RM1002, Course of Construction
Form RM1002, Errors and Omissions
Form RM1002, **Miscellaneous Locations**
Form RM1002, **New Locations**

Case Number: KC-2017-0170
Filed in Kent County Superior Court
Submitted: 4/12/2017 10:14:20 AM
Envelope: 1001576
Reviewer: Lindsay Z.

## EARTH MOVEMENT COVERAGE (Continued)

5. This endorsement does not apply to, and no **earth movement** coverage is provided for, any **covered property** situated in or at the following state(s) and location(s):

When indicated with an (X), **covered property** at any location situated in:

A.  (X) The State of Alaska;

B.  (X) The State of California;

C.  (X) The State of Hawaii;

D.  (X) The State of Nevada;

E.  (X) The area defined in this policy as **New Madrid**;

F.  (X) The area defined in this policy as **Puget Sound**;

G.  (X) The Commonwealth of Puerto Rico; and

H.  ( ) Any other location(s) shown below:

<u>Location</u>

Not Applicable

Refer to the last page of this endorsement for the Schedule of States and Locations for which **earth movement** coverage is provided by this policy.

RM1106 03-08

Case Number: KC-2017-0170
Filed in Kent County Superior Court
Submitted: 4/12/2017 10:14:20 AM
Envelope: 1001576
Reviewer: Lindsay Z.

## EARTH MOVEMENT COVERAGE  (Continued)

Schedule of States and Locations

| State or Location | Limit of Liability per occurrence | Limit of Liability in any one (1) policy year | Deductible Amount |
|---|---|---|---|
| Locations not situated in the areas defined on the schedule of states and locations in Item 5 of this endorsement. | $5,000,000 | $5,000,000 | $50,000 |

RM1106 03-08

Page  4  of  4

Case Number: KC-2017-0170
Filed in Kent County Superior Court
Submitted: 4/12/2017 10:14:20 AM
Envelope: 1001576
Reviewer: Lindsay Z.

Policy number YU2-Z91-444950-034

This endorsement is effective 05/25/2014 and will terminate with the policy. It is issued by the company designated in the Declarations. All other provisions of the policy remain unchanged.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# FLOOD COVERAGE

This endorsement modifies insurance provided under the following:

EXCLUSIONS, Form RM1003

1. **We** will pay for direct physical loss or damage to **covered property** caused by **flood** within a state(s) or at a location(s) shown on the Schedule of this endorsement.

   In addition, if coverage is provided for **business income** or **extra expense** in **B.** Coverages of the DECLARATIONS, Form RM1000, **we** will pay for covered loss of **business income** or **extra expense** that results from direct physical loss or damage to **covered property** caused by **flood** within a state(s) or at a location(s) shown on the Schedule of this endorsement.

   All **flood** losses within a continuous seventy-two (72) hour period will be considered a single **occurrence**. The expiration of this policy will not reduce this seventy-two (72) hour period.

2. **Limit of Liability**

   The following **limits of liability** do not increase and are not in addition to any other applicable **limit of liability**.

   **A.** The most **we** will pay for all loss or damage, including any loss of **business income** or **extra expense**, for each **occurrence** of **flood** loss within a state(s) or at a location(s) shown on the Schedule of this endorsement will be the lesser of the applicable **limit of liability** shown on:

   **(1)** The DECLARATIONS, Form RM1000;

   **(2)** EXTENSIONS OF COVERAGE, Form RM1002;

   **(3)** The Schedule of this endorsement for that particular state or the particular location(s); or

   **(4)** Any other applicable endorsement to this policy.

   **B.** The most **we** will pay for all loss or damage caused by **flood**, including any loss of **business income** or **extra expense**, during any one (1) policy year is $5,000,000.

3. **Deductible Amount**

   **A.** **We** will not pay for a **flood** loss until the loss exceeds either the applicable flat amount deductible or percentage deductible shown for that particular state or the particular location(s) shown on the Schedule of this endorsement. **We** will then pay the amount of loss in excess of the applicable deductible, up to the applicable **limit of liability**.

Copyright 2008, Liberty Mutual Group of Companies - all rights reserved.

Case Number: KC-2017-0170
Filed in Kent County Superior Court
Submitted: 4/12/2017 10:14:20 AM
Envelope: 1001576
Reviewer: Lindsay Z.

## FLOOD COVERAGE (Continued)

**B.** If a percentage deductible is shown on the Schedule of this endorsement, the deductible amount will be determined as follows:

We will not pay for a **flood** loss until the loss exceeds the greater of:

(1) The sum of multiplying the deductible factor shown on the Schedule of this endorsement for a particular state or location(s) times:

    **a.** the total reported values on file with **us** for the **covered property** at the **covered location** when and where the loss occurred; plus

    **b.** the full annual **business income** value which **you** would have earned in the twelve (12) month period following the loss had no loss occurred; or

(2) The corresponding minimum deductible amount also shown for that particular state or the particular location(s).

We will then pay the amount of the loss in excess of the greater of these two (2) amounts up to the applicable **limit of liability.**

**C.** These deductibles do not apply to **covered property** in transit.

**D.** If indicated by an asterisk (*) after the deductible amount, a separate deductible amount will apply to any **covered property**, loss of **business income**, **extra expense**, or any other coverage or peril listed on the Schedule of this endorsement.

**4.** This endorsement does not apply to, and no **flood** coverage is provided for, the following coverage(s):

Form RM1002, Course of Construction

Form RM1002, Errors and Omissions

Form RM1002, **Miscellaneous Locations**

Form RM1002, **New Locations**

**5.** This endorsement does not apply to, and no **flood** coverage is provided for, any **covered property** situated in or at the following state(s) and location(s):

Not Applicable

Refer to the last page of this endorsement for the Schedule of States and Locations for which **flood** coverage is provided by this policy.

Case Number: KC-2017-0170
Filed in Kent County Superior Court
Submitted: 4/12/2017 10:14:20 AM
Envelope: 1001576
Reviewer: Lindsay Z.

## FLOOD COVERAGE (Continued)

Schedule of States and Locations

| Loc. No. | State or Location | Limit of Liability per occurrence | Limit of Liability in any one (1) policy year | Deductible Amount |
|---|---|---|---|---|
| | Subject to Paragraphs 1-5 of this endorsement, unless a different **limit of liability** applies for any reason (including any **limits of liability** listed below), this is the **limit of liability** for all direct physical loss or damage to **covered property** caused by **flood** (including any resulting loss of **business income** or **extra expense** if those coverages are provided in **B.** Coverages of DECLARATIONS, Form RM1000) | $5,000,000 | $5,000,000 | $50,000 |
| | Group 1 | $2,500,000 | $2,500,000 | $1,000,000 |
| 7 | 2821 Boardwalk A Atlantic City  NJ 08401-6338 | | | |
| 9 | 2821 Boardwalk Atlantic City  NJ  08401 | | | |
| 11 | 2821 Boardwalk B Atlantic City  NJ 08401-6338 | | | |

RM1108 03-08

Case Number: KC-2017-0170
Filed in Kent County Superior Court
Submitted: 4/12/2017 10:14:20 AM
Envelope: 1001576
Reviewer: Lindsay Z.

Policy number YU2-Z91-444950-034

This endorsement is effective 05/25/2014 and will terminate with the policy. It is issued by the company designated in the Declarations. All other provisions of the policy remain unchanged.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## INTERRUPTION OF SERVICES COVERAGE EXTENSION

This endorsement modifies insurance provided under the following:

> EXTENSIONS OF COVERAGE, Form RM1002
> EXCLUSIONS, Form RM1003

1.  We will pay for physical loss or damage to **covered property**, loss of **business income** and **extra expense** resulting from an interruption of the electrical, heating, air conditioning, refrigeration, telecommunication, steam, water, sewer or fuel service to a location shown on the Schedule of this endorsement, but only if the interruption of service results:

    A.  From physical damage by a **peril insured against**;

    B.  Away from a location shown on the Schedule of this endorsement;

    C.  To the following, if marked with an "X", that directly supply service to the location shown on the Schedule of this endorsement and are either owned, managed or controlled by a company with a contract to supply these services to that location, or are located within one (1) mile of that location:

        (1)  (X)  Any electrical generating plant, substation, power switching station, transformer, gas compressor station, telephone switching facility, water or sewer treatment plant or any other plant or facility responsible for providing the services specified in 1. above;

        (2)  (X)  Transmission and distribution lines, connections or supply pipes which furnish electricity, steam, gas, refrigeration, telecommunication, water or sewer (other than overhead transmission and distribution lines);

        (3)  ( )  Overhead transmission and distribution lines.

2.  We will not pay for any physical loss or damage to **covered property**, loss of **business income** or **extra expense** due to any interruption of service from:

    A.  A satellite, regardless of cause; or

    B.  The operation of any breaker, switch, device or system designed to preserve or protect any property or system integrity; or

    C.  Any misalignment, miscalibration, tripping off-line, or any condition which can be corrected by resetting, tightening, adjusting, cleaning, or the performance of maintenance.

3.  Conditions

    A.  This extension applies only to the Coverages marked with an "X" in B. Coverages of the DECLARATIONS, Form RM1000.

Copyright 2011, Liberty Mutual Group of Companies - all rights reserved.

RM1110 02-11

Case Number: KC-2017-0170
Filed in Kent County Superior Court
Submitted: 4/12/2017 10:14:20 AM
Envelope: 1001576
Reviewer: Lindsay Z.

## INTERRUPTION OF SERVICES COVERAGE EXTENSION (Continued)

B. This extension, however, does not apply to, and no coverage is provided in conjunction with, Standard Extension of Coverage A. 7. Extended Period of Restoration, EXTENSIONS OF COVERAGE, Form RM1002, with respect to any loss of business income covered solely under this endorsement.

4. **Limit of Liability**

We will not pay more than the applicable limit of liability shown on the Schedule of this endorsement for any one (1) occurrence. This limit of liability does not increase and is not in addition to any other applicable limit of liability.

5. Waiting Period

If an interruption of service waiting period is shown below or on the Schedule of this endorsement, we will only pay for loss of business income, extra expense or for perishable goods if the interruption exceeds the specified waiting period. Once the waiting period is met coverage will commence at the initial time of the interruption, and will be subject to any deductible shown in 6. below or on the Schedule of this endorsement.

The following interruption of service waiting period(s) apply:

A. Equipment Breakdown                        24 Hours

B. All Coverages Except Equipment Breakdown   24 Hours

6. Deductible

If the interruption of service exceeds the waiting periods in 5., the following deductibles apply to any loss covered under this endorsement unless otherwise shown on the Schedule of this endorsement.

A. Equipment Breakdown

Deductible(s) as specified in **G. 3. a.** and **G. 3. b.** on the DECLARATIONS, Form RM1000, or on the ADDITIONAL DEDUCTIBLES AND WAITING PERIODS, Form RM1115.

B. All Coverages Except Equipment Breakdown

(1) We will not pay unless a loss covered under this endorsement exceeds $10,000. We will then pay only the amount of loss in excess of this deductible, up to the applicable limit of liability.

If a separate deductible is shown below, the foregoing dollar amount deductible does not apply to the loss of business income or extra expense portion of the loss covered under this endorsement, which will be subject to the following deductible.

(2) Unless otherwise shown on the Schedule of this endorsement, we will not pay for loss of business income or extra expense until an interruption of service exceeds a time period of Not Applicable immediately following the loss covered under this endorsement. We will then pay only the amount of loss sustained after this period of time, up to the limit of liability specified.

For a time deductible shown as days, each day consists of twenty-four (24) consecutive hours.

When an asterisk (*) follows one (1) or more of the applicable deductible amounts described on the Schedule of this endorsement or any other endorsement to this policy, the amounts shown will be applied separately, and are in addition to any other applicable deductible(s).

7. Refer to the last page of this endorsement for the Schedule of location(s) for which interruption of services coverage is provided by this policy.

Case Number: KC-2017-0170
Filed in Kent County Superior Court
Submitted: 4/12/2017 10:14:20 AM
Envelope: 1001576
Reviewer: Lindsay Z.

## INTERRUPTION OF SERVICES COVERAGE EXTENSION  (Continued)

Schedule

Location(s), Coverage(s), Additional Deductible(s)                     Limit of Liability or Deductible(s)
or Waiting Periods

A.   Locations
      All covered locations except as indicated in B., C., and D. below.           $1,000,000

B.   Coverages

C.   Additional Deductibles or Waiting Periods

D.   Other

RM1110 02-11                                                                  Page  3  of  3

Case Number: KC-2017-0170
Filed in Kent County Superior Court
Submitted: 4/12/2017 10:14:20 AM
Envelope: 1001576
Reviewer: Lindsay Z.

Policy number YU2-Z91-444950-034

This endorsement is effective 05/25/2014 and will terminate with the policy. It is issued by the company designated in the Declarations. All other provisions of the policy remain unchanged.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## CONTINGENT LOSS OF BUSINESS INCOME OR EXTRA EXPENSE EXTENSION

This endorsement modifies insurance provided under the following:

> COVERAGES, Form RM1001
> CONDITIONS, Form RM1006

1.  This extension applies only to the following Coverages marked with an "X", and only if those Coverages are also marked with an "X" in **B.** Coverages of the DECLARATIONS, Form RM1000:

    (X) Loss of **Business Income**; or

    (X) **Extra Expense.**

2.  If marked with an "X", we will pay for **your** loss of **business income** or **extra expense** that results from direct physical loss or damage to property of the type covered by this policy at a location shown on the Schedule of this endorsement from a **peril insured against,** which at the time of the loss:

    (X) **A.** Prevents a direct supplier of **yours** from delivering goods or materials to **you** or to **your** customers for **your** account;

    ( ) **B.** Prevents others who manufacture products for delivery to **your** customers on **your** behalf under a contract for sale from delivering products to **your** customers on **your** behalf; or

    ( ) **C.** Prevents **your** direct customers from accepting **your** product(s) or service(s).

3.  **We** will only pay for **your** loss of **business income** or **extra expense** covered by this endorsement during the period of time that:

    **A.** Starts at the time of the direct physical loss or damage from a **peril insured against** to the property of the type covered by this policy at a location shown on the Schedule of this endorsement; and,

    **B.** Ends when using reasonable speed and due diligence the property of the type covered by this policy at a location shown on the Schedule of this endorsement could be:

    **(1)** repaired or replaced; and

    **(2)** made ready for operations;

    under the same or equivalent physical and operating conditions that existed prior to the damage by whichever individual(s) or entit(ies) may own (or otherwise be responsible for) the location shown on the Schedule of this endorsement.

4.  **We** will not pay more than the applicable **limit of liability** shown on the Schedule of this endorsement.

Copyright 2008, Liberty Mutual Group of Companies - all rights reserved.

Case Number: KC-2017-0170
Filed in Kent County Superior Court
Submitted: 4/12/2017 10:14:20 AM
Envelope: 1001576
Reviewer: Lindsay Z.

## CONTINGENT LOSS OF BUSINESS INCOME OR EXTRA EXPENSE EXTENSION (Continued)

5.  We will pay only when the amount of **your** loss of **business income** or extra expense is more than:

    A.  $100,000 in any one (1) **occurrence** for loss or damage caused by or resulting from the perils of **earth movement, flood** or **wind** associated with a **named storm**; or

    B.  $10,000 in any one (1) **occurrence** for loss or damage caused by or resulting from any other **peril insured against** other than those stated in **5. A.** of this endorsement.

    We will then pay only the amount of loss in excess of this amount, up to the **limit of liability** shown on the Schedule of this endorsement.

    If a loss under this endorsement involves both deductibles shown in **5. A.** and **5. B.**, in any one (1) **occurrence** above, we will only use the largest of the applicable deductibles unless otherwise provided in this policy or any endorsement.

6.  The **limits of liability** shown on the Schedule of this endorsement do not increase and are not in addition to any other applicable **limit of liability.**

7.  If marked with an "X", condition **U. 1.** in Form RM1006 does not apply to a location(s) shown on the Schedule of this endorsement; and

    We also do not provide coverage in any nation with which United States companies are not permitted to do business, or which are or become subject to trade sanctions by the government of the United States during the **policy period.**

### Schedule

| See Provision 7. of this endorsement | Location(s) Address | Type of Location (A., B. or C.) | Limit of Liability |
|---|---|---|---|
| | All locations of **your** suppliers within the policy territory | A | $1,000,000 |

RM1112 03-08

Case Number: KC-2017-0170
Filed in Kent County Superior Court
Submitted: 4/12/2017 10:14:20 AM
Envelope: 1001576
Reviewer: Lindsay Z.

Policy number YU2-Z91-444950-034

This endorsement is effective 05/25/2014 and will terminate with the policy. It is issued by the company designated in the Declarations. All other provisions of the policy remain unchanged.

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## ADDITIONAL DEDUCTIBLES AND WAITING PERIODS

This endorsement modifies insurance provided under the following:

### DECLARATIONS, Form RM1000

**A.** If **G. 2.** or **G. 3. d.** on Form RM1000 is marked with an (X), the deductibles and waiting periods for the coverages described on the Schedule of this endorsement apply. If not shown on the Schedule of this endorsement the deductibles and waiting periods for all other coverages remain unchanged.

**B.** If a **covered loss** involves two (2) or more deductibles, we will use no more than the largest of the applicable deductibles unless otherwise provided below.

**C.** When an asterisk (*) follows one (1) or more of the deductible amounts described on the Schedule of this endorsement, the amounts shown will be applied separately, and are in addition to any other applicable deductible(s).

Schedule

Description of Coverage Deductible or Waiting Period

Amount of Deductible and
Waiting Period

### Wind associated with a Named Storm (Deductible)

**A.** All loss or damage to **covered property** caused by or resulting from **wind** associated with a **Named Storm** will be subject to the deductible obtained by adding up all of the following with respect to the deductible factors/amounts listed in Paragraph **C.** below:

    **1.** the sum of all applicable percentage deductible factors, calculated as described in Paragraph **B.** below, subject to any applicable minimums or maximums; and

    **2.** Any applicable flat deductible amounts.

**B.** To determine the amount to be used in Paragraph **A.** for any percentage deductible factors provided in Paragraph **C.**, multiply the applicable percentage shown by:

    **1.** the total reported values on file with us for the **covered property** at the corresponding location(s) (including sub-locations) where the loss occurred; plus

    **2.** the full annual loss of **business income** value which **you** would have earned for the corresponding location (including sub-locations) where the loss occurred in the twelve (12) month period following the loss had no loss occurred.

Copyright 2011, Liberty Mutual Group of Companies - all rights reserved.

Case Number: KC-2017-0170
Filed in Kent County Superior Court
Submitted: 4/12/2017 10:14:20 AM
Envelope: 1001576
Reviewer: Lindsay Z.

## ADDITIONAL DEDUCTIBLES AND WAITING PERIODS (continued)

### Schedule

| Description of Coverage Deductible or Waiting Period | Amount of Deductible and Waiting Period |
|---|---|
| **C.** The following are the deductible factors/amounts to be used for purposes of calculating the wind associated with a **Named Storm** deductible. If a location (including its sub locations) falls into two or more of the following categories, the category that more specifically identifies that location will be the only one that applies to that location for purposes of calculating its portion of the wind associated with a **Named Storm** deductible: | |
| <u>Categories</u> (by Group(s), Region(s), State(s), County(ies), Location(s)) | <u>Deductible Factors/Amounts</u> |
| Additional First Tier Wind Counties and Independent Cities | $50,000 |
| **First tier wind Counties and Parishes**; and Harris County, TX | 2% subject to $50,000 minimum |
| Florida; Hawaiian Islands; and Puerto Rico | 5% subject to $100,000 minimum |
| **D.** The foregoing wind associated with a **Named Storm** deductible is a single deductible, even if multiple percentages, minimums or flat deductible factors/amounts apply. | |
| <u>Contingent Loss of Business Income</u><br>Contingent Loss of Business Income | $10,000 |

Case Number: KC-2017-0170
Filed in Kent County Superior Court
Submitted: 4/12/2017 10:14:20 AM
Envelope: 1001576
Reviewer: Lindsay Z.

Policy number YU2-Z91-444950-034

This endorsement is effective 05/25/2014 and will terminate with the policy. It is issued by the company designated in the Declarations. All other provisions of the policy remain unchanged.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## STANDARD EXTENSIONS AMENDATORY

This endorsement modifies insurance provided under the following:

EXTENSIONS OF COVERAGE, Form RM1002

The following Standard Extensions of Coverage are amended as shown below when marked with an "X":

Standard Extensions of Coverage

1. **(X) Accounts Receivable**

   Our sublimit under **A. 1. a.** Accounts Receivable is increased from $100,000 to $250,000.

2. **(X) Arson Reward**

   Our sublimit under **A. 2.** Arson Reward is increased from $25,000 to $100,000.

3. **( ) Computer Virus and Denial of Access**

   Our sublimit under **A. 3.** Computer Virus and Denial of Access is increased from $25,000 to $Not Applicable.

4. **(X) Debris Removal Expense**

   **A.** Our sublimit under **A. 4. b.** Debris Removal Expense is increased from $250,000 to $1,000,000.

   **B.** **A. 4. c.** Debris Removal Expense is deleted and replaced by the following:

   c. We will pay up to $25,000 for expenses to remove from a **covered location**, windblown debris of property not covered by this policy.

5. **( ) Deferred Payments**

   Our sublimit under **A. 5. a.** Deferred Payments is increased from $25,000 to $Not Applicable.

Copyright 2008, Liberty Mutual Group of Companies - all rights reserved.

Case Number: KC-2017-0170
Filed in Kent County Superior Court
Submitted: 4/12/2017 10:14:20 AM
Envelope: 1001576
Reviewer: Lindsay Z.

## STANDARD EXTENSIONS AMENDATORY (Continued)

6. (X) Extended Period of Restoration

   A. 7. a. Extended Period of Restoration is amended to 120 days in lieu of sixty (60) days.

7. ( ) Fine Arts

   Our sublimit under A. 9. Fine Arts is increased from $100,000 to $Not Applicable.

8. (X) Fungus Cleanup Expense

   Our sublimit under A. 10. b. Fungus Cleanup Expense is increased from $250,000 to $500,000.

9. ( ) Installation of Personal Property or Personal Property of Others

   Our sublimit under A. 11. Installation of Personal Property or Personal Property of Others is increased from $250,000 to $Not Applicable.

10. (X) Lock and Key Replacement

    Our sublimit under A. 12. b. Lock and Key Replacement is increased from $25,000 to $100,000.

11. ( ) Plants, Trees or Shrubs

    Our sublimit under A. 14. Plants, Trees or Shrubs is increased from $100,000 to $Not Applicable.

12. ( ) Pollution Cleanup Expense

    A. Our annual aggregate limit of liability under A. 15. b. Pollution Cleanup Expense is increased from $25,000 to $Not Applicable.

    B. Our annual aggregate limit of liability under A. 15. c. Pollution Cleanup Expense is increased from $25,000 to $Not Applicable.

13. (X) Professional Fees

    Our sublimit under A. 16. a. Professional Fees is increased from $25,000 to $250,000.

14. ( ) Removal

    A. 17. b. (1) Removal is deleted and replaced by the following:

    (1) For up to NA days at each place to which the property has been taken for preservation;

RM1119 03-08

Case Number: KC-2017-0170
Filed in Kent County Superior Court
Submitted: 4/12/2017 10:14:20 AM
Envelope: 1001576
Reviewer: Lindsay Z.

Policy number YU2-Z91-444950-034

This endorsement is effective 05/25/2014 and will terminate with the policy. It is issued by the company designated in the Declarations. All other provisions of the policy remain unchanged.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## CAP ON LOSSES FROM CERTIFIED ACT(S) OF TERRORISM

This endorsement modifies insurance provided under the following:

> EXCLUSIONS, Form RM1003
> DEFINITIONS, Form RM1007

1. Definition of *Certified Act(s) of Terrorism*

   For the purpose of this endorsement, the italicized phrase *certified act(s) of terrorism* means one (1) or more acts certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be terrorism pursuant to the federal Terrorism Risk Insurance Act, including all amendments (hereafter "TRIA"). The criteria contained in TRIA for *certified act(s) of terrorism* include the following:

   A. The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to TRIA; and

   B. The act is a violent act or an act that is dangerous to human life, property or infrastructure, and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

2. Cap on Losses From *Certified Act(s) of Terrorism*

   If aggregate insured losses attributable to *certified act(s) of terrorism*:

   A. exceed $100 billion in a program year (January 1 through December 31); and

   B. we have met **our** deductible under the Act;

   neither we nor the Secretary of the Treasury shall be liable for the payment of any portion of the amount of such losses that exceeds the $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

3. Application of Exclusions

   The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for any loss which would otherwise be excluded by this policy, such as losses under **GROUP A** exclusions A. 1. and A. 8. on EXCLUSIONS, Form RM1003 attached to this policy.

Includes copyrighted material of Insurance Service Office, Inc., with its permission.

Case Number: KC-2017-0170
Filed in Kent County Superior Court
Submitted: 4/12/2017 10:14:20 AM
Envelope: 1001576
Reviewer: Lindsay Z.

Policy number YU2-Z91-444950-034

This endorsement is effective 05/25/2014 and will terminate with the policy. It is issued by the company designated in the Declarations. All other provisions of the policy remain unchanged.

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## ADDITIONAL FIRST TIER WIND COUNTIES AND INDEPENDENT CITIES
## (THE STATES OF VIRGINIA THROUGH AND INCLUDING MAINE)

This endorsement modifies insurance provided under the following:

DEFINITIONS, Form RM1007

The following Counties and Independent Cities are added to Item **N. First tier wind Counties and Parishes** on DEFINITIONS, Form RM1007:

Fairfield, Middlesex, New Haven and New London Counties in the State of Connecticut;

Sussex County in the State of Delaware;

Cumberland, Hancock, Knox, Lincoln, Penobscot, Sagadahoc, Waldo, Washington and York Counties in the State of Maine;

Somerset and Worcester Counties in the State of Maryland;

Barnstable, Bristol, Dukes, Essex, Middlesex, Nantucket, Norfolk, Plymouth and Suffolk Counties in the State of Massachusetts;

Rockingham County in the State of New Hampshire;

Bronx, Kings, Nassau, New York, Queens, Richmond and Suffolk Counties in the State of New York;

Bristol, Newport and Washington Counties in the State of Rhode Island; and

Accomack, Gloucester, Hampton, Lancaster, Mathews, Middlesex, Newport News, Norfolk, Northampton, Northumberland, Poquoson, Portsmouth, Virginia Beach, Williamsburg and York Counties and Independent Cities in the State of Virginia.

© 2012 Liberty Mutual Insurance. All rights reserved

Case Number: KC-2017-0170
Filed in Kent County Superior Court
Submitted: 4/12/2017 10:14:20 AM
Envelope: 1001576
Reviewer: Lindsay Z.

Policy number YU2-Z91-444950-034

This endorsement is effective 05/25/2014 and will terminate with the policy. It is issued by the company designated in the Declarations. All other provisions of the policy remain unchanged.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## CONDITIONAL EXCLUSION OF TERRORISM
## INVOLVING NUCLEAR, BIOLOGICAL OR CHEMICAL TERRORISM
## (RELATING TO DISPOSITION OF FEDERAL TERRORISM RISK INSURANCE ACT)

This endorsement modifies insurance provided under the following:

> EXCLUSIONS, Form RM1003
> DEFINITIONS, Form RM1007

**1.  Applicability Of The Provisions Of This Endorsement**

   **A.**  The provisions of this endorsement become applicable commencing on the date when any one (1) or more of the following first occurs.  But if **your** policy (meaning the **policy period** in which this endorsement applies) begins after such date, then the provisions of this endorsement become applicable on the date **your** policy begins.

      **(1)**  The federal Terrorism Risk Insurance Program (hereafter "the Program"), established by the Terrorism Risk Insurance Act, including all amendments (hereafter "TRIA") has terminated; or

      **(2)**  A renewal, extension or replacement of the Program or TRIA has become effective without a requirement to make terrorism coverage available to **you**, and with revisions that:

         **(a)**  Increase **our** statutory percentage deductible under the Program for terrorism losses (that deductible determines the amount we must pay in a calendar year for losses attributable to *certified act(s) of terrorism*, before the federal government shares in subsequent payment of losses attributable to *certified act(s) of terrorism*); or

         **(b)**  Decrease the federal government's statutory percentage share in losses attributable to *certified act(s) of terrorism*; or

         **(c)**  Redefine terrorism, or makes insurance coverage for terrorism subject to provisions or requirements that differ from those that apply to other types of events or **occurrences** under this policy.

   **B.**  If the provisions of this endorsement become applicable, such provisions:

      **(1)**  Supersede any endorsements to this policy that address *certified act(s) of terrorism*; and

      **(2)**  Remain applicable unless **we** notify **you** of changes in these provisions, in response to federal law.

   **C.**  If the provisions of this endorsement <u>DO NOT</u> become applicable, any endorsements to this policy that address *certified act(s) of terrorism* will continue in effect unless **we** notify **you** of changes to any of those endorsements, in response to federal law.

© 2014 Liberty Mutual Insurance. All rights reserved.
Includes copyrighted material of Insurance Service Office, Inc., with its permission.

RM1192 01-14

Case Number: KC-2017-0170
Filed in Kent County Superior Court
Submitted: 4/12/2017 10:14:20 AM
Envelope: 1001576
Reviewer: Lindsay Z.

### CONDITIONAL EXCLUSION OF TERRORISM
### INVOLVING NUCLEAR, BIOLOGICAL OR CHEMICAL TERRORISM
### (RELATING TO DISPOSITION OF FEDERAL TERRORISM RISK INSURANCE ACT
### (Continued)

2. The term *certified act(s) of terrorism* has the same meaning as defined elsewhere in this policy. In addition, for the purpose of this endorsement the following definition is added and applies under this endorsement wherever the italicized term *terrorism* (as opposed to *certified act(s) of terrorism*) is shown.

*Terrorism* means activities against persons, organizations or property of any nature:

   A. That involve the following or preparation for the following:

      (1) Use or threat of force or violence; or

      (2) Commission or threat of a dangerous act; or

      (3) Commission or threat of an act that interferes with or disrupts an electronic, communication, information, or mechanical system; and

   B. When one (1) or both of the following applies:

      (1) The effect is to intimidate or coerce a government or the civilian population or any segment thereof, or to disrupt any segment of the economy; or

      (2) It appears that the intent is to intimidate or coerce a government, or to further political, ideological, religious, social or economic objectives or to express (or express opposition to) a philosophy or ideology.

3. The following exclusion is added to **A. GROUP A EXCLUSIONS** of Form RM1003:

Exclusion Of *Terrorism*

We will not pay for loss or damage caused directly or indirectly by *terrorism*, including action in hindering or defending against an actual or expected incident of *terrorism*. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss. But this exclusion applies only when one (1) or more of the following are attributed to an incident of *terrorism*:

   A. The *terrorism* is carried out by means of the dispersal or application of radioactive material, or through the use of a nuclear weapon or device that involves or produces a nuclear reaction, nuclear radiation or radioactive contamination; or

   B. Radioactive material is released, and it appears that one (1) purpose of the *terrorism* was to release such material; or

   C. The *terrorism* is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

   D. Pathogenic or poisonous biological or chemical materials are released, and it appears that one (1) purpose of the *terrorism* was to release such materials.

   Multiple **occurrences** of *terrorism* that occur within a seventy-two (72) hour period and appear to be carried out in concert or to have a related purpose or common leadership will be deemed to be one (1) **occurrence**, for the purpose of determining whether the threshold is exceeded.

Case Number: KC-2017-0170
Filed in Kent County Superior Court
Submitted: 4/12/2017 10:14:20 AM
Envelope: 1001576
Reviewer: Lindsay Z.

# CONDITIONAL EXCLUSION OF TERRORISM
## INVOLVING NUCLEAR, BIOLOGICAL OR CHEMICAL TERRORISM
### (RELATING TO DISPOSITION OF FEDERAL TERRORISM RISK INSURANCE ACT
### (Continued)

4.  Exception Covering Certain Fire Losses

    The following exception to the Exclusion Of *Terrorism* applies only to **covered property** in the States indicated on the Schedule of this endorsement.

    If *terrorism* results in fire, we will pay for the loss or damage caused by that fire, subject to all applicable policy provisions including the **limit of liability** for the **covered property**. Such coverage for fire applies only to direct loss or damage by fire to **covered property**. Therefore, for example, the exception does not apply to insurance provided under loss of **business income** or **extra expense** coverage even if marked with an "X" in **B.** Coverages of the DECLARATIONS, Form RM1000.

5.  Application Of Other Exclusions

    The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for any loss or damage that would otherwise be excluded by this policy, such as under **A. GROUP A EXCLUSIONS** of Form RM1003, Item **1., 8.** and **10.** attached to this policy.

6.  The Exception Covering Certain Fire Losses (Item **4.**) applies to property located in the following state(s):

                                        Schedule

State(s)

California, Connecticut, Georgia, Hawaii, Illinois, Iowa, Maine, Massachusetts, Missouri, New Jersey, New York, North Carolina, Oregon, Rhode Island, Virginia, Washington, West Virginia and Wisconsin

RM1192 01-14                                                    Page 3 of 3

Case Number: KC-2017-0170
Filed in Kent County Superior Court
Submitted: 4/12/2017 10:14:20 AM
Envelope: 1001576
Reviewer: Lindsay Z.

Policy number YU2-Z91-444950-034

This endorsement is effective 05/25/2014 and will terminate with the policy. It is issued by the company designated in the Declarations. All other provisions of the policy remain unchanged.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## EQUIPMENT BREAKDOWN EXTENSIONS OF COVERAGE

This endorsement modifies insurance provided under the following:

COVERAGES, Form RM1001

1.  If coverage for Equipment Breakdown is provided as shown in **B.** Coverages of the DECLARATIONS, Form RM1000, we will pay up to the sublimit of liability shown for each of the extensions described below.

    These extensions of coverage do not increase the **limit of liability** under this coverage.

    A.  Expediting Expenses Coverage

    We will pay up to a sublimit of $100,000 for the reasonable extra costs of temporary repair to property or of expediting the permanent repair or replacement of the property, whichever is less. Expenses we will cover include overtime wages and extra costs for rapid means of transportation.

    We will not cover expenses for temporary rental of property or temporary replacement of damaged property under this extension of coverage. We will pay only for expediting expenses caused by an **accident** to an **object**.

    B.  *Hazardous Substances* Coverage

    We will pay up to a sublimit of $100,000 for **extra expenses** to clean up, repair, replace or dispose of property that is damaged, contaminated or polluted by a *hazardous substance*. The damage, contamination or **pollution** must result from an **accident** to an **object**.

    As used here, **extra expenses** will mean expenses incurred beyond those for which we would have been liable if no *hazardous substance* had been involved.

    C.  **Perishable Goods** Coverage

    (1)  We will pay up to a sublimit of $100,000 for:

    a.  physical damage to **perishable goods** due to spoilage;

    b.  physical damage to **perishable goods** due to contamination from the release of refrigerant, including but not limited to ammonia;

    c.  any necessary expenses **you** incur to reduce the amount of loss under this coverage to the extent that they do not exceed the amount of loss that otherwise would have been payable under this coverage.

Copyright 2008, Liberty Mutual Group of Companies - all rights reserved.

Case Number: KC-2017-0170
Filed in Kent County Superior Court
Submitted: 4/12/2017 10:14:20 AM
Envelope: 1001576
Reviewer: Lindsay Z.

## EQUIPMENT BREAKDOWN EXTENSIONS OF COVERAGE (Continued)

(2) If **you** are unable to replace the **perishable goods** before its anticipated sale, the amount of **our** payment will be determined on the basis of the sales price of the **perishable goods** at the time of the **accident**, less discounts and expenses **you** otherwise would have had. Otherwise **our** payment will be determined in accordance with the valuations endorsement.

(3) As used here, **covered property** does not include animals.

**D.** Data Restoration

**We** will pay up to a sublimit of $100,000 for **your** reasonable and necessary cost to research, replace and restore lost **data.**

**2.** If coverage for Equipment Breakdown is provided as shown in **B.** Coverages of the DECLARATIONS, Form RM1000, the coverage provided by this policy is extended as follows:

**A.** Water Damage Coverage

**We** will pay for loss to property, including the cost of salvage, caused by water, if such damage results from an **accident** to an **object.**

**B.** CFC Refrigerants

**We** will pay for the additional cost to repair or replace **covered property** because of the use or presence of a refrigerant containing CFC (chlorinated fluorocarbon) substances. This means the **extra expense** to do the least expensive of the following:

(1) Repair the damaged property and replace any lost CFC refrigerant;

(2) Repair the damaged property, retrofit the system to accept a non-CFC refrigerant and charge the system with a non-CFC refrigerant; or

(3) Replace the system with one (1) using a non-CFC refrigerant.

Additional costs mean those beyond what would have been required had no CFC refrigerant been involved.

**We** will also pay for the additional loss as described in loss of **business income** and **extra expense** coverages caused by such loss, if these coverages are indicated in the DECLARATIONS, Form RM1000.

**3.** For the purpose of this endorsement the italicized term *hazardous substance* means any substance that is hazardous to health or has been declared to be hazardous to health by a governmental agency.

RM1250 03-08

Case Number: KC-2017-0170
Filed in Kent County Superior Court
Submitted: 4/12/2017 10:14:20 AM
Envelope: 1001576
Reviewer: Lindsay Z.

Policy number YU2-Z91-444950-034

This endorsement is effective 05/25/2014 and will terminate with the policy. It is issued by the company designated in the Declarations. All other provisions of the policy remain unchanged.

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.


# NEW JERSEY CHANGES


This endorsement applies only to **covered property** located in New Jersey, and modifies insurance provided under the following:

> EXCLUSIONS, Form RM1003
> CONDITIONS, Form RM1006

1.  The following related provisions are added to Form RM1003, Item **B. 4.** of <u>**GROUP B EXCLUSIONS**</u>:

    (1) However, this exclusion will not apply to deny payment to a co-insured who did not cooperate in or contribute to the creation of the loss if the loss arose out of domestic violence.

    (2) If **we** pay a **covered loss** pursuant to **1. (1)** above, **our** payment to the insured is limited to that insured's insurable interest in the property.  In no event will **we** pay more than the **limit of liability**.

    To the extent that the Concealment, Misrepresentation or Fraud Condition on Form RM1006, conflicts with the provisions of **1. (1)** above, the provisions of **1. (1)** will apply.

2.  The following is added to Form RM1006, Item **X**. Subrogation:

    **X.** Subrogation

    3.  If **we** pay a co-insured for loss arising out of an act of domestic violence by another insured, the rights of the co-insured, who did not cooperate in or contribute to the creation of the loss, to recover damages from the perpetrator of domestic violence are transferred to **us** to the extent of **our** payment. Following the loss, the co-insured who did not cooperate in or contribute to the loss may not waive such rights to recover against the perpetrator of domestic violence.

Copyright 2008, Liberty Mutual Group of Companies - all rights reserved.

Case Number: KC-2017-0170
Filed in Kent County Superior Court
Submitted: 4/12/2017 10:14:20 AM
Envelope: 1001576
Reviewer: Lindsay Z.

Policy number YU2-Z91-444950-034

This endorsement is effective 05/25/2014 and will terminate with the policy. It is issued by the company designated in the Declarations. All other provisions of the policy remain unchanged.

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.


## PENNSYLVANIA CHANGES


This endorsement applies only to **covered property** located in Pennsylvania, and modifies insurance provided under the following:

> CONDITIONS, Form RM1006

Item **R. Our Options** is replaced with the following:

**R.   Our Options**

1.   At **our** option, **we** will repair, rebuild or replace damaged **covered property** with other property of like kind and quality within a reasonable period of time.

2.   If **we** elect to repair or replace the **covered property**;

   a.   Except as provided in **c.** below, **we** will notify **you** of that decision within fifteen (15) working days of **our** receipt of **your** proof of loss, that **we**:

   (1)   Accept **your** claim;

   (2)   Deny **your** claim; or

   (3)   Need more time to determine whether **your** claim should be accepted or denied.

   If **we** deny **your** claim, such notice will be in writing, and will state any policy provision, condition or exclusion used as a basis for the denial.

   If **we** need more time to determine whether **your** claim should be accepted or denied, the written notice will state the reason why more time is required.

   b.   If **we** have not completed **our** investigation, **we** will notify **you** again in writing, within thirty (30) days after the date of the initial notice as provided in **2. a. (3)** above, and thereafter every forty-five (45) days. The written notice will state why more time is needed to investigate **your** claim and when **you** may expect **us** to reach a decision on **your** claim.

   c.   The notice procedures in **2. a.** and **2. b.** above do not apply if **we** have a reasonable basis, supported by specific information, to suspect that an insured has fraudulently caused or contributed to the loss by arson or other illegal activity. Under such circumstances, **we** will notify **you** of the disposition of **your** claim within a period of time reasonable to allow full investigation of the claim, after **we** receive a properly executed proof of loss.

3.   **We** will, at **our** option, take title to all or any part of the damaged or destroyed property at the agreed or appraised value.

Copyright 2008, Liberty Mutual Group of Companies - all rights reserved.

Case Number: KC-2017-0170
Filed in Kent County Superior Court
Submitted: 4/12/2017 10:14:20 AM
Envelope: 1001576
Reviewer: Lindsay Z.

Policy number YU2-Z91-444950-034

## New Jersey Property-Liability Insurance Guaranty Association Surcharge

This is an explanation of the "NJ Surcharge" which may appear on the enclosed policy.

Companies writing property and casualty insurance in New Jersey are required to participate in the New Jersey Property-Liability Insurance Guaranty Association (PLIGA). The purpose of this association is to pay covered claims for insolvent insurers. The PLIGA assesses each member insurer for its fair share of the association expenses.

New Jersey law allows companies to surcharge policies to recover these assessments. If your policy is subject to this surcharge, "NJ Surcharge," with an amount will appear on your premium notice.

EN4129 01-04

Case Number: KC-2017-0170
Filed in Kent County Superior Court
Submitted: 4/12/2017 10:14:20 AM
Envelope: 1001576
Reviewer: Lindsay Z.

Policy number YU2-Z91-444950-034

## DISCLOSURE - TERRORISM RISK INSURANCE ACT

**THIS FORM IS MADE PART OF YOUR POLICY PURSUANT TO THE TERRORISM RISK INSURANCE ACT.**

In accordance with the Terrorism Risk Insurance Act, including all amendments ("TRIA" or the "Act"), we are required to provide you with a notice of the portion of your premium attributable to coverage for "certified acts of terrorism," the federal share of payment of losses from such acts, and the limitation or "cap" on our liability under the Act.

**Disclosure of Premium**

The Company has made available coverage for "certified acts of terrorism" as defined in the Act. If purchased, the portion of your premium attributable to coverage for "certified acts of terrorism" is shown on the DECLARATIONS, or elsewhere by endorsement in your policy.

**Federal Participation in Payment of Terrorism Losses**

If an individual insurer's losses exceed a deductible amount specified in the Act, the federal government will reimburse the insurer for 85% of losses paid in excess of the deductible, provided that aggregate industry losses from a "certified act of terrorism" exceed $100 million.

**Cap On Insurer Participation in Payment of Terrorism Losses**

If aggregate insured losses attributable to "certified acts of terrorism" exceed $100 billion in a calendar year and we have met our deductible under the Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion. Nor shall Treasury make any payment for any portion of the amount of such losses that exceeds $100 billion. In such case, insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

EN9052 03-08

Page 1 of 1

Case Number: KC-2017-0170
Filed in Kent County Superior Court
Submitted: 4/12/2017 10:14:20 AM
Envelope: 1001576
Reviewer: Lindsay Z.

## IMPORTANT NOTICE REGARDING THE EXPIRATION OF THE TERRORISM RISK INSURANCE ACT AND THE REDUCTION IN COVERAGE FOR TERRORISM LOSSES

### PLEASE READ THIS NOTICE CAREFULLY

This is to notify you of a reduction in coverage for terrorism losses under your insurance policy when the Terrorism Risk Insurance Act ("TRIA") expires, which is scheduled to occur on December 31, 2014.  This notice  **DOES NOT** apply to Workers Compensation insurance.

TRIA, as amended, is a temporary program that spreads losses from government "certified" acts of terrorism between insurers and the federal government.  In summary, TRIA requires insurers to make coverage for "certified acts of terrorism" available, and to pay losses from "certified acts of terrorism" up to a deductible amount. If an individual insurer's losses exceed this amount, the government will reimburse the insurer for 85% of losses paid in excess of the deductible.

Policyholders have the option to accept or reject this coverage.

TRIA will expire on December 31, 2014, unless Congress and the President act to extend it.  Otherwise, after 2014, the federal government will no longer "certify" acts of terrorism or reimburse losses caused by "certified acts of terrorism."

**If you purchase coverage** for "certified acts of terrorism," and TRIA expires on or after December 31, 2014, **your insurance coverage will be reduced.**  After the date TRIA expires, where permitted by state law*, you will **no longer have insurance** for losses from acts of terrorism that directly or indirectly involve nuclear or radioactive agents or materials, or pathogenic or poisonous biological or chemical agents or   materials ("NBCR").

**If you elect not to purchase** coverage for "certified acts of terrorism," and TRIA expires on or after December 31, 2014, losses caused by any terrorist act will be excluded from your policy, where permitted   by state law*.

* Some states, including New York and Florida, may not approve or allow the use of certain exclusions related to acts of terrorism.  Therefore, exclusions for losses caused by acts of terrorism may not apply in all  states.

Case Number: KC-2017-0170
Filed in Kent County Superior Court
Submitted: 4/12/2017 10:14:20 AM
Envelope: 1001576
Reviewer: Lindsay Z.

# EXHIBIT 2

Case Number: KC-2017-0170
Filed in Kent County Superior Court
Submitted: 4/12/2017 10:14:20 AM
Envelope: 1001576
Reviewer: Lindsay Z.

SCOTT AVEDISIAN
MAYOR



ALFRED T. DeCORTE
DIRECTOR & BUILDING OFFICIAL

# CITY OF WARWICK
## BUILDING DEPARTMENT

3275 POST ROAD • WARWICK, RHODE ISLAND • 02886-7152
Tel (401) 738-2000 (EXT. 6300 or 6314) • Fax (401) 732-5071

July 2, 2015

Ernie Nadeau, President
Nadeau Corporation
727 Washington St.
Attleboro, Ma. 02703

RE:   Hooter's Site Visit
      667 Airport Road

Dear Mr. Nadeau:

This letter is written as a follow up to our site visit on July 1, 2015 at 10 a.m.  Present at the meeting were Fire Marshal Peter Marietti III, Deputy Building Official William Carosi, Director and Building Official Alfred DeCorte and yourself.

The intent of the meeting was to review the condition of the structure, electrical, plumbing, mechanical, sprinkler and fire alarm systems.  Our ability to view the structure was limited through openings made in the ceiling and the exposure of the columns.  From the limited viewing areas, the numerous code deficiencies that were identified warrant a thorough investigation of each system in the building.

A Certificate of Occupancy will only be issued when the building is in full compliance with the 2013 State of Rhode Island Building Codes, 2013 Rhode Island Fire Safety Code with amendments, NFPA 1, 2012 and NFPA 101, 2012.

Sincerely,

Alfred T. DeCorte
Director and Building Official

/ATD

Case Number: KC-2017-0170
Filed in Kent County Superior Court
Submitted: 4/12/2017 10:14:20 AM
Envelope: 1001576
Reviewer: Lindsay Z.

# EXHIBIT 3

Case Number: KC-2017-0170
Filed in Kent County Superior Court
Submitted: 4/12/2017 10:14:20 AM
Envelope: 1001576
Reviewer: Lindsay Z.



ALFRED T. DeCORTE
DIRECTOR & BUILDING OFFICIAL

# CITY OF WARWICK

## BUILDING DEPARTMENT

3275 POST ROAD • WARWICK, RHODE ISLAND • 02886-7152
Tel (401) 738-2000 (EXT. 6300 or 6314) • Fax (401) 732-5071

October 9, 2015

Richard H. Andre, Esquire
One Overton Park, Suite 980
3625 Cumberland Boulevard
Atlanta, Georgia 30339

RE:   Warwick Wings, LLC
      667 Airport Road, Warwick, RI 02886

Dear Attorney Andre:

Thank you for the copy of the report from Odeh Engineers dated May 1, 2015 for my review regarding the structural integrity of the roof trusses and columns for Hooters of Warwick, located at 667 Airport Road. On March 24, 2015 I was at the above location and was able to inspect the roof trusses. My inspection disclosed that the 2" X 4" chords on multiple roof trusses were no longer attached to each other by the metal connector plates, which indicated to me that the trusses are in failure mode. In addition the columns which support the roof structure were exposed and it was noted that the structural integrity was compromised. Recognizing the severity of both failures, I could not allow the business to remain open.

When structural failures in a building occur it is required that a structural engineer be retained to evaluate the failure(s) and provide a remedy. In the report that Odeh Engineers submitted, they provided two remedies to correct the roof truss failure. In my professional opinion and past experience with truss failures of this severity, I am in agreement with Odeh Engineers that the trusses cannot be successfully reinforced in place and must be replaced with new trusses.

Sincerely yours,

Alfred T. DeCorte
Director & Building Official

ATD/dh

cc:   Mr. Phillip A. Moran
      Mr. Ernie Nadeau
      Mr. Vincent A. Cianci, Jr.